UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-00220-BRO (KSx) | | Date | June 12, 2017 |
|---|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | | |

| Present: The Honorable | **BEVERLY REID O'CONNELL, United States District Judge** | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PATENTABLE SUBJECT MATTER [23]**

## I. INTRODUCTION

In this patent infringement action, Defendant Snap, Inc., d/b/a Snapchat, Inc. ("Snap") has filed a motion to dismiss for lack of patentable subject matter of U.S. Patent Nos. 8,886,739 ("the '739 Patent"); 8,935,351 (" the '351 Patent"); 9,306,885 (" the '885 Patent"); 9,306,886 ("the '886 Patent"); 9,313,155 ("the '155 Patent"); 9,313,156 ("the '156 Patent"); 9,313,157 ("the '157 Patent"); 9,338,111 ("the '111 Patent"); and 9,413,711 ("the '711 Patent") (collectively, "Asserted Patents"). ("Motion," Dkt. 23.) For the reasons stated in this Order, the Motion is **DENIED WITHOUT PREJUDICE**.

## II. BACKGROUND

Plaintiff Vaporstream, Inc. has asserted 9 patents and 89 claims against Snap. (Dkt. 54, Ex. C.) The Asserted Patents are closely related, claim priority to the same July 28, 2005 filing, and share a substantially identical specification.[1] (Dkt. 23 at 2.)

---

[1] On a more granular level, the claims of the '739, '885, '155, and '156 patents relate to the "sending user device," while the claims of the '351, '886, '157, and '111 patents relate to the "receiving user device." The asserted claims of the '711 patent recite aspects of both the "send side" and the "receive side." (Dkt. 23 at 2, n. 2.)

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

These patents relate generally to systems and methods for "reducing traceability" of electronic messages. (*See* '739 Patent at 1:46-2:8.) The common Background section explains some perceived problems with conventional email messaging:

> Typically, an electronic message between two people is not private. It may travel along a public network, such as the Internet, and be susceptible to interception by unintended third parties. Messages are also logged and archived by the communication systems themselves. They may also be copied, cut, pasted, printed, forwarded, blind copied, or otherwise manipulated. This may give a message a "shelf-life" that is often uncontrollable by the sender or even the recipient. Surreptitious logging (e.g., by keystroke and message recording software) may occur by third parties that have gained authorized access to either the computer of the sender and/or the recipient.

('739 Patent at 1:51-64.) To address these problems, the claimed inventions disclose systems and methods purporting to reduce the traceability of electronic messages. (*Id.* at 3:48-4:6.)

## III. LEGAL STANDARDS

### A. Rule 12(b)(6)

Federal Rules of Civil Procedure Rule 12(b)(6) permits a party to move to dismiss a suit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006); *see also Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A

Case 2:17-cv-00220-MLH-KS Document 59 Filed 06/12/17 Page 3 of 13 Page ID #:1001

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 558-59, 570; *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a 12(b)(6) motion, the court is limited to the allegations on the face of the complaint (including attached documents), matters which are properly judicially noticeable, and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The court must construe the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court must also accept as true all reasonable inferences to be drawn from the material allegations in the complaint. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247-48 (9th Cir. 2013); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. Patentable Subject Matter Under 35 U.S.C. § 101

35 U.S.C. § 101 "defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). It states: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. Although acknowledging that "[i]n choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope," the Supreme Court has long applied three exceptions to Section 101: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980). "Failure to recite statutory

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

subject matter is the sort of 'basic deficiency,' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Ultramercial Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (quoting *Twombly*, 550 U.S. at 558).

In *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). That framework is as follows:

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "'inventive concept'" – i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Id*. at 2355 (citations omitted).

## IV. ANALYSIS

### A. Whether the Asserted Claims are directed to a Patent-Ineligible Concept

The first inquiry of the *Alice* test is whether the asserted claims are directed to a patent-ineligible law of nature, natural phenomena, or abstract idea. *Alice*, 134 S. Ct. at 2354. The step-one inquiry determines whether the claims "focus on a specific means or method that improves the relevant technology" or are "directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016).

