Heidi L. Keefe (SBN 178960)
Mark R. Weinstein (SBN 193043)
Reuben H. Chen (SBN 228725)
Elizabeth L. Stameshkin (SBN 260865)
Lam K. Nguyen (SBN 265285)
Lauren J. Krickl (SBN 305379)
COOLEY LLP
3175 Hanover Street
Palo Alto, California  94304
Telephone:  (650) 843-5000
Facsimile:  (650) 849-7400

ATTORNEYS FOR DEFENDANT
SNAP INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| VAPORSTREAM, INC., <br><br> Plaintiff, <br><br> v. <br><br> SNAP INC. d/b/a SNAPCHAT, INC., <br><br> Defendant. | Case No.  2:17-CV-220-BRO-KS <br><br> **SNAP INC.'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101** <br><br> **DATE**:  October 23, 2017 <br> **TIME:**  1:30 PM <br> **CTRM**:  7C <br> **JUDGE:**  Hon. Beverly R. O'Connell |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORDS:**

**PLEASE TAKE NOTICE** that on October 23, 2017 at 1:30 p.m., or as soon thereafter as the matter may be heard, in this Court, located at First Street Courthouse, 350 W. First Street, Courtroom 7C, Los Angeles, CA 90012, Defendant Snap Inc. will and hereby does move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment that the asserted claims of U.S. Patent Nos. 8,886,739; 8,935,351; 9,306,885; 9,306,886; 9,313,155; 9,313,156; 9,313,157; 9,338,111; and 9,413,711 are invalid for failure to claim patentable subject matter under 35 U.S.C. § 101 and the applicable case law. This motion is based upon this notice of motion and motion, the attached memorandum, the Statement of Uncontroverted Facts and Conclusions of Law filed concurrently herewith, the expert declaration of Dr. Saul Greenberg, Ph.D. filed concurrently herewith, the declaration of Reuben Chen filed concurrently herewith, and upon such other and further matters, papers, and arguments as may be submitted to the Court at or before the hearing on this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 that took place on June 16, 2017. Snap's motion complies with this Court's standing orders because at the July 10, 2017 Scheduling Conference, the Court permitted Snap to file an early motion for summary judgment on § 101. (Transcript, Scheduling Conference at 8:7-11 (July 10, 2017).)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

Heidi L. Keefe (SBN 178960)
Mark R. Weinstein (SBN 193043)
Reuben Chen (SBN 228725)
Elizabeth L. Stameshkin (SBN 260865)
Lam K. Nguyen (SBN 265285)
Lauren J. Krickl (SBN 305379)
COOLEY LLP
3175 Hanover Street
Palo Alto, California  94304
Telephone:  (650) 843-5000
Facsimile:  (650) 849-7400

ATTORNEYS FOR DEFENDANT
SNAP INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| VAPORSTREAM, INC., | Case No.  2:17-CV-220-BRO-KS |
| Plaintiff, | **SNAP INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101** |
| v. | |
| SNAP INC. d/b/a SNAPCHAT, INC., | |
| Defendant. | |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................. 2

    A.    The Asserted Patents ............................................................... 2

    B.    The Patents' Similarity ............................................................ 4

    C.    The Patents' Asserted Technologies ........................................ 7

III.  LEGAL STANDARD ......................................................................... 8

IV.  ARGUMENT...................................................................................... 8

    A.    Alice Step 1 – The Asserted Claims Are Drawn To An Abstract Idea ........................................................................... 8

         1.    The overall focus of the claims is directed at an abstract idea ....... 9

         2.    The claims are not directed at a specific improvement to computer technology................................................ 13

    B.    Alice Step 2 – The Asserted Claims Recite No Inventive Concept........ 16

         1.    Separately Displaying Message Content and Identifying Information Was Routine and Conventional ............................... 17

         2.    Separately Sending a Message's Content and Its Identifying Information was Routine and Conventional................................. 20

         3.    Restricting Access to Messages and Screenshot Prevention........ 23

         4.    Display-Based Keyboards........................................................ 24

         5.    Nothing in the Ordered Combination of Limitations Improves Computer Technology ................................................ 25

V.   CONCLUSION ................................................................................ 25

Cooley LLP
Attorneys At Law
San Francisco

i.

Snap's Not. of Mtn., Mtn., and Memorandum
ISO Snap's Motion for Summary Judgment
Case No. 2:17-cv-220-BRO-KS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adrea LLC v. Barnes & Noble, Inc.*,
  No. 13-CV-4137 JSR, 2015 WL 4610465 (S.D.N.Y. July 24, 2015)............... 11, 25

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ................................................................. 14, 15

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
  134 S. Ct. 2347 (2014)....................................................................*passim*

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016) ................................................................. 15, 16

*Bilski v. Kappos*,
  561 U.S. 593 (2010).................................................................................... 8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ...................................................................... 4

*Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*,
  558 Fed. Appx. 988 (Fed. Cir. 2014) (unpublished) ................................. 11

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) .................................................................. 10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ............................................................. 12, 14

*Elec. Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) .................................................................. 16

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) ......................................................... 13, 15, 17

*Intellectual Ventures I v. Capital One Bank*,
  792 F.3d 1363 (Fed. Cir. 2015) ............................................................. 14, 16

*IPLearn-Focus, LLC v. Microsoft Corp.*,
  No. 14-0151, 2015 WL 4192092 (N.D. Cal. July 10, 2015)................................ 14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012)................................................................................ 2, 9

*Planet Bingo, LLC v. VKGS LLC*,
  576 Fed. Appx. 1005, 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) .................... 13

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*,
  No. 2015-1559, 2016 U.S. LEXIS 61841, at *21 (E.D. Tex. May 9,
  2016)), *aff'd* 2017 U.S. App. LEXIS 6247 (Fed. Cir., Apr. 12, 2017) ................. 11

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Prism Technologies LLC v. T-Mobile USA, Inc.*,
  --- Fed. Appx. ----, 2017 WL 2705338 (Fed. Cir. June 23, 2017) .......................... 16

*Purdue Pharma L.P. v. Faulding Inc.*,
  230 F.3d 1320 (Fed. Cir. 2000) ................................................................. 12

*Secure Mail Solutions LLC v. Universal Wilde, Inc.*
  169 F. Supp. 3d 1039 (C.D. Cal. 2016) ................................................... 16

*Smartflash LLC v. Apple Inc.*,
  680 Fed. Appx. 977 (Fed. Cir. 2017) ...................................................... 12

*Spectra-Physics, Inc. v. Coherent, Inc.*,
  827 F.2d 1524 (Fed. Cir. 1987) ............................................................... 23