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

Here, the asserted claims generally fall into two categories: (1) claims reciting methods implemented on sending user devices ("send side" claims),[2] and (2) claims reciting methods implemented on receiving user devices ("receive side" claims).[3]

Snap has chosen claim 1 of the '739 Patent to be representative of the "send side" claims.[4] Claim 1 reads:

> 1. A computer-implemented method of handling an electronic message, the method comprising:
>
> providing a first display and a second display at a sending user device, the first display configured to allow a sending user to associate a first message content including a media component with the electronic message, the second display configured to allow the sending user to input a first recipient address corresponding to the first message content, the first and second displays not being displayed at the same time;
>
> displaying via the first display a first message content including a media component;
>
> receiving via the second display a first recipient address, wherein the first message content including a media component and the first recipient address are not displayed to the sending user at the same time;
>
> associating a message ID with the first message content including a media component, the message ID correlating the first recipient address and the first message content including a media component; and

---

[2] The "send side" asserted claims are claims 1, 4-8, and 10 of the '739 Patent; claims 1 and 5-10 of the '885 Patent; claims 1-6 and 9-13 of the '155 Patent; and claims 1-3 and 6-11 of the '156 Patent.
[3] The "receive side" asserted claims are claims 1, 3-7, 9, 11, and 12 of the '351 Patent; claims 1-6 and 8-13 of the '886 Patent; claims 1-7 and 10 of the '157 Patent; and claims 1, 2, 4-6, and 8-12 of the '111 Patent. The asserted claims of the '711 patents are claims 1-17, which recites aspects of both the "send side" and "receive side" asserted claims.
[4] Although Vaporstream has not conceded that this claim is representative, it is still helpful to begin by looking at the actual claim language.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

> transmitting the recipient address and the first message content including a media component from the sending user device to a server computer, the first message content including a media component being transmitted to the server computer separately from the recipient address, the first message content including a media component not being accessible by the sending user for display via the sending user device after said transmitting the media component to the server computer.

'739 Patent, claim 1.

Stated more succinctly, claim 1 is directed to a technique for allowing a sender to transmit a message to a recipient by: (1) separately specifying the message recipient and message content (and having two displays so that the information about the recipient and the content are not displayed at the same time); (2) associating a message ID that correlates the message content with the message recipient; (3) transmitting the content separately from the recipient identification; and (4) preventing the sender from accessing the content after it is sent.

Similarly, Snap has chosen claim 1 of the '351 Patent to be representative of the "receive side" asserted claims. It recites a similar technique but from the perspective of the receiving device:

> 1. A computer-implemented method of handling an electronic message, the method comprising:
>
> receiving at a recipient user device a first header information corresponding to a first message content that includes a media component;
>
> providing a first display via the recipient user device, the first display including the first header information in a message list, the first display not displaying the media component;
>
> receiving at the recipient user device the first message content including the media component, wherein the first message content including the media component is associated with a unique message ID that correlates

Case 2:17-cv-00220-MLH-KS Document 59 Filed 06/12/17 Page 7 of 13 Page ID #:1005

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

the first message content including the media component with the first header information;

receiving a selection by the recipient user via the first display, the selection directed to a portion of the message list corresponding to the first header information;

in response to the selection, providing a second display via the recipient user device, the second display displaying the first message content including the media component without displaying a username associated with the first header information; and

automatically deleting the first message content including the media component at a predetermined amount of time after being displayed such that after the second display is terminated from view, the first message content including the media component is no longer available to the recipient user.

('351 Patent, claim 1.)

Claim 1 of the '351 Patent describes a technique for delivering and displaying a message to the recipient involving: (1) displaying the sender of the message to the recipient; (2) separately displaying message content to the recipient; (3) maintaining an association between the content and the sender; and (4) automatically destroying the content after receipt and display.