*TLI Communs. LLC v. AV Auto., LLC*,
  823 F.3d 607 (Fed. Cir. 2016) ................................................................. 11

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ........................................................ 7, 12, 13

*Va. Innovation Scis., Inc. v. Amazon.com, Inc.*,
  Civ. No. 16-00861, 2017 WL 64147 (E.D. Va. Jan. 5, 2017), appeal
  docketed, No. 17-1646 (Fed. Cir. Feb. 17, 2017)................................... 15

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
  793 F.3d 1306 (Fed. Cir. 2015) ............................................................... 13

**Statutes**

35 U.S.C. § 101 ..................................................................................*passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

# I. INTRODUCTION

The patents asserted by Vaporstream, Inc. are directed to an abstract idea: preventing third parties from tracing a message's content to the sender or recipient. And they carry out that abstract idea through timeworn practices: (1) separating a message's content from the identity of its sender or recipient, and (2) automatically destroying the message after sending or receiving. Indeed, this Court recognized as much in its June 12 order. It wrote that the real-world analogies Snap Inc. offered "capture the concept of separating the sender/recipient information from the content itself" and of "reducing traceability by destroying the message after receipt." (June 12, 2017 Order, ECF No. 59 ("Order"), at 9.) And it found that the asserted claims "do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea." (*Id.* at 11 (citation and quotation marks removed).)

That was exactly right. And under the Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014), that means the claims are invalid as a matter of law—*unless* they offer some "inventive concept" that "transform[s] the abstract idea into a patent-eligible subject matter." (Order at 11.) At the motion-to-dismiss stage, this Court stated that it lacked sufficient information to make that *Alice* step two determination. Specifically, it needed more facts to determine whether "the generic components" recited by Vaporstream "operate in an unconventional manner to achieve an improvement in computer functionality." (*Id.* at 12.) The open question, in short, was "whether the various claimed limitations are conventional protocols or technological improvements." (*See id.*) If they are the former, then they flunk the *Alice* test and Vaporstream's case fails.

The Court now has before it an expanded summary judgment record. And on that expanded record, the answer is plain: The claimed limitations are mere conventional protocols. As set forth below, none of the limitations in the asserted claims provide any technological improvement or solve any technological problem. The evidence submitted with this motion establishes that the supposed technological

Cooley LLP
Attorneys At Law
San Francisco

1.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

features in the claims—such as separate displays, separate transmission of sender/recipient information and message content, and restricting access to sent or received messages—were pervasive and generic technologies by the mid-1990s or earlier. And nothing about how these conventional technologies are combined in the asserted claims is novel. On the contrary, each is used in a standard way, and the steps are combined in an obvious order—the order required to communicate message content. The claimed techniques, in other words, represent "'well-understood, routine, conventional activit[ies]' previously known to the industry." *Alice*, 134 S. Ct. at 2359 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Therefore, whether considered alone or as an ordered combination, none of the claimed limitations supplies an "inventive concept" sufficient to save the claims from invalidity under § 101. The Court should so hold, and should enter judgment for Snap.

## II.    BACKGROUND

### A.    The Asserted Patents

Vaporstream asserts that Snap infringes nine patents,[1] all of which are closely related and share a substantially identical specification.[2] Vaporstream has asserted a priority date of April 21, 2005. (Declaration of Reuben Chen ("Chen Decl."), Ex. 1, Vaporstream's Responses to Snap's First Set of Interrogatories at 3 (July 10, 2017).) The Asserted Patents relate generally to systems and methods for "reducing

---

[1] These nine patents are U.S. Patent Nos. 8,886,739 ("the '739 Patent"); 8,935,351 ("the '351 Patent"); 9,306,885 ("the '885 Patent"); 9,306,886 ("the '886 Patent"); 9,313,155 ("the '155 Patent"); 9,313,156 ("the '156 Patent"); 9,313,157 ("the '157 Patent"); 9,338,111 ("the '111 Patent"); and 9,413,711 ("the '711 Patent") (collectively, "the Asserted Patents"). The '711 Patent is a continuation of continuation-in-part App. No. 13/447,932, which issued as U.S. Patent 9,282,081 and is not asserted in this litigation.
[2] The '739, '885, '155, and '156 patent specifications relate to the "sending user device," and are nearly identical. The '351, '886, '157, and '111 patent specifications relate to the "receiving user device," and are similarly nearly identical. The '711 patent combines features of both groups.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

traceability" of message content by protecting the identity of the recipient or sender of the message.  The specification explains that in typical messaging systems, message content is "coupled to identifying information regarding the sender, the recipient, the location of the message, times and dates associated with the message, etc." (*See* '739 Patent, 1:64-67.)  It further explains that coupling the identifying information with the message content itself creates various problems:

> This allows a third party that is logging messages, intercepting messages, or simply gaining access to the messaging system's logs or inbox archives to associate the potentially important identifying information (typically referred to as header information) with the message content.

(*See id.*, 1:67-2:5.)

The purported problem identified by the Asserted Patents would be familiar to any security-conscious person who has ever tried to send a message—whether electronically or via mail.  When someone sends an email message, the content (the "body" of the message) is accompanied by the "To:" and "From:" information (the "header" of the message) identifying the recipient and sender.  Accordingly, if someone were to intercept such a message, the interceptor could determine both the content of the message and the identities of the sender and intended recipient.

But this problem is not unique to computer-based messaging.  For example, letters carried by the Postal Service typically show, on the envelope, the name and address of the recipient and a return address corresponding to the sender (at right).  Accordingly, just like the electronic messages described in the Asserted Patents, were someone to intercept a postal letter, the interceptor could determine the letter's content and, by reading the address information on the envelope (or the salutation and signature inside), identify the sender and recipient of the letter.



The Asserted Patents purport to solve the problem of "traceable" electronic

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

messages in the most simplistic, rudimentary way—by "separating" the identification information from the message content.  (*See, e.g.,* '739 Patent, 2:14-27; *see also* '351 Patent, 2:14-27.)   By keeping the content and addressing information separate, the patents assert, the two cannot be correlated if intercepted.   This solution is not just rudimentary but long-established.   The basic technique was well-known, for example, through the common grade-school practice of passing a note without any identifying information (in case it is intercepted by a teacher), or the centuries-old tradition of using diplomatic couriers to deliver unmarked pouches containing sensitive information.