From these two purportedly-representative claims, Snap concludes that the steps cover the abstract ideas of: (1) protecting the identity of the sender and recipient of a message; and (2) automatically destroying the message content after it has been displayed to the recipient. (Dkt. 23 at 5-6.) In particular, Snap offers three ways in which the asserted claims are directed to an abstract idea. At the highest level of abstraction, Snap argues the claims are directed to the abstract idea of "handling, delivering, and displaying messages." (*Id.* at 11.) At the next level, the claims are allegedly directed to the idea of "protecting the identity of the sender or recipient during message delivery." (*Id.*) And "[u]nder any level of abstraction," Snap contends that the

Case 2:17-cv-00220-MLH-KS Document 59 Filed 06/12/17 Page 8 of 13 Page ID #:1006

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

claims are at least directed to the abstract idea of "preventing third parties from 'tracing' content to the sender of recipient.'" (*Id.*)

Vaporstream protests that the asserted claims are not directed to the abstract ideas of identity protection and automatic message deletion. Rather, it argues that the claims are directed to "a specific improvement to electronic messaging systems as they existed in 2005-2006, the priority dates of the asserted claims." (Dkt. 51 at 6.) Specifically, Vaporstream notes that the asserted claims disclose a particular way of sending and receiving electronic messages such that privacy is ensured, sender/recipient identity is unascertainable, and the message content cannot be stored, manipulated or disseminated. (*Id.*) According to Vaporstream, the patented methods achieve these objectives by requiring: (1) structured graphical user interfaces that separately display sender/recipient identifying information separately from the message content; (2) protocols that transmit sender/recipient identifying information separately from the message content; and (3) restrictions on accessing the message content upon transmission and display. (*Id.*)

The dispute presented by the parties hinges on the appropriate level of abstraction that should be employed. As the Federal Circuit has recognized, "[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2354); *see also McRO* at 1313 ("We have previously cautioned that courts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims.") (citations omitted). From a macroscopic perspective, the asserted claims could be described as focusing on identity protection during message delivery. But the asserted claims can also be described in other ways, such as focusing on the separate graphical displays and the electronic protocols that transmit sender/recipient identifying information separately from the message content.

In addressing the first step of the section 101 inquiry, as applied to a computer-implemented invention, it is often helpful to ask whether the claims are directed to "an improvement in the functioning of the computer," or merely "adding conventional computer components to well-known business practices." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016). An important consideration relevant to

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

the determination of step one for the Asserted Patents is whether the asserted claims address problems that are unique to electronic messaging in computer systems.

This issue is vigorously contested. Snap contends that the asserted claims are directed to long-standing, fundamental aspects of human communication and offers several real-world analogies to show that preventing third parties from tracing content to the sender or recipient is a "timeworn practice that carries out the fundamental human desire for privacy." (Dkt. 23 at 11.) For example, the classroom note pass and the briefcase courier analogies capture the concept of separating the sender/recipient information from the content itself. And the self-destructing message in MISSION: IMPOSSIBLE further illustrates the idea of reducing traceability by destroying the message after receipt. These analogies are helpful in understanding conventional approaches to concerns involving private communications. However, they may not account for certain ways the invention's objectives are to be attained by the patented methods, such as using multiple displays and correlating the contents and identity of users with a message ID. Thus, to the extent the analogies are incompatible with fundamental, technological aspects of the methodology and the problem to be solved, they are of limited value to a section 101 analysis.

As described by the specification, the specific methods disclosed in the asserted claims are intended to ensure that the improved electronic messaging system will not allow an electronic message to be "archived, forwarded, copied, pasted," logged, or recreated, nor "leave [any] trace of the message content, header, information, or the fact that it was created, existed, delivered, viewed, etc." '739 Patent at 17:47-18:6. The claimed advance over the prior art suggests that the representative claims focus on a specific way (*e.g.*, an architecture providing for the separated display and transmission of message content from sender/recipient information and restricted access to/deletion of the message content after transmission/display) for improving an existing technological process (*e.g.*, prior art electronic messaging systems that transmit messages without restrictions over an open network which allow such messages to be stored and manipulated by senders/recipients and intercepted and misused by third parties).