## B.   The Patents' Similarity

The Federal Circuit has held that it is enough to analyze a "representative claim" under § 101 when, as here, the claims are substantially similar and linked to the same abstract idea.  *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).  That is the case here.  Vaporstream alleges infringement of 89 claims across the Asserted Patents ("the Asserted Claims"), but the Asserted Claims have a high degree of overlap and similarity.  (*See* Chen Decl., Ex. 2, Plaintiff's Disclosure of Asserted Claims and Infringement Contentions Pursuant to S.P.R. 2-1 at 2 (Mar. 23, 2017).  Indeed, claim language is systematically broken up and repackaged into new claims across all nine Asserted Patents.  (*See* Declaration of Dr. Saul Greenberg, Ph.D. ("Greenberg Decl."), Exs. X-Z.)  For example, the following limitation is recited in a mixture of dependent and independent claims across the Asserted Patents: "deleting the [ ] message content including the media component at a predetermined amount of time after being displayed such that after the second display is terminated from view, the [ ] message content including the media component is no longer available to the recipient user."  ('351 Patent, claim 1; '886 Patent, claim 13; '157 Patent, claim 10.)

The full extent of overlap among the Asserted Claims is set forth in the attached

Cooley LLP
Attorneys At Law
San Francisco

4.

Snap's Not. of Mtn., Mtn., and Memorandum
ISO Snap's Motion for Summary Judgment
Case No. 2:17-cv-220-BRO-KS

Exs. X-Z of Dr. Greenberg's Declaration.[3]   As those exhibits demonstrate, all of the Asserted Claims generally fall into two categories: (1) claims reciting methods implemented on sending user devices ("send side" claims),[4] and (2) claims reciting methods implemented on receiving user devices ("receive side" claims).[5]

Independent claim 1 of the '739 Patent ("the '739 Claim 1") is representative of the "send side" Asserted Claims.  The '739 Claim 1 reads:

1[p] A computer-implemented method of handling an electronic message, the method comprising:

[a] providing a first display and a second display at a sending user device, the first display configured to allow a sending user to associate a first message content including a media component with the electronic message, the second display configured to allow the sending user to input a first recipient address corresponding to the first message content, the first and second displays not being displayed at the same time;

[b] displaying via the first display a first message content including a media component;

[c] receiving via the second display a first recipient address, wherein the first message content including a media component and the first recipient address are not displayed to the sending user at the same time;

[d] associating a message ID with the first message content including a media component, the message ID correlating the first recipient address and the first message content including a media component; and

[e] transmitting the recipient address and the first message content including a media component from the sending user device to a server computer, the first message content including a media component being transmitted to the server computer separately from the recipient

---

[3] Unless otherwise noted, Ex. Z of Dr. Greenberg's Declaration shows dependent limitations that share identical or nearly identical claim language.

[4] The "send side" Asserted Claims are claims 1, 4-8, and 10 of the '739 patent; claims 1 and 5-10 of the '885 patent; claims 1-6 and 9-13 of the '155 patent; and claims 1-3 and 6-11 of the '156 patent.

[5] The "receive side" Asserted Claims are claims 1, 3-7, 9, 11, and 12 of the '351 patent; claims 1-6 and 8-13 of the '886 patent; claims 1-7 and 10 of the '157 patent; and claims 1, 2, 4-6, and 8-12 of the '111 patent.  The Asserted Claims of the '711 Patent are claims 1-17, which recite aspects of both the "send side" and "receive side" Asserted Claims, without adding anything more.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

address, the first message content including a media component not being accessible by the sending user for display via the sending user device after said transmitting the media component to the server computer.

('739 Patent, 18:50-19:11 (claim 1).)

The '739 Claim 1 can be boiled down to a technique for letting a sender transmit a message to a recipient by: (i) letting the sender separately specify the message recipient and message content (and not displaying both at the same time) (claims 1[a], 1[b], [c]); (ii) associating a message ID that correlates the message content with the recipient (claim 1[d]); (iii) transmitting the content separately from the recipient identification (claim 1[e]); and (iv) preventing the sender from accessing the content after it is sent (claim 1[e]). Those steps represent the abstract ideas of (1) protecting the identity of a message recipient, and (2) preventing the sender from accessing the content after it is sent.

Independent claim 1 of the '351 Patent ("the '351 Claim 1"), reproduced below, is representative of the "receive side" Asserted Claims. It recites a similar technique as '739 Claim 1, but from the vantage point of the receiving device.

1[p] A computer-implemented method of handling an electronic message, the method comprising:

[a] receiving at a recipient user device a first header information corresponding to a first message content that includes a media component;

[b] providing a first display via the recipient user device, the first display including the first header information in a message list, the first display not displaying the media component;

[c] receiving at the recipient user device the first message content including the media component, wherein the first message content including the media component is associated with a unique message ID that correlates the first message content including the media component with the first header information;

[d] receiving a selection by the recipient user via the first display, the selection directed to a portion of the message list corresponding to the first header information;

[e] in response to the selection, providing a second display via the recipient user device, the second display displaying the first message

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

content including the media component without displaying a username associated with the first header information; and

[f] automatically deleting the first message content including the media component at a predetermined amount of time after being displayed such that after the second display is terminated from view, the first message content including the media component is no longer available to the recipient user.

('351 Patent, 18:50-19:11 (claim 1).)

The '351 Claim 1 describes a technique for delivering and displaying a message to its recipient involving: (i) displaying the sender identity to the recipient (claims 1[a], 1[b], and 1[d]); (ii) separately displaying message content to the recipient (claims 1[a], 1[e]); (iii) maintaining an association between the content and the sender (claim 1[c]); and (iv) automatically destroying the content after receipt and display (claim 1[f]). These steps cover the abstract ideas of (1) protecting the identity of a message sender, and (2) automatically destroying message content after it has been displayed to the recipient.[6]

The remaining Asserted Claims provide additional details, but do not change the basic concept to which the claims are directed. Rather, these other claims simply attempt to cover superficial refinements to the abstract idea of preventing third parties from "tracing" a message's content to the sender or recipient. (Greenberg Decl. ¶¶9, 65-68.) *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014) (finding that claims adding particularity do not alter the "heart" of the claims).

## C.    The Patents' Asserted Technologies

The claims offer a handful of technical-sounding terms, such as "display," "media component," "message ID," and "header information." However, the specification confirms that these terms merely refer to well-known and generic computer technologies. For example, the "display" is defined as including, but not limited to, "a cathode-ray tube (CRT) monitor, a plasma display, an LCD display, and

---

[6] This Court previously analyzed the Asserted Patents by relying upon the '739 Patent Claim 1 and the '351 Patent Claim 1 as representative claims. (Order at 5-8.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

any combination thereof." ('739 Patent, 5:50-52.)  The "media component" may be an image, video, or audio.  ('739 Patent, 7:42-49.)  The "message ID" may include "a sequence number and a unique user identifier (e.g., a user ID, a login ID, etc.)." ('739 Patent, 8:20-22.)  Finally, "header information" is simply any "identifying information regarding the message (e.g., identification of sender, recipient, date/time of message, location of message)." ('739 Patent, 6:46-54.)  The inventors do not claim to have invented or improved upon any of these well-known technologies. (*See, e.g.,* Greenberg Decl. ¶¶11, 16.)  And nowhere do the patents disclose anything other than generic, off-the-shelf technologies for carrying out the Asserted Claims.  (*Id.* ¶¶17-64.)