Even so, the alleged problems have real-world counterparts, such as the interception of packages in the mail. Third-party interception, widespread

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

dissemination, and content-identity coupling can be described as human problems that arose with the written word, not technology problems. If the problem Vaporstream purports to solve does not specifically arise in any technological field, and the "human problem" already has a "human solution," then the claimed invention – *e.g.*, separation of message information and automatic message deletion – may be better characterized as using generic computing concepts to carry out in the electronic realm abstract ideas from the real world, rather than an improvement in computer functionality.

On the other hand, if Vaporstream's asserted claims are focused on a specific application of electronic messaging in computer systems, then such claims would be consistent with some of the recent Federal Circuit line of cases that have found eligibility when the claims are directed to an improvement in technology. For example, in *DDR Holdings*, the Federal Circuit found "a system and methods of generating a composite webpage that combines certain visual elements of a 'host' website with content of a third party merchant" to be patent-eligible. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1248 (Fed. Cir. 2014). The court found the claims to have provided a concrete Internet-based solution to an Internet-specific problem: retaining website visitors that, if adhering to the prior art functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after clicking on an advertisement and activating a hyperlink. *Id.* at 1257. Like the claims at issue in *DDR Holdings*, Vaporstream's computer-based claims would be directed to overcome challenges specifically arising in the realm of Internet-based messaging systems, such as the uncontrolled storage, manipulation, widespread dissemination, and interception of electronic messages.

Ultimately, whether the asserted claims are directed to: (1) an abstract idea of protecting the identity of a message's recipient or sender, or (2) specific solutions (separation of display and transmission and restriction of access) to the various challenges of electronic messaging (privacy, manipulation, interception), presents a close call.[5] Similar to the dilemma faced by the Federal Circuit in *Bascom*, the asserted

---

[5] At the hearing, Snap urged the Court to follow the *Alice* step-one approach adopted by Judge Birotte in *EveryMD.com LLC v. Facebook Inc.*, Case No. LACV 16-6473-AB (JEMx). There, the technology purportedly enabled Internet users to communicate with members of a group who have been designated web pages through which they may be contacted. The court found that the claims were drawn to the basic idea of exchanging business communications that have long been accomplished through paper directories and telephone calls. Based on an analysis tailored to the claim language in the context of the specification, Judge Birotte concluded that the patents-in-suit recited standard components in conventional

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

claims and their specific limitations "do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea." *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016); *see Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016) ("we have noted there can be close questions about when the inquiry should proceed from the first stage to the second."). For these reasons, the Court defers its consideration of the claim limitations' narrowing effect for step two.

      **B.**    **Whether the Asserted Claims Include an "Inventive Concept"**

The second inquiry of the *Alice* test is whether the claims found to be directed to an abstract idea contain any inventive concept to transform the abstract idea into a patent-eligible subject matter. *Ultramercial*, 772 F.3d at 715. To satisfy this prong, the claims must include additional features which are significantly beyond "well-understood, routine, conventional activity" or a simple "instruction to implement or apply the abstract idea on a computer." *Id*. (quoting *Mayo*, 132 S.Ct. at 1298.); *Bascom*, 827 F.3d 1341, 1349. The "inventive concept" may arise in individual claim limitations or in the ordered combination of the limitations. *Bascom*, 827 F.3d at 1349.

Snap argues that the claims do not recite any inventive concept that would save them from invalidity under § 101. (Dkt. 23 at 17.) In particular, it contends that the claims' reliance on off-the-shelf computer components amounts to nothing more than well-understood, routine, and conventional activities that cannot impart patent eligibility. (*Id*. at 18.) Snap also points to the lack of "any unique or special software used to implement the claimed abstract ideas" as being fatal. (*Id*. at 18-19.) It adds that the asserted dependent claims are either repetitive of the representative claims or proffer no inventive concept. (*Id*. at 20.)