## III.   LEGAL STANDARD

Patent eligibility under 35 U.S.C. § 101 is a threshold issue of law.  *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  The Supreme Court in *Alice* set forth the now-familiar two-step test "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355.  First, the Court must determine if the claims at issue are directed to a patent-ineligible concept, such as an abstract idea.  *Id.*  If the Court determines that the claims are directed to an abstract idea, it must then "determine whether the additional elements transform the nature of the claim into a patent-eligible application."  *Id.* (internal quotations and citation removed).  This second step is "a search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Id*. (internal markings and citation removed). The Asserted Claims fail both steps.

## IV.   ARGUMENT

### A.   Alice Step 1 – The Asserted Claims Are Drawn To An Abstract Idea

Vaporstream asserts various claims, but all of them—without exception—are directed to the abstract idea of preventing third parties from tracing a message's content to the sender or recipient.  (*See, e.g.*, '739 Patent, claim 1[a] ("reduced traceability

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

displays"); '711 Patent, claim 1[a], 1[c], 1[d] (same); '886 Patent, claim 1[a] (same); '157 Patent, claim 1[a] (same); '111 Patent, claim 1[a] (same); '711 Patent, claim 1[b], 1[d] ("reduced traceability electronic messaging application"); '739 Patent, Abstract ("An electronic messaging system and method with reduced traceability")).  Indeed, the first application to which Vaporstream claims priority for the Asserted Patents, U.S. Provisional Patent Application Ser. No. 60/703,367, filed July 28, 2005, is titled "Method and System for Reducing Traceability of Electronic Messages."  (Chen Decl., Ex. 3.)  The Asserted Claims carry out this abstract idea by (1) separating a message's content from the identity of its sender and/or recipient, and (2) automatically destroying the message after sending and/or receiving.

But reducing traceability is an age-old problem in human communication.  From notes passed by schoolchildren, to the use of courier services to deliver unmarked packages, to *Mission: Impossible*'s use of self-destructing messages, the claims address ancient problems in generic ways.  This Court has recognized that "the classroom note pass and the briefcase courier analogies capture the concept of separating the sender/recipient information from the content itself," and "the self-destructing message in *Mission: Impossible* further illustrates the idea of reducing traceability by destroying the message after receipt."  (Order at 9.)  Quite so.  And it is because these examples are age-old and familiar that they plainly reflect abstract ideas that are part of the "building blocks of human ingenuity" (*Alice*, 134 S. Ct. at 2359) and "should be free to all men and reserved exclusively to none."  *Mayo*, 132 S. Ct. at 1293; (*see also* Order at 10).  Under *Alice* and its progeny, the Asserted Claims are directed to abstract ideas that cannot be patented.

### 1.    The overall focus of the claims is directed at an abstract idea

The analogies mentioned above aptly capture the nature of the "send side" and "receive side" claims of the Asserted Patents.  In the courier analogy, the sender hands the courier an unmarked package with no visible indication of the sender or intended recipient.  The sender then separately provides the intended recipient's identity to the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

courier.  The courier is not informed of the contents of the package.  The package contents are therefore physically and logically separate from the recipient and sender information, and the two are never displayed at the same time.  (*See, e.g.,* '739 Claim 1[a] and 1[c]; *see also* '351 Claim 1[b] and 1[e].)  The multiple displays claimed in the Asserted Patents are nothing more than the electronic analogs of this real-world separation.

In the courier scenario, should the package get lost or intercepted, the finder does not know the identities of the sender or recipient.  That is, the ability to correlate sender and/or recipient information (or trace it back) is *separated from the content itself*, just as in the Asserted Claims. (*See, e.g.,* '739 Claim 1[e]).  The correlation remains in the courier's mind.  The Federal Circuit has made clear that such activity, which "can be performed by the human mind, or by a human using a pen and paper," is an abstract idea.  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011).  Another pervasive example of this correlation step is human blood testing, such as for HIV testing.  Because of the need for privacy, the subject's name and identifying information never accompanies his biological sample or the test results.  The subject is instead furnished a random number associated with the sample that he can use to later access and obtain the test results anonymously.  (Chen Decl., Ex. 4, Maxwell J. Mehlman et al., "The Need for Anonymous Genetic Counseling and Testing," THE AMERICAN SOCIETY OF HUMAN GENETICS at 398 (1996), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1914541/pdf/ajhg00015-0143.pdf.)

The "automatic deletion" step in certain Asserted Claims is also an abstract idea.  Self-destructing messages are practically a cliché in spy films and television.  For example, the 1960s *Mission: Impossible* series portrayed the hero receiving an official message outlining his mission that ended with the ominous admonition that the message "will self-destruct in five seconds," followed by its smoky destruction.  The purpose of this feature, of course, was to reduce the risk that the message would be intercepted after it had been viewed.  Similarly, even in the courier or note-passing analogies, the

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

package or note recipient could easily rip up or otherwise destroy the message after reading it to prevent third parties from tracing the message back to the communicating parties. The '351 Claim 1 simply perpetuates the cliché; it recites that the message is automatically deleted after a "predetermined amount of time"—for example, the "five seconds" in *Mission: Impossible*. Further, the Asserted Patents themselves refer to a real-life example of the abstract idea of automatic deletion—a long-standing U.S. Department of Defense "clearing and sanitizing standard" that specifies that classified information must be destroyed when no longer needed.[7] (*See* '739 Patent, 16:19-22.) The claimed abstract idea thus has long been carried out in a real-world environment.