Vaporstream responds that applications of standard components to a new and useful end are patent-eligible. Specifically, it contends that the recited structural limitations, when taken together, amounts a special-purpose computer used for electronic messaging working to ensure reduced traceability and enhanced privacy and user control of the electronic messages being exchanged. (Dkt. 51 at 19-20.) Further,

---

ways to accomplish standard Internet communications. But, the approach taken by Judge Birotte does not identify a level of abstraction that is intended to suit every case. Rather, it simply underscores the difficulty of this inquiry and confirms that the abstraction analysis can be very fact-dependent. The facts in this case differ from those in *EveryMD.com*.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

Vaporstream emphasizes that the claims also recite apparatus such as a user device configured to generate separate displays of message content and recipient information, and server computers being configured to "correlate" and "associate" message content with identifying information at a later time. (*Id.* at 20-21.) Another concept disclosed in the asserted claims is the "display-based keyboard" in claim 10 of the '885 Patent, claim 13 of the '155 Patent, and claim 11 of the '156 Patent. (*Id.* at 21.) According to Vaporstream, the display-based keyboard has the specific function of allowing the user to input information while avoiding interception by keystroke logging hardware, and is "thus a specially-adapted and inventive part of these asserted claims to achieve the objectives of reduced traceability and improved privacy of electronic messages." (*Id.*)

The Federal Circuit has found patent eligibility under step two when the claims solve a technology-based problem, even with conventional generic components, combined in an unconventional manner. *Amdocs*, 841 F.3d 1288, 1300; *see also BASCOM*, 827 F.3d at 1349-50 (finding claims patent eligible because the "inventive concept" of the improved abstract idea of "filtering content on the Internet" was "found in the non-conventional and non-generic arrangement of known, conventional pieces.").

Whether the generic components operate in an unconventional manner to achieve an improvement in computer functionality raises factual issues that precludes adjudication of Snap's motion to dismiss. For example, even though the display-based keyboard utilizes pre-existing technologies, it could operate in an unconventional way in combination with the separate graphical interfaces and transmission protocols to reduce traceability of electronic messages. Analysis of patentable subject matter, "while ultimately a legal determination, is rife with underlying factual issues." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013), vacated on other grounds, 134 S. Ct. 2870 (2014). Factual issues can include the effective filing dates of the asserted patents, the state of the art at the relevant time, or what was well-understood, routine, and conventional. *See id.* At the pleadings stage, the record is ambiguous as to whether the various claimed limitations (*e.g.*, using two displays, transmitting message content and header information separately; automatic deletion; placing restriction on content access) are conventional protocols or technological improvements.[6] Given the

---

[6] This includes the prosecution history of the '886 Patent. Notably, the Examiner rejected the then-pending claims for failure to claim patent-eligible subject matter under § 101, only to allow the '886 Patent to issue after Vaporstream amended the claims and made various arguments in favor of patent

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17-00220-BRO (KSx) | Date | June 12, 2017 |
|---|---|---|---|
| Title | VAPORSTREAM, INC. v. SNAP INC. | | |

ambiguity, it is premature to determine if these limitations, when considered individually and as an ordered combination, provide an inventive concept. Therefore, *Alice* step two is at best inconclusive and does not render the claims patent-ineligible.

## V.    CONCLUSION

The Court finds Defendant's motion to dismiss on the basis of patent ineligibility under 35 U.S.C. § 101 premature, and **DENIES** the motion without prejudice.

**IT IS SO ORDERED.**

Initials of Preparer

---

eligibility. Vaporstream's amendments to the claims emphasized limitations such as "providing separate displays on the device to prevent sender and recipient information from being linked to message content" and added the new limitation of message content-header information "correlation." (Dkt. 24-5 at 2-3.)