In short, Vaporstream's Asserted Claims are directed at an abstract idea. Indeed, the very abstract ideas Vaporstream claims ***already*** have been rejected as patent-ineligible under the *Alice* test. For example, "[a]llowing for secure and private access to data has also been found to be an abstract concept," *Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*, No. 2015-1559, 2016 U.S. LEXIS 61841, at *21 (E.D. Tex. May 9, 2016)), *aff'd* 2017 U.S. App. LEXIS 6247 (Fed. Cir. Apr. 12, 2017), and the Federal Circuit has confirmed that separating information into its constituent parts is an abstract idea. *TLI Communs. LLC v. AV Auto., LLC*, 823 F.3d 607 (Fed. Cir. 2016) (extracting classification information from digital image content is an abstract idea); Chen Decl., Ex. 6, *Cyberfone Systems, LLC v. CNN Interactive Group, Inc.*, 558 Fed. Appx. 988, 990 (Fed. Cir. 2014) (unpublished) (steps requiring "separating [data] into component parts" were "nothing more than a disembodied concept of data sorting and storage."). And it is well-established that access restrictions such as automatic deletion are patent-ineligible abstract ideas. *Adrea LLC v. Barnes & Noble, Inc.*, No. 13-CV-4137 JSR, 2015 WL 4610465, at *6 (S.D.N.Y. July 24, 2015) (finding a method for

---

[7] This standard was established at least as early as January 1995. Chen Decl., Ex. 5, *National Industrial Security Program: Operating Manual*, Department of Defense (DoD) 5220.22-M at Foreword (Feb. 28, 2006), full version available at http://www.dss.mil/documents/ odaa/nispom2006-5220.pdf.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO
11.
SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

lending electronic books invalid and explaining "[n]or does the addition of . . . 'automatically erasing' [those books] . . . represent an inventive concept"); *see also Ultramercial*, 772 F.3d at 716 ("[a]dding routine additional steps such as . . . restrictions on public access . . . does not transform an otherwise abstract idea"); *Smartflash LLC v. Apple Inc.*, 680 Fed. Appx. 977, 982 (Fed. Cir. 2017) (finding that "access/use rules" do not improve computer functionality); *Prism Technologies LLC v. T-Mobile USA, Inc.*, --- Fed. Appx. ----, 2017 WL 2705338, at *2 (Fed. Cir. June 23, 2017) (finding that "providing restricted access to resources" is an abstract idea). These holdings further underscore that the Asserted Claims fail the *Alice* test.

The same conclusion is apparent when the case is analyzed through a related strain of post-*Alice* law. The Federal Circuit has made clear that claims fail *Alice* when they merely "***recite the performance of some business practice known from the pre-Internet world*** along with the requirement to perform it on the Internet." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (emphasis added). That is precisely what the Asserted Claims do. As the analogies above reveal, businesses, governments, and others have long embraced the practices of separating message content from sender and recipient information, and destroying messages, to reduce traceability. As this Court recognized, "[i]f the problem Vaporstream purports to solve does not specifically arise in any technological field, and the 'human problem' already has a 'human solution,' then the claimed invention – *e.g.*, separation of message information and automatic message deletion – may be better characterized as using generic computing concepts to carry out in the electronic realm abstract ideas from the real world, rather than an improvement in computer functionality." (Order at 10).[8]

---

[8] The Examiner's apparent determination that the claims of the '886 Patent were allowable over § 101 is not binding on this Court. *See, e.g., Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1329 (Fed. Cir. 2000) (holding that finding by examiner was not binding on district court and entitled to no deference where district court heard more extensive evidence and arguments on the issue). Further, the Examiner's

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

The Asserted Claims recite a number of additional limitations that may add particularity, but do not change the nature of the abstract idea itself. *See Ultramercial, Inc.*, 772 F.3d at 715 ("Although certain additional limitations . . . add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea . . ."). The Asserted Patents are therefore directed to an abstract idea under the first step of *Alice*.

### 2.  The claims are not directed at a specific improvement to computer technology

Vaporstream has argued that the Asserted Claims are not abstract because they "are directed to a *specific improvement* to electronic messaging systems" in the form of "a particular way of sending and receiving electronic messages such that privacy is ensured, sender/recipient identity is unascertainable, and the message content cannot be stored, manipulated, or disseminated." (Order at 8 (citing Dkt. 51 at 6) (emphasis added and quotation marks omitted).) This argument lacks merit for several reasons.

First, the Asserted Claims themselves say nothing about *ensuring* privacy, making sender/recipient identity *unascertainable*, or preventing message content from being stored, manipulated, or disseminated. The Federal Circuit has repeatedly rejected arguments that attempt to avoid invalidity under § 101 by relying on features and limitations not recited in the claims. *See, e.g., Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016) ("*Symantec*") ("The district court erred in relying on technological details set forth in the patent's specification and not set forth in the claims to find an inventive concept."); *accord Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 2014 WL 4195188, *3 (Fed. Cir. Aug. 26, 2014).

---

determination lacks any persuasive value because he framed the abstract idea in a fundamentally different (and incorrect) way: of "receiving an email (in general) and receiving an email header and content separately (in particular)." (Chen Decl., Ex. 7, 12/03/2015 Office Action at 8, ¶ 17.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

Second, and likewise fatal to its argument, Vaporstream's reformulation affirmatively demonstrates that the Asserted Claims are directed to an abstract idea. Vaporstream points only to three generic technologies that purportedly carry out its "specific improvement": (1) structured graphical user interfaces that display sender/recipient identifying information separately from the message content; (2) protocols that transmit sender/recipient identifying information separately from the message content; and (3) restrictions on accessing the message content upon transmission and display. (Order at 8.)  But these limitations do not solve any problem unique to computers.  *Cf. DDR Holdings,* 773 F.3d at 1245, 1257.  They instead attempt to address a ***human*** problem of protecting privacy of messaging by preventing a ***human being*** from being able to trace a message's content to its sender or recipient.  *See Intellectual Ventures I v. Capital One Bank*, 792 F.3d 1363, 1371 (Fed. Cir. 2015) ("*Capital One*")  (affirming invalidity because "[t]he patent claims here do not address problems unique to the Internet, so *DDR* has no applicability"); *IPLearn-Focus, LLC v. Microsoft Corp.*, No. 14-0151, 2015 WL 4192092, at *6 (N.D. Cal. July 10, 2015) (finding invalidity where the "core issue" addressed by the patents "does not exist exclusively or even predominantly in the computer realm," but instead "is a problem that arises every day in every teaching situation in the world").

Moreover—and we discuss further below, in the context of *Alice* step two—these features have nothing to do with improving the functioning of the computer itself.  *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) ("The patent in this case is not directed to the solution of a 'technological problem,' nor is it directed to an improvement in computer or network functionality.") (internal citation omitted.)  For example, there is no suggestion in the Vaporstream patents that separating sender/recipient information from message content, and restricting access to a message, does anything to make the computer run any faster, more efficiently, or more reliably.  The purported technological features are nothing more than routine and conventional computer components.  (*See* Greenberg Decl. ¶¶16-59); *see also Alice*,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

134 S. Ct. at 2359.   And their use flows naturally from the implementation of the abstract idea in the computer and networking environment.   Like in past cases where patents have failed *Alice*, the claims here are "not directed to an improvement in computer functionality, but . . . to 'the use of conventional or generic technology in a . . . well-known environment.'"   *See Affinity Labs*, 838 F.3d at 1260-61.

There is nothing innovative about providing content on two displays—this has been practiced since the dawn of computers.   *See, e.g., Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1234, 1241 (Fed. Cir. 2016) (finding claims reciting a "first menu" and a "second menu" to be directed to an abstract idea because "[t]hey do not claim a particular way of programming or designing the software to create menus . . . ., but instead merely claim the resulting systems"); *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, Civ. No. 16-00861, 2017 WL 64147, *9 (E.D. Va. Jan. 5, 2017), appeal docketed, No. 17-1646 (Fed. Cir. Feb. 17, 2017) (alleged improvement of reproducing a video on a "separate display" device is "not computer-specific"); (Greenberg Decl. ¶¶41-55.) Vaporstream does not claim to have invented a new "graphical user interface"—*i.e.*, display—but instead relies on well-known preexisting displays.   Greenberg Decl. ¶55; *see* '739 Patent, 5:50-52 (disclosing only generic displays such as "a cathode-ray tube (CRT) monitor, a plasma display, [and/or] an LCD display").

Protocols for separate transmission were likewise pervasive at the time of invention.   *Symantec,* 838 F.3d at 1318 (finding that use of "conventional e-mail protocols . . . does not 'improve the functioning of the computer itself'"); *see also* Greenberg Decl. ¶¶17-40.   Vaporstream does not disclose, much less claim, any enhanced transmission protocols.   (Greenberg Decl. ¶¶17-40.)

And it is well-established that access restrictions such as automatic deletion are patent-ineligible abstract ideas.   *See supra* at Section IV.A.1. (citing cases).   Indeed, automatic deletion is the most rudimentary form of access restriction imaginable.   Thus Vaporstream's own characterization makes clear that the Asserted Claims focus on a "result or effect that itself is the abstract idea [reducing traceability] and merely invoke

15.

generic processes and machinery." *See Apple,* 842 F.3d at 1241 (internal quotation marks and citation removed).

As the Federal Circuit has noted, the inquiry into whether a claim is directed to a "computer-functionality improvement[]" under *Alice* step one "involve[s] overlapping scrutiny" with the search for an inventive concept under step two. *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353, 1354 (Fed. Cir. 2016). Accordingly, the following analysis on *Alice* step two—provided with an expanded summary judgment record that was missing at the pleading stage—confirms, beyond a doubt, that the claims in this case recite no technological improvement.

## B.    Alice Step 2 – The Asserted Claims Recite No Inventive Concept

Under *Alice*'s second step, claims are valid only if they contain an inventive concept sufficient to transform the claims into a patent-eligible invention. 134 S. Ct. at 2355, 2359. A valid claim must include "additional features" beyond the abstract idea itself, which "requires more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (internal quotations, citations and brackets removed); *see also Capital One,* 792 F.3d at 1370; *Secure Mail Solutions LLC* v. *Universal Wilde, Inc.* 169 F. Supp. 3d 1039, 1051 (C.D. Cal. 2016) (invalidating claims "replete" with "routine additional steps" that "continually reference generic hardware and software").

The claims here recite no inventive concept. Prior to 2005, the supposedly "inventive" separate displays, transmission protocols, access restrictions, message IDs, display-based keyboard, and electronic instructions were everyday tools of electronic messaging systems. (*See* Greenberg Decl. ¶¶17-64.) None of the claimed features—whether considered alone or in combination—operates in a non-conventional way to specifically improve computer technology. (*Id.* ¶¶65-68.)

The sections below will explain how each of the technologies on which Vaporstream has relied to show a purported "inventive concept" was, in fact, a "well-understood, routine, [and] conventional" activity that cannot impart patent eligibility.

*Alice*, 134 S. Ct. at 2359 (quotation removed).[9]   They likewise will show that the asserted patents do not combine these routine tools in any unique way that advances the technology.   Borrowing the Court's words, these claims involve mere "conventional protocols," not "technological improvements."   (Order at 12.)

### 1. Separately Displaying Message Content and Identifying Information Was Routine and Conventional

Vaporstream previously pointed to the ability to display, on two separate displays, the content of a message and the sender/recipient identifying information for that message as inventive.   But as explained by Dr. Greenberg, this feature describes a well-known, routine, and conventional technique.   (Greenberg Decl. ¶¶41-55.)   One of the most fundamental tasks in designing any computer user interface is to decide how much information (and what information) should be presented or presented on a particular screen, including how that information should be separated into displayable units, and how a user action or navigation would move between them.   (*Id.* ¶¶41-45.)

For example, one known user interface was a "Wizard"-based approach that would present a series of screens to a user, each screen soliciting a discrete piece of information.   (*Id.* ¶45.)   An example was disclosed by a 2002 published patent application by Charles Namias that describes (among other things) a touch-screen user interface for a kiosk designed to record and send a video email message to another user:

---

[9] To be clear, the law does not require Snap to establish that the Asserted Claims are invalid based on prior art to show the absence of an "inventive concept."   A patent can lack an "inventive concept" under *Alice* even if the prior art does not anticipate or render obvious all limitations of the claims.   *See, e.g., Symantec*, 838 F.3d at 1315.

Cooley LLP
Attorneys At Law
San Francisco

17.

Snap's Not. of Mtn., Mtn., and Memorandum
ISO Snap's Motion for Summary Judgment
Case No. 2:17-cv-220-BRO-KS

1





FIG. 4A                    FIG. 5

(U.S. Pat. Pub. No. 2002/0112005 ("Namias"); Greenberg Decl. ¶46.)  Figure 4A above shows a first screen for creating the message content, in this case a video recording. This screen has a single purpose—to let a user record a video email message (and optionally preview it) before sending.  Figure 5 shows a second, separate screen that prompts the user to input email address(es) of the recipient(s) through a display-based keyboard.  The video content is not visible from this screen.  Thus, the message content and recipient identity are input through two separate screens that are not visible at the same time.  If one were to take a screen capture of Figure 4A, one might see some portion of the message (such as a frame of the video) but could not determine the identity of the recipient.  Conversely, if one were to capture Figure 5, one might be able to determine the identity of the recipient but not the content of the video message. (Greenberg Decl. ¶¶46-47.)

The same considerations apply to the message recipient.  Early cell phones often had small displays with extremely limited display capabilities, necessitating the use of separate screens to present the information for a single message.  The two screenshots below show an example of using separate screens on a late 1990s cell phone to display to an electronic message recipient the identity of the message sender ("Karen"), and—after the 'Read' button is selected—the message content ("Call Cathy and tell her")

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS




("Digital Multi-Service Data-Capable Phone: i1000*plus* User's Guide," NEXTEL® at 52 (March 22, 1999); *see also* (Greenberg Decl. ¶51).)

These and the other systems described by Dr. Greenberg provide mere examples of how sender/recipient information can be displayed separately from message content. (Greenberg Decl. ¶¶41-55.)   At a broader level, it was well-known that whenever multiple pieces of related information are to be displayed, the programmer needs to decide whether to present that information on one display screen or across multiple screens.  (*Id.* ¶¶42-45.)  That decision can be based on a desire to simplify the user interface or to accommodate the size of the display, as the examples above illustrate. (*See id.*)  It was also known that "shoulder surfing" by onlookers can be impeded by temporarily blocking display of certain discrete pieces of sensitive information, effectively displaying that information, as a whole, using multiple different screens. (*See id.* ¶53.)

Finally, the asserted claims do not solve any technological problem or provide any kind of technological improvement.  The patent instead makes clear that the separate displays rely entirely on known and conventional techniques.  For example, the specification describes "display generator **160**" that generates the screen displays for use with the alleged invention.  ('739 Patent, 8:52-56.)  But Figure 1 shows display generator **160** as a nondescript black box.  And the specification explains that "[d]isplay generator **160** may utilize ***any of a variety of well-known display generation methodologies and/or protocols for creating information representing a displayable image***."  ('739 Patent, Fig. 1, 9:18-24 (emphasis added).)  Nothing in the Asserted

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

Claims recites any new or unique techniques for creating or visually presenting screen displays.  (Greenberg Decl. ¶55.)

### 2. Separately Sending a Message's Content and Its Identifying Information was Routine and Conventional

The ability to send a message by **_separately_** transmitting the message content and the sender/recipient identifying information was likewise a routine and well-understood concept well before 2005.  One of the simplest ways to describe this technique is with reference to ubiquitous **email** messaging technology, which has existed since at least the early 1980s. (Greenberg Decl. ¶17.)  As anyone who has ever sent an email message knows, a message must generally include at least a "**To**:" field that identifies the recipient, and a "**From**:" field identifying the sender.  (*Id.* ¶18.)  The message may also include a "**body**" that holds the actual content of the message, such as the text of the message or one or more attachments (such as a media file).  (*Id.*)

As explained by Dr. Greenberg, the earliest published standards for email specifically required the sender to transmit sender/recipient information *separately* from message content.  (*Id.* ¶¶19-27.)  The purported "feature" of separate transmission of sender/recipient information and message content was thus a built-in functionality of standard Internet email technologies more than three decades before Vaporstream filed its first patent application.  For example, one of the early published standards for Internet email messages was the "Mail Transfer Protocol" (RFC 772), published in September 1980.  (*Id.* ¶19.)  That protocol provided a detailed series of steps and commands for allowing computers to send an email message to a remote host such as a server.  (*Id.* ¶¶19-27.)  Under that protocol, sending an email message requires that the sending device engage in a back-and-forth conversation with the server and separately and individually send each recipient address, and then separately send the message content.  (*Id.* ¶¶22-25.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

A diagram showing the flow of such a message (based on an actual example from the September 1980 Mail Transfer Protocol specification (RFC 772)) is shown to the right.[10]  (*Id.* ¶24.)  In this example, the sender is trying to send a message to recipients "**Foo@Y**" and "**bar@Y**" whose body contains a line of text "**Blah blah blah blah….etc. etc. etc**." The sending device makes this happen by sending separate commands to provide the



server with recipient identity ("**MRCP TO**:"), the identity of the message sender, and the message content ("**MAIL FROM**:").   The separation of sender/recipient information from message content is apparent from the fact that these pieces of information are conveyed to the server through separate transmissions that take place only after receiving an appropriate response code from the server (such as "200 OK" or "354 Type mail"), indicating the command was successful and the process can continue.

By the 1990s, another technique for separately sending sender/recipient information and the message content was known.  Anyone who has used a web browser

---

[10] The cited RFC 772 provides this exact example in text form.  (Greenberg Decl., Ex. C, p. 29.)  This is simply a diagrammatic depiction of the identical information from the RFC.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

is likely familiar with the concept of a Uniform Resource Locator (or "URL" for short), which refers to an address on the Internet. (*Id.* ¶28.) The Court's web site, for example, can be reached at the following URL: <http://www.cacd.uscourts.gov>. A URL is a unique identifier that points to a web page or any kind of file (including graphics, sound, or any other type of digital content). (*Id.*) It was well-known long before 2005 that a user could send an email message whose body contained a URL pointing to the content of the message. (*Id.*) Indeed, the Vaporstream patents expressly state that the content of an electronic message can take the form of a "linked file" rather than being "embedded" directly within the message. ('739, 7:50-52.)

Dr. Greenberg provides an example email message in which he is sending a hiking trail map to John. (Greenberg Decl. ¶¶29-31.) Rather than including the map in the email itself, he has included a URL to the map (in PDF form) on the Internet. When John receives this message, he must follow or click on the URL to obtain the map. The URL is thus used as a reference to correlate the received email, which includes sender/recipient information, with the separately-transmitted content. (*Id.*)

This use of URLs in email messages was, in fact, a factor in the design of the URL itself. The published standard that described the format of the URL, published in 1994 by Tim Berners-Lee, explained that there would be "many occasions" in which URLs would be included in email messages. (*Id.* ¶32.) By no later than 2001, popular email programs such as Microsoft Outlook had built-in features to facilitate inserting URLs to files or web pages in email messages. (*Id.*) And aside from the manual process of inserting a URL as described above, companies had also created computer-based systems that would ***automatically*** modify an email to replace its content with a URL, and then send the modified message to the recipient. (*Id.* ¶¶33-37.) Dr. Greenberg identifies and describes at least three different references, all predating the Vaporstream patents by several years, that describe such URL techniques. (*Id.* ¶38.) A similar technique was also built-in to the industry standard known as the Multipurpose Internet Mail Extension (MIME). (*Id.* ¶35.)

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

Each of these techniques provide an example of a message's content being transmitted separately from the sender/recipient information for the message.  This is because the content of the message is not conveyed in the body of the message, but through a separate and external transmission. The recipient must first receive the message and then use the information in the message to retrieve, in a separate transmission, the desired content.  In each of these examples, the responding server could provide the desired file, or if further privacy was desired, require the recipient to enter authentication credentials (such as a username and password) as a security measure.  (Greenberg Decl. ¶¶31, 34-35.)  In short, the ability to send a message by separately transmitting the message content and the sender/recipient identifying information was "well-understood, routine, [and] conventional" activity and therefore it cannot impart patent eligibility.  *Alice*, 134 S. Ct. at 2359 (quotation removed).

Nor do the asserted claims purport to provide any technological advancement. Although they broadly recite a separation in the transmission of sender/recipient information and message content, they do not explain ***how*** this should be accomplished. (*See* Greenberg Decl. ¶40.)  The patent specification instead contemplates using well-known and generic Internet protocols.  ('739, 6:11-20.)  The dearth of technical detail in the Vaporstream patents regarding implementation of this supposedly key inventive feature reflects the fact that techniques for performing the separate transmissions were old hat by 2005, making it unnecessary for the patent to discuss them in any detail.  *See, e.g. Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1534 (Fed. Cir. 1987) ("A patent need not teach, and preferably omits, what is well known in the art.").

### 3.   Restricting Access to Messages and Screenshot Prevention

In connection with the prior motion, Vaporstream pointed to techniques for preventing access to message content as allegedly providing an inventive concept.  The asserted patents provide only two examples of access restrictions: (1) automatic deletion of message content upon a predetermined event and (2) preventing a single screen capture of message content and identifying information.  Both of these techniques

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

simply recite well-understood, routine, and conventional activity.

The automatic deletion of electronic messages was well known by 2005. For example, by 2001 the popular email program *Microsoft Outlook* provided several techniques for allowing senders or recipients to automatically delete outgoing or incoming email messages. (Greenberg Decl. ¶57.) Sending users could elect to not retain copies of messages they had sent. (*Id.*) Receiving users could also specify that messages would be automatically deleted after a predetermined amount of time. (*Id.*) Microsoft Outlook even provided a "message rules" feature that let users define custom rules for automatically deleting messages based on the occurrence of one or more user-specified conditions (including permanent deletion). (*Id.*) The ability to automatically delete a message based on some predetermined event was thus a routine and conventional activity well before April 2005. (*Id.* ¶¶56-59.)

The asserted claims also describe restricting access to message content by "preventing a single screen capture of both the identifier of a recipient and the media component." ('885 Patent, claim 1[b]; '156 Patent, claim 1[b]; '711 Patent, claims 1[c], 2.) But the patent specification makes clear that screenshot prevention is only accomplished by way of the separate display of identifying information and message content; there is nothing about the displays themselves that prevents screenshots. ('739 Patent, 17:65-18:1.) As explained, designing a user interface that spreads information across separate display screens, including for privacy purposes, was a known and routine technique. (Greenberg Decl. ¶¶41-59.) Each of the examples described above in which the sender/recipient information and message content were shown on separate screens demonstrates that this technique achieves the screenshot protection described in the patent. (*Id.* ¶58.)

### 4. Display-Based Keyboards

Vaporstream also pointed to a "display-based keyboard" recited in certain claims as allegedly inventive. But display-based keyboards were well-known long before the Vaporstream patents was filed, and was used in the Namias reference discussed above,

Cooley LLP
Attorneys At Law
San Francisco

24.

Snap's Not. of Mtn., Mtn., and Memorandum
ISO Snap's Motion for Summary Judgment
Case No. 2:17-cv-220-BRO-KS

as well as other references.  The technique of presenting an image of a keyboard on a touch-screen display, in fact, dates back to the mid-1980s.  (Greenberg Decl. ¶¶60-64.)  The claimed display-based keyboard was a routine and conventional technology in the industry prior to the Asserted Patents, and cannot supply an inventive concept.

### 5.   Nothing in the Ordered Combination of Limitations Improves Computer Technology

Even considering each claim limitation as an "ordered combination" adds nothing to confer patent-eligibility.  *Alice*, 134 S. Ct. at 2359-60; *see* Greenberg Decl. ¶¶65-68.  Indeed, the Asserted Claims implement the abstract idea of protecting the identity of the sender or recipient in the simplest way conceivable—by merely (1) ***separating*** the identifying information from the content, and then (2) ***destroying*** the content.  Nothing about the ordered combination of limitations is remotely inventive.  Separating two items is the most rudimentary way to hide the association between them—as simple as removing one item from view while leaving the other in plain sight.  And people have been destroying content since they learned to create it. As one district court articulated, automatic deletion is not an inventive concept.  *Adrea*, 2015 WL 4610465, at *6.

The steps of the Asserted Claims are further performed in the order they must be to communicate a message.  The content of a message and its recipient(s) must be specified (*e.g.*, via a display-based keyboard) before the message can be transmitted from the sender.  Likewise, the message must be transmitted to the recipient before the sender's identity can be revealed and the message content displayed.  Additionally, a message, in order to be successfully communicated to the recipient, could not be deleted until after it has been displayed.  The steps of the Asserted Claims are therefore performed in the conventional order required to achieve the intended purpose of electronic messaging.  (Greenberg Decl. ¶¶65-68.)

## V.   CONCLUSION

For the foregoing reasons, the Court should grant summary judgment and find that the Asserted Claims are invalid under § 101.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: August 22, 2017

*/s/ Reuben H. Chen*
    Reuben H. Chen

Heidi L. Keefe (SBN 178960)
Mark R. Weinstein (SBN 193043)
Reuben H. Chen (SBN 228725)
Elizabeth L. Stameshkin (SBN 260865)
Lam K. Nguyen (265285)
Lauren J. Krickl (305379)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650)843-5000
Facsimile: (650)849-7400
rchen@cooley.com

*Attorneys For Defendant,*
*Snap Inc.*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

26.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS

# CERTIFICATE OF SERVICE

I certify that on August 22, 2017, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Attorneys for Plaintiff*

Davida P. Brook
Meng Xi
SUSMAN GODFREY LLP
1901 Avenue of the Stars Suite 950
Los Angeles, CA 90067
Telephone: 310-789-3100
Fax: 310-789-3150
dbrook@susmangodfrey.com
mxi@susmangodfrey.com

Joseph S. Grinstein (Pro Hac Vice)
Robert Rivera, Jr. (Pro Hac Vice)
SUSMAN GODFREY LLP
1000 Louisiana Suite 5100
Houston, TX
Telephone: 713-653-7809
Fax: 713-654-6666
rrivera@susmangodfrey.com

This 22nd day of August 2017.

/s/ *Reuben H. Chen*
Reuben H. Chen

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27.

SNAP'S NOT. OF MTN., MTN., AND MEMORANDUM
ISO SNAP'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 2:17-CV-220-BRO-KS