# EXHIBIT 3

Docket No. 102760-100

CERTIFICATION UNDER 37 CFR §1.10

I hereby certify that this New Application Transmittal and the documents referred to as enclosed therein are being deposited with the United States Postal Service on this date July 28, 2005 in an envelope as "Express Mail Post Office to Addressee" Mailing Label No. EV 534136275 US to Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

Timothy J. Olson
Printed Name of Person Mailing Paper

Signature of Person Mailing Paper



# PROVISIONAL APPLICATION TRANSMITTAL
## UNDER 37 CFR §1.51(c)(1)

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

This is a request for filing a PROVISIONAL APPLICATION FOR PATENT under 37 CFR §1.51(c)(1).

1.  The following comprises the information required by 37 CFR §1.51(c)(1):

2.  The name(s) of the inventor(s) is/are:

    1.  Joseph Collins, Jr. and

    2.  Amit Jindas Shah

3.  Residence address(es) of the inventor(s), as numbered above:

    1.  Resident of Darien, Connecticut; and

    2.  Resident of San Francisco, California

4.  The title of the invention is:

    METHOD AND SYSTEM FOR REDUCING TRACEABILITY OF
    ELECTRONIC MESSAGES

5.  ☐ This invention was made by an agency of the United States Government, or under contract with an agency of the United States Government. The name of the U.S. Government agency is ___. The U.S. Government contract number is___.

Docket No. 102760-100

6.   <u>Identification of documents accompanying this cover sheet:</u>

    A.   Documents required by 37 CFR §§1.51(c)(2)-(3):

        __19__ page(s) of Specification (including claims and abstract)

        __14__ sheets of drawings

    B.   Additional documents:

        ☒   Return Receipt Postcard

        ☐   Other:

7.   <u>Small Entity Statement:</u>

    ☒   Applicant claims small entity status.

8.   <u>Fee Calculation:</u>

| PROVISIONAL APPLICATION FEE | $200.00 |
|---|---|
| REDUCTION FOR SMALL ENTITY BY 50% | 100.00 |
| TOTAL FILING FEE | $100.00 |

9.   <u>Method of Payment of Fees</u>

    ☐   Check in the amount of ____.

    ☒   Charge Account No. 23-1665 in the amount of $100.00.

10.   <u>Authorization to Charge Additional Fees</u>

The Commissioner is hereby authorized to charge any additional fees which may be required under 37 CFR §§ 1.16, 1.17, 1.18, or credit any overpayment to Account No. 23-1665.

11.   The correspondence address for this application is Customer Number 27267:



27267

PATENT TRADEMARK OFFICE

Respectfully Submitted,
Joseph Collins, Jr., Et Al

Date: July 28, 2005

Timothy J. Olson
Reg. No. 42,962

WIGGIN And DANA LLP
One Century Tower
New Haven, CT 06508-1832
Tel No. (860) 297-3709
Facsimile: (860) 525-9380

\17591\2\50522.1

3

# METHOD AND SYSTEM FOR REDUCING TRACEABILITY OF ELECTRONIC MESSAGES

## COPYRIGHT NOTICE

[0001]      A portion of the disclosure of this patent document contains material which is subject to copyright protection. The copyright owner has no objection to the facsimile reproduction by anyone of the patent document or the patent disclosure, as it appears in the U.S. Patent and Trademark Office patent files or records, but otherwise reserves all copyright rights whatsoever.

## BACKGROUND

[0002]      Typically, an electronic message between two people is not private. There is logging and archiving occurring at the protocol and application level. The message sender, time, and location are all uniquely identified throughout the process. Messages can be cut and paste, printed, forwarded, blind copied to unknown parties at the receiving end, and the sender can be spoofed. The possibilities of how electronic messages can be misused is endless. Thus, there is a demand for a method and system for reducing traceability of electronic messages.

## SUMMARY

[0003]      In one aspect there is provided a system, method, and storage medium for reducing traceability of electronic messages. The method comprises: receiving an electronic message from a first user computer, the electronic message including a message content and a recipient address associated with a second user computer; associating a display name with a user of the first user computer; associating a unique reply ID with the message; associating a unique message ID with the message; associating a date with the message; removing any unique identification of the first user computer from the message; attaching the display name, reply ID, message ID, and date to the message as container information; sending the message to a recipient location associated with the recipient address; storing the message content separately from the container information at the recipient location; in response to a request from the second user computer, providing at least some of the container information to the second user computer; and in response to a further request from the second computer, providing the message content to the second user computer, wherein the message content and the container information are not displayed at the same time on the second user computer to reduce traceability of the electronic message. The message content, display name, message ID,

1

and date may be deleted immediately after the message content is provided to the second user computer. In one embodiment, the message content is input at the first computer using a display-based keyboard.

[0004]      Where a reply to the message is made, the method may further comprise: receiving a electronic reply message from the second user computer, the electronic reply message including a reply message content; determining a location of the first user computer using the reply ID; deleting the reply ID; associating a second unique reply ID with the reply message; associating a second display name with a user of the second user computer; associating a second unique message ID with the reply message; associating a second date with the reply message; removing any unique identification of the second user computer from the reply message; attaching the second display name, second reply ID, second message ID, and second date to the reply message as reply message container information; sending the reply message to the location of the first user computer; storing the reply message content separately from the reply message container information at the location of the first user computer; in response to a request from the first user computer, providing at least some of the reply message container information to the first user computer; and in response to a further request from the first user computer, providing the reply message content to the first user computer, wherein the reply message content and the reply message container information are not displayed at the same time on the first user computer to reduce traceability of the electronic reply message. The reply message content, the second display name, the second message ID, and the second date may be deleted immediately after the reply message content is provided to the first user computer.

BRIEF DESCRIPTION OF THE DRAWING

[0005]      Referring now to the drawing where like items are numbered alike in the various Figures:

[0006]      Fig. 1 is a schematic diagram of a system for electronic messaging depicting an initial electronic message being sent from one user to another;

[0007]      Fig. 2 is a flow chart depicting a method for reducing traceability of the initial message employed by the system of Fig. 1;

[0008]      Fig. 3 depicts a screen viewable by a user before logging into the system of Fig. 1;

[0009]      Fig. 4 depicts a screen viewable by the user after logging into the system of Fig. 1;

[0010]      Fig. 5 depicts a screen viewable by the user when entering message content for sending a message;

2

[0011]      Fig. 6 depicts a screen viewable by a recipient of the message;

[0012]      Fig. 7 depicts a screen viewable by the recipient, in which the message content is displayed;

[0013]      Fig. 8 is a schematic diagram of the system for electronic messaging depicting an electronic reply message being sent from one user to another;

[0014]      Fig. 9 is a flow chart depicting a method for reducing traceability of the reply message employed by the system of Fig. 8;

[0015]      Fig. 10 depicts a screen viewable by a user when entering message content for sending a reply message;

[0016]      Fig. 11 depicts a screen viewable by a recipient of the reply message; and

[0017]      Fig. 12 depicts a screen viewable by the recipient of the reply message, in which the reply message content is displayed;

[0018]      Fig. 13 is a schematic diagram depicting an alternative network topology that may employ the method for reducing traceability of electronic messages; and

[0019]      Fig. 14 is a functional block diagram of an example of a conventional general-purpose digital computing environment that can be used to implement various aspects of the present invention.

DETAILED DESCRIPTION

[0020]      Fig. 1 is a schematic diagram of one instance of a system 10 for electronic messaging depicting an initial electronic message 12 being sent from one user to another. The system 10 includes a message server computer (message server) 14 and at least two user computers 16 and 18 operably coupled to a network 20. The system 10 allows the users of the computers 16 and 18 to have a private conversation over the network 20. As will be described in further detail hereinafter, after the recipient reads the message 12, the message 12 is automatically deleted from the system 10 to ensure that the message 12 cannot be forensically recreated and to ensure there is no record of the message 12 ever existing on the system 10.

[0021]      The computers 16 and 18 may include any one or more: personal computer, workstation computer, laptop computer, handheld computer, palmtop computer, cellular telephone, personal digital assistant (PDA), and any other device capable of communicating electronic messages via the network 20. The message server 14 may include any one or more computers having: components that handle the transfer of messages to and from other message

3

servers and user computers, a storage area where electronic messages are stored for users of the messaging service, and a set of rules that determine how the message server computer 14 should react to messages and commands from the users.  As used herein, an electronic message is any electronic, file, data, or other information transmitted between computers, servers, processors, terminals, and the like within a network.  For example, the electronic message may include text, image, video, binary, or any other type of data.

[0022]     The network 20 may include any one or more of: a Wide Area Network (e.g., the Internet, an Intranet, an enterprise-wide network, and the like), a Local Area Network (e.g., a network associated with an office, building, campus, or other relatively small geographic space), a telephone network (cellular, wired, or wireless), and the like.  Network 20 may employ any wired and/or wireless mode of communication.  In general, network topologies other than those shown in Fig. 1 may be employed.  For example, Fig. 13 depicts a system 10 having a different topology than that shown in Fig. 1.  Also, it will be appreciated that Fig. 1 depicts only one instance of a system 10, and that other instances may be created where one or more computers 16 and/or 18 log into the system.

[0023]     In the system 10, the existence of any of various well-known protocols such as TCP/IP, Ethernet, FTP, HTTP and the like is presumed, and the system 10 can be operated in a client-server configuration to permit a user of computers 16 and 18 to retrieve web pages, structured and non-structured documents, binary data, and messages from the server 14.  The message server may be accessed by the end user computers 16 and 18 over the network 20 using standard HTTP and HTTPS protocols, and/or any protocol that can guarantee delivery over a secure or non-secure transfer.  The computers 16 and 18 may employ any of various conventional web browsers that can be used to display and manipulate data on web pages or a system based application (e.g., Windows, X-Windows, Cocoa, etc.) that can be used to display and manipulate data on a system display.  The computers 16 and 18 may also employ applications associated with various computing platforms, such as Java (e.g., J2ME), BREW, PocketPC, and Palm.

[0024]     Referring to Figs. 1 and 2, operation of the system 10 in sending the message 12 from one user computer 16 to the other user computer 18 can be described.  The process begins when the user at computer 16 logs into the system 10 (step 22 of Fig. 2).  For example, the user may access a web site or other network site associated with the message server 14, and the server 14 may provide a screen (e.g., an HTML (Hypertext Markup Language) page) for display on the user computer 16 that allows the user to log into the system.  Fig 3 depicts an example of a log-in screen 38 that may be

4

used. Upon entry of a valid user ID and password, the server 14 establishes a communications link with the computer 16 (e.g., a key infrastructure, secure sockets layer (SSL), secure HTML (S-HTML), or other secure or non-secure communications link), and a session ID is established for the time the user is logged into the system 10. The user is then presented with an input screen to compose the message (step 23). Fig 4 depicts an example of an input screen 40, which includes a text field 42 for entering an address or other identifier for one or more recipients of the message, and a text field 44 for entering message content. The screen 40 may also include a listing 46 of any messages sent to the user that have not been read.

[0025]        The recipient address may be an electronic mail (e-mail) address, text messaging address, instant messaging address, Short Messaging Service (SMS) address, cell phone number BlackBerry personal identification number (PIN), or the like. The recipient address may also be an ID that is created especially for a particular instance of the system 10.

[0026]        In one embodiment, screen 40 includes a QWERTY keyboard (not shown) for entry of information on the screen 40, thus preventing the message from being intercepted by keyboard (keystroke) logging hardware or software resident on the computer 16. This way a user can use a mouse to click on the keys to select a character. This keyboard may be implemented using Flash (FutureSplash) technology commercially available from Macromedia Inc.. The Flash based keyboard may randomly place spaces between the characters in the on-screen keyboard to further prevent interception of the message. Though this is a relatively slow data entry method, the user can be assured that their password or message will not be logged and intercepted.

[0027]        After the user enters the address of the message recipient and the message content, as shown in Fig. 5, he or she sends the message by selecting a button 48 on the screen 40. In response, the computer 16 sends the message 12 including the message content and recipient address to the message server 14 via the communications link (step 24). After the message 12 is sent, the sender's computer 16 retains no trace of the message's existence. For example, the message 12 will exist in random access memory (RAM), and possibly in virtual memory established in the disk drive, in the computer 16 from the time the user types the message the text field 42 (Fig. 4) until the loading of the next screen into computer 16, after which the message is effectively deleted.

[0028]        Upon receiving the message 12, the message server 14 creates a unique, one-time use, reply ID and attaches it to the message 12 (step 25). For example, the reply ID may be created using a 132 bit, randomly generated number. The server maintains a correlation (e.g., database or lookup table) between the message 12 sender (e.g., user of computer 16) and the reply ID. The message

5

server 14 also creates a unique, one-time use, message ID, which establishes a connection between the message contents and the message container (header) information. For example, the message ID may be created using a 132 bit, randomly generated number. The server maintains a correlation (e.g., database or lookup table) between the message 12 contents and the message ID.

[0029]      The message server 14 also replaces any unique identification of the sending user (i.e., user of computer 16) that may be associated with the message 12 with a predetermined display name for the sending user (step 26). This may be done, for example, using a lookup table, database, or the like. The display name for the user need not be unique, thus maintaining the anonymity of the user when the message 12 is ultimately received by the computer 18.

[0030]      Next, the message server 14 determines the locations of the one or more recipients for the message 12 (step 27). As used herein, a location may include a message mailbox, a message server associated with the recipient, a computer associated with the recipient, an electronic address of the recipient, or the like. In the system 10, a person can be referred through various identities. The system may recognize an e-mail address, text messaging address, instant messaging address, SMS address, cell phone number BlackBerry PIN, or the like, to route the message 12 to the recipient. If the intended recipient does not exist in the system 10, the server may contact that user using the native network (e.g., the e-mail network, text messaging network, instant messaging network, SMS network, cell phone network, BlackBerry network, or the like) to notify the user of the message 12 and to ask them to register (establish an identity) with the system 10 to read the message 12 contents (step 28). For example, if the recipient is identified by an e-mail address, the message notification will go to the e-mail recipient over the e-mail network. Similarly, if the recipient is identified by a Blackberry PIN, the message notification will go to the recipient over the Blackberry network.

[0031]      Once the location of a recipient is found, the message server 14 sends the message 12, which includes the message content and an associated container (header), to the recipient location (step 29). At the recipient location, the content of message 12 is stored separately from its container (e.g., not in the same file, in separate tables in a database, etc.), with the message ID being used as a link between the two. At this stage, the container for the message 12 includes the display name of the user, a date associated with the message 12 (e.g., the send or receive date), the message ID and the reply ID.

[0032]      To retrieve the message 12, the recipient logs into the system 10 using computer 18 (step 30). A screen similar to that in Fig. 3 may be displayed as a log-in screen. Upon entry of a

valid user ID and password, the server 14 establishes a communications link with the computer 18 (e.g., a key infrastructure, secure sockets layer (SSL), secure HTML (S-HTML), or other secure or non-secure communications link), and creates a session ID associated with the current user's session. The message server 14 then provides at least some of the container information(e.g., the date, and display name) for any unread messages 12 to the user computer 18 via the communications link (step 31). Where the container information for more than one message is sent to the computer 18, the server 14 may assign a sequence number to each of the messages, and associate each sequence number with the message's message ID. In this manner, the server 14 avoids sending the unique message ID to the computer 18 and instead sends the sequence number, which may be reused when a message is deleted and is, therefore, less traceable from the computer 18.

[0033]    Next, the user is presented with a listing of the unread messages 12 addressed to the user (step 32). For example, Fig 6 depicts an example of a screen 50, which includes a listing 46 of messages sent to the user. For each message 12, the container information 52 for the message 12 (e.g., the display name of the sender and the date of the message) are shown in the listing 46. The contents of the message 12 are not shown on this screen.

[0034]    To read the message 12 contents, the user selects the container information 52 for the message 12 in the screen 50 (step 33), and the computer 18 then requests the contents of the message 12 from the server computer 14 using the sequence number. In response to this action, the server computer 14 associates the current session ID with the reply ID for the message 12. Also in response to this action, the server computer 14 finds the message ID corresponding to the sequence number, retrieves the message content corresponding to the message ID, and then sends the message content to the computer 18, where the message content is displayed independently of the container information of the message 12 (Step 34). As depicted in Fig. 7, the message 12 content 54 is not displayed at the same time as the container information 52 (Fig. 6) to ensure that the two cannot be linked.

[0035]    In one embodiment, the screen 50 employs Flash technology to display the message content 54. For example, the screen 50 may require the user to "park" the on-screen cursor in an area in the screen 50 to see the message content 54, which may be displayed as a Flash movie. Should the cursor be moved, the displayed content 54 will be hidden from view on the screen to allow the user to quickly prevent the message content 54 from being seen by onlookers. Also, the message cannot be printed using the web browser or application print because the message content 54 will be hidden as soon as the user moves the mouse in attempt to print or through the use of Cascading Style Sheets

7

(CSS) which will not show or hide the section of screen that contains the message during the printing of the page.

[0036]    After the server computer sends the message content to the computer 18, the server computer 14 deletes the message 12 (except for the reply ID, which is associated with the current session) from its own memory. For example deletion of message 12 from server computer 14 may be performed using an algorithm in accordance with US Department of Defense (DoD) clearing and sanitizing standard DoD 5220.22-M. In one embodiment, the server computer 14 deletes the message 12 and reply ID from its own memory if the recipient fails to retrieve the message 12 within a predetermined amount of time.

[0037]    After viewing the message content 54, the user may select a button 57 on the screen 50 to return to the listing of messages (e.g., screen 50 Fig. 6) or may choose to respond to the message 12 (step 35), as will be described in further detail hereinafter. If the user fails to respond to the message 12 within a predetermined amount of time (e.g., 1 hour) the reply ID may be deleted from the server 14. If the user chooses to return to the listing of messages, the message content 54 is automatically deleted from the recipient's computer 18 after viewing (step 36). For example, the message content 54 will exist only in RAM, and possibly in virtual memory established in the disk drive, in the computer 18 from the time the user views the message content 54 until the loading of the next screen into computer 18, after which the message is effectively deleted. Furthermore, the listing of messages (e.g., screen 50 of Fig. 6), will no longer include the message 12, which has been deleted from the server 14, and the session ID will no longer include reference to the reply ID. In other words, the user will not be able to view message 12 again or reply to the message 12.

[0038]    Referring to Figs. 8 and 9, operation of the system 10 in sending a reply message 60 from the user computer 18 to the user computer 16 can be described. As shown in Fig. 10, the user of computer 18 is presented with a text input field 44 in which to compose the contents of the reply message 60. After the user enters the contents into the text field 44 (step 62), he or she clicks on the "send stream" button 48. In response, the computer 18 sends the reply message content to the message server 14 via the communications link (step 63). After the reply message 60 is sent, the sender's computer 18 retains no trace of the message's existence. For example, the message 60 will exist only in RAM, and possibly in virtual memory established in the disk drive, in the computer 18 from the time the user types the message the text field 44 until the loading of the next screen into computer 16, after which the message is effectively deleted.

[0039]    In one embodiment, screen 50 includes a QWERTY keyboard (not shown) for entry

8

of information on the screen 50, thus preventing the reply message contents from being intercepted by keyboard (keystroke) logging hardware or software resident on the computer 18. This way a user can use a mouse to click on the keys to select a character. This keyboard may be implemented using Flash (FutureSplash) technology commercially available from Macromedia Inc.. The Flash based keyboard may randomly place spaces between the characters in the on-screen keyboard to further prevent interception of the message. Though this is a relatively slow data entry method, the user can be assured that their password or message will not be logged and intercepted.

[0040]    Upon receiving the message60 , the message server 14 determines the initial reply ID, which is associated with the current session ID, and uses the reply ID to determine the location of the initial sender (step 64). This may be accomplished using a lookup table, database, or the like, which provides a correlation between the reply ID and the sender of the initial message (e.g., message 12 of Fig. 1). The message server 14 then deletes the initial reply ID (the reply ID for message 12 of Fig. 1) from its own memory (step 65).

[0041]    Next, the message server 14 creates another unique, one-time use, reply ID and attaches it to the reply message 60 (step 66). The server 14 maintains a correlation (e.g., database or lookup table) between the message 60 sender (e.g., user of computer 18) and the new reply ID. The message server 14 also creates a unique, one-time use, message ID, which establishes a connection between the message 60 contents and the message 60 container (header) information. For example, the message ID may be created using a 132 bit, randomly generated number. The server 14 maintains a correlation (e.g., database or lookup table) between the message 60 contents and the message ID.

[0042]    The message server 14 also replaces any unique identification of the user of computer 18 in the reply message with a predetermined display name for the user (step 67). This may be done, for example, using a lookup table, database, or the like. The display name for the user need not be unique, thus maintaining the anonymity of the user when the reply message 60 is ultimately received by the computer 16.

[0043]    Next, the message server 14 sends the reply message 60, which includes the message content and an associated container (header), to the recipient location (step 68). At the recipient location, the content of message 12 is stored separately from its container (e.g., not in the same file, in separate tables in a database, etc.), with the message ID being used as a link between the two. At this stage, the container for the message 60 includes the display name of the replying user, a date associated with the reply message 60 (e.g., the send or receive date), the new message ID, and the new reply ID.

9

[0044] To retrieve the message 60, the recipient (user of computer 16) logs into the system (if the recipient is not already logged in) using a screen similar to that in Fig. 3 (step 69). Upon entry of a valid user ID and password, the server 14 establishes a communications link with the computer 16 (e.g., a key infrastructure, secure sockets layer (SSL), secure HTML (S-HTML), or the like), and creates a session ID associated with the current user's session.. The message server 14 then provides at least some of the container information(e.g., the date, and display name) for the message 60, and any other initial messages 12 or reply messages 60, to the user computer 16 via the communications link (step 70). Where the container information for more than one message is sent to the computer 16, the server 14 may assign a sequence number to each of the messages, and associate each sequence number with the message's message ID. In this manner, the server 14 avoids sending the unique message ID to the computer 16 and instead sends the sequence number, which may be reused when a message is deleted and is, therefore, less traceable from the computer 16.

[0045] Next, the user of computer 16 is presented with a listing of the unread messages addressed to the user (step 71). For example, Fig 11 depicts an example of a screen 40, which includes a listing 46 of any messages sent to the user that have not been read. For each message 12, the container information 52 for the message 60 (e.g., the display name of the sender and the date of the message) are shown in the listing 46. The contents of the message 12 are not shown on this screen.

[0046] To read the message 60 contents, the user selects the container information 52 for the message 60 in the screen 50 (step 72), and the computer 16 then requests the contents of the message 60 from the server computer 14 using the sequence number. In response to this action, the server computer 14 associates the current session ID with the reply ID for the message 60. Also in response to this action, the server computer 14 finds the message ID corresponding to the sequence number, retrieves the message content corresponding to the message ID, and then sends the message content to the computer 16, where the message content is displayed independently of the container information of the message 12 (Step 73). As depicted in Fig. 12, the message 12 contents 54 are not displayed at the same time as the container information 52 (Fig. 11) to ensure that the two cannot be linked.

[0047] In one embodiment, the screen 40 employs Flash technology to display the message content 54. For example, the screen 40 may require the user to "park" the on-screen cursor in an area in the screen 40 to see the message content 54, which may be displayed as a Flash movie. Should the cursor be moved, the displayed message content 54 will be hidden from view on the screen to allow

10

the user to quickly prevent the message content 54 from being seen by onlookers. Also, the message cannot be printed using the web browser or application print because the message content 54 will be hidden as soon as the user moves the mouse in attempt to print.

[0048] After the server computer sends the message contents to the computer 16, the server computer 14 deletes the message 60 (except for the reply ID) from its own memory. For example deletion of message 60 from server computer 14 may be performed using an algorithm in accordance with US Department of Defense (DoD) clearing and sanitizing standard DoD 5220.22-M. In one embodiment, the server computer 14 deletes the message 60 and reply ID from its own memory if the recipient fails to retrieve the message 60 within a predetermined amount of time.

[0049] After viewing the message content 54, the user may select a button 57 on the screen 40 to return to the listing of messages (e.g., screen 40 Fig. 11) or may choose to respond to the message 60 (step 74), thus creating another reply message using the method of Fig. 9. If the user fails to respond to the message 60 within a predetermined amount of time (e.g., 1 hour) the reply ID may be deleted from the server 14. If the user chooses to return to the listing of messages, the message content 54 is automatically deleted from the recipient's computer 16 after viewing (step 75). For example, the message content 54 will exist only in RAM, and possibly in virtual memory established in the disk drive, in the computer 16 from the time the user views the message content 54 until the loading of the next screen into computer 16, after which the message is effectively deleted. Furthermore, the listing of messages (e.g., screen 40 of Fig. 11), will no longer include the message 60, which has been deleted from the server 14, and the session ID will no longer include reference to the reply ID. In other words, the user will not be able to view message 60 again or reply to the message 60.

[0050] Advantageously, the system 10 allows the users of the computers 16 and 18 to have a private conversation over the network 20. After the message 12 or 60 is sent, the sender leaves no proof of the message on his or her computer. After the recipient reads the message 12 or 60, the message 12 or 60 no longer exists on the system 10, thus ensuring that the message 12 or 60 cannot be forensically recreated and ensuring that there is no record of the message 12 or 60 remaining on the system 10.

[0051] Fig. 13 is a schematic diagram depicting a system 10 having an alternative network topology. The embodiment of Fig. 13 is substantially similar to that of Fig. 1 and Fig. 8, except that the system 10 of Fig. 13 employs two message servers 14A and 14B operably coupled to the user computers 16 and 18 by one or more networks 20. In the embodiment of Fig. 13, the two

11

message servers 14A and 14B together perform the tasks previously described for the single message server 14 of Figs. 1 and 8. For example, in the method for sending the initial message 12, the message server 14A may perform steps 22-28 and a portion of step 29 of Fig. 2, while message server 14B acts as the "recipient location" and performs a portion of step 29 and steps 30-36 of Fig. 2. It will be appreciated that both servers 14A and 14B keep track of the reply ID and both servers 14A and 14B delete the message 12 after it has been passed along. Similarly, in the method for sending the reply message 60, the message server 14B may perform steps 63-67 and a portion of step 68, while message server 14A acts as the "recipient location" and performs a portion of step 68 and steps 69-75. This arrangement is particularly useful where message servers 14A and 14B are each associated with a different enterprise, business organization, LAN, or the like.

[0052] Fig. 14 is a functional block diagram of an example of a conventional general-purpose digital computing environment that can be used to implement various aspects of the present invention. For example, a computer 100 may be employed as the message server 14 or user computers 16 and 18 of Figs. 1, 8 and 13. In Fig. 14, the computer 100 includes a processing unit 110, a system memory 120, and a system bus 130 that couples various system components including the system memory to the processing unit 110. The system bus 130 may be any of several types of bus structures including a memory bus or memory controller, a peripheral bus, and a local bus using any of a variety of bus architectures. The system memory 120 includes read only memory (ROM) 140 and random access memory (RAM) 150.

[0053] A basic input/output system 160 (BIOS), containing the basic routines that help to transfer information between elements within the computer 100, such as during start-up, is stored in the ROM 140. The computer 100 also includes a hard disk drive 170 for reading from and writing to a hard disk (not shown), a magnetic disk drive 180 for reading from or writing to a removable magnetic disk 190, and an optical disk drive 191 for reading from or writing to a removable optical disk 192 such as a CD ROM or other optical media. The hard disk drive 170, magnetic disk drive 180, and optical disk drive 191 are connected to the system bus 130 by a hard disk drive interface 192, a magnetic disk drive interface 193, and an optical disk drive interface 194, respectively. The drives and their associated computer-readable media provide nonvolatile storage of computer readable instructions, data structures, program modules and other data for the personal computer 100. It will be appreciated by those skilled in the art that other types of computer readable media that can store data that is accessible by a computer, such as magnetic cassettes, flash memory cards, digital

video disks, Bernoulli cartridges, random access memories (RAMs), read only memories (ROMs),
and the like, may also be used in the example operating environment. A computer-readable medium,
as used herein, is intended to include a single medium as well as a collection of physically separate
media, such as, for example, a collection of CD ROMs, or a CD ROM in combination with a
computer memory.

[0054]       A number of program modules can be stored on the hard disk drive 170, magnetic
disk 190, optical disk 192, ROM 140 or RAM 150, including an operating system 195, one or more
application programs 196, other program modules 197, and program data 198.  A user can enter
commands and information into the computer 100 through input devices such as a keyboard 101 and
pointing device 102.  Other input devices (not shown) may include a microphone, joystick, game pad,
satellite dish, scanner or the like. These and other input devices are often connected to the processing
unit 110 through a serial port interface 106 that is coupled to the system bus, but may be connected by
other interfaces, such as a parallel port, game port or a universal serial bus (USB).  Further still, these
devices may be coupled directly to the system bus 130 via an appropriate interface (not shown).  A
monitor 107 or other type of display device is also connected to the system bus 130 via an interface,
such as a video adapter 108.  In addition to the monitor, personal computers typically include other
peripheral output devices (not shown), such as speakers and printers.  A pen digitizer 165 and,
accompanying pen or stylus 166 may be provided in order to digitally capture freehand input.
Although a direct connection between the pen digitizer 165 and the serial port is shown, in practice,
the pen digitizer 165 may be coupled to the processing unit 110 directly, via a parallel port or other
interface and the system bus 130 as known in the art.  Furthermore, although the digitizer 165 is
shown apart from the monitor 107, it is preferred that the usable input area of the digitizer 165 be co-
extensive with the display area of the monitor 107.  Further still, the digitizer 165 may be integrated
in the monitor 107, or may exist as a separate device overlaying or otherwise appended to the monitor
107.

[0055]       The computer 100 can operate in a networked environment using logical connections
to one or more remote computers, such as a remote computer 109.  The remote computer 109 can be
a server, a router, a network PC, a peer device or other common network node, and typically includes
many or all of the elements described above relative to the computer 100, although only a memory
storage device 111 has been illustrated in Fig. 14. The logical connections depicted in Fig. 14 include
a local area network (LAN) 112 and a wide area network (WAN) 113. Such networking
environments are commonplace in offices, enterprise-wide computer networks, intranets and the

13

Internet.

[0056]     When used in a LAN networking environment, the computer 100 is connected to the local network 112 through a network interface or adapter 114.  When used in a WAN networking environment, the personal computer 100 typically includes a modem 115 or other means for establishing a communications over the wide area network 113, such as the Internet.  The modem 115, which may be internal or external, is connected to the system bus 130 via the serial port interface 106.  In a networked environment, program modules depicted relative to the personal computer 100, or portions thereof, may be stored in the remote memory storage device.

[0057]     It is to be noted that the above described aspects and embodiments may be conveniently implemented using a conventional general purpose digital computer programmed according to the teachings of the present specification, as will be apparent to those skilled in the computer art. Appropriate software coding can readily be prepared by skilled programmers based on the teachings of the present disclosure, as will be apparent to those skilled in the software art.

[0058]     Such software can be a computer program product which employs a storage medium including stored computer code which is used to program a computer to perform the disclosed function and process of the present invention. The storage medium may include, but is not limited to, any type of conventional floppy disks, optical disks, CD-ROMs, magneto-optical disks, ROMs, RAMs, EPROMs, EEPROMs, magnetic or optical cards, or any other suitable media for storing electronic instructions.

[0059]     Although described in the context of preferred embodiments, it should be realized that a number of modifications to these teachings may occur to one skilled in the art.  While the invention has been particularly shown and described with respect to preferred embodiments thereof, it will be understood by those skilled in the art that changes in form and details may be made therein without departing from the scope and spirit of the invention.

14

CLAIMS

What is claimed is:

1. A method for reducing traceability of electronic messages, the method comprising:

receiving an electronic message from a first user computer, the electronic message including a message content and a recipient address associated with a second user computer;

associating a display name with a user of the first user computer;

associating a unique reply ID with the message;

associating a unique message ID with the message;

associating a date with the message;

removing any unique identification of the first user computer from the message;

attaching the display name, reply ID, message ID, and date to the message as container information;

sending the message to a recipient location associated with the recipient address;

storing the message content separately from the container information at the recipient location;

in response to a request from the second user computer, providing at least some of the container information to the second user computer; and

in response to a further request from the second computer, providing the message content to the second user computer, wherein the message content and the container information are not displayed at the same time on the second user computer to reduce traceability of the electronic message.

2. The method of claim 1, further comprising:

deleting the message content, display name, message ID, and date immediately after the message content is provided to the second user computer.

3. The method of claim 1, wherein the message content is input at the first computer using a display-based keyboard.

15

4.  The method of claim 1, further comprising:

receiving a electronic reply message from the second user computer, the electronic reply message including a reply message content;

determining a location of the first user computer using the reply ID;

deleting the reply ID;

associating a second unique reply ID with the reply message;

associating a second display name with a user of the second user computer;

associating a second unique message ID with the reply message;

associating a second date with the reply message;

removing any unique identification of the second user computer from the reply message;

attaching the second display name, second reply ID, second message ID, and second date to the reply message as reply message container information;

sending the reply message to the location of the first user computer;

storing the reply message content separately from the reply message container information at the location of the first user computer;

in response to a request from the first user computer, providing at least some of the reply message container information to the first user computer; and

in response to a further request from the first user computer, providing the reply message content to the first user computer, wherein the reply message content and the reply message container information are not displayed at the same time on the first user computer to reduce traceability of the electronic reply message.

5.  The method of claim 4, further comprising:

deleting the reply message content, the second display name, the second message ID, and the second date immediately after the reply message content is provided to the first user computer.

6.  A system for reducing traceability of electronic messages, the system comprising:

at least one server computer configured to:

receive an electronic message from a first user computer, the electronic message

16

including a message content and a recipient address associated with a second user computer;

associate a display name with a user of the first user computer;

associate a unique reply ID with the message;

associate a unique message ID with the message;

associate a date with the message;

remove any unique identification of the first user computer from the message;

attach the display name, reply ID, message ID, and date to the message as container information;

send the message to a recipient location associated with the recipient address;

store the message content separately from the container information at the recipient location;

in response to a request from the second user computer, provide at least some of the container information to the second user computer; and

in response to a further request from the second computer, provide the message content to the second user computer, wherein the message content and the container information are not displayed at the same time on the second user computer to reduce traceability of the electronic message.

7.  A storage medium encoded with machine-readable computer program code for reducing traceability of electronic messages, the storage medium including instructions for causing a computer to implement a method comprising:

receiving an electronic message from a first user computer, the electronic message including a message content and a recipient address associated with a second user computer;

associating a display name with a user of the first user computer;

associating a unique reply ID with the message;

associating a unique message ID with the message;

associating a date with the message;

removing any unique identification of the first user computer from the message;

attaching the display name, reply ID, message ID, and date to the message as container information;

sending the message to a recipient location associated with the recipient address;

storing the message content separately from the container information at the

17

recipient location;

in response to a request from the second user computer, providing at least some of the container information to the second user computer; and

in response to a further request from the second computer, providing the message content to the second user computer, wherein the message content and the container information are not displayed at the same time on the second user computer to reduce traceability of the electronic message.

## ABSTRACT

[0060]      The system allows users to have a private conversation over the network.  The system includes various features to ensure that the message cannot be forensically recreated and to ensure there is no record of the message ever existing on the system.



**Initial Message**

*Fig. 1*



**Initial Message**

*Fig. 2*

vaporstream - home - Mozilla Firefox

File   Edit   View   Go   Bookmarks   Tools   Help

http://www.vaporstream.com/                    Go

MSN Hotmail - Inbox  |  Buy IntelliClean Sonicare 8300 Toothbru...  |  IntelliClean System - Comparison guide  |  vaporstream - home

# vaporstream

Help

*38*

## A new form of electronic communication

Now you can really express yourself without having to worry about your privacy. When you send anything on vapor stream, you can now rest assured that only you and the other person will know it.

- **Your message can only be viewed once by the recipient.**
  The message can't be forwarded, archived, or saved. Once its read, it is deleted from our servers, permanantly.

- **You are no longer uniquely identified with a message**
  Your identity is never sent to the receipient and the message can never be viewed with your name or date of the message.

- **Easy Communication**
  No more worries about space, folders, delivery, software, viruses, attachments, or any of the other headaches associated with other forms of electronic communications.

- **Server-based Security**
  Using 128/256 bit encryption for communication, redundant message storage, secure transmission of message, and secure erasure of the message on the server-side, no need to worry about message security.

**Register Now!**

### Sign in to Vapor Stream!

vaporstream ID: [                    ]

Password: [                    ]

**Sign In!**

*Forgot your password?*

How Vapor Stream Works?

Corporate Uses

Privacy and Security

Join Now!

~ Privacy Policy - Terms of Use - Contact - About

*Fig. 3*

Done



vaporstream

Account | Email Aliases | Address Book | Help | Sign Out

amit shah is currently signed in.

**Stream Listing**                    46

There are no streams waiting to be read.

**Compose Stream**

To:                                    42

Message:                               44

Send Stream                            48

40

~ Privacy Policy - Terms of Use - Contact - About

Page load in 0.00134399653003955 seconds

Fig. 4

Done



Fig. 5

vapor stream - unviewed streams - Mozilla Firefox

File   Edit   View   Go   Bookmarks   Tools   Help

http://www.vaporstream.com/stream.php

MSN Hotmail - Inbox | Buy IntelliClean Sonicare 8300 ... | IntelliClean System - Comparis... | **vapor stream - unviewed ...** | vaporstream.UserEmail runnin...

# vaporstream

Account | Email Aliases | Address Book | Help | Sign Out

amit shah is currently signed in.

**Stream Listing**                                      46                    52

| From | Date Received | |
|------|---------------|---|
| amit shah | Jun 14 3:39 pm | read |

**Compose Stream**

To:

Message:

[ Send Stream ]

50

~ Privacy Policy - Terms of Use - Contact - About

Page load in 0.0015199184417725 seconds

Fig. 6

Done

# vaporstream

Account | Email Aliases | Address Book | Help | Sign Out

amit shah is currently signed in.

**< Return to Stream Listing**

57

54

| Message |
| --- |

this is my long and great message. wow.

50

**Reply to Stream**

Message:

44

**Send Stream**

48

This stream has been *vaporized.*

~ Privacy Policy - Terms of Use - Contact - About

*Fig. 7*

Transferring data from www.vaporstream.com...



**Reply Message**

*Fig. 8*



Reply message content is input by user at receiver computer — 62

Reply message content is sent from receiver computer to message server via communications link — 63

Message server determines location of initial sender using reply ID — 64

Message server deletes reply ID — 65

Message server creates another unique, one-time use, reply ID and message ID and attaches them to reply message — 66

Message server replaces unique ID for the replying user in the reply message with display name for the replying user — 67

Message server sends message to location of initial sender with the message contents being stored separately from the message container information at the location of initial sender — 68

Initial sender logs into system to create communications link between initial sender computer and message server — 69

Container information for unread messages is sent from message server to initial sender computer — 70

Container information is displayed to initial sender on initial sender computer — 71

Initial sender selects container information to display reply message content — 72

Message content is retrieved from the server computer and displayed on initial sender computer independently of the container information — 73

Optionally, the initial sender replies to the reply message — 74

Reply message automatically deleted from message server and initial sender computer after viewing — 75

Reply Message

Fig. 9



*Fig. 10*

Fig. 11

Fig. 12



Initial Message

Reply Message

Fig. 13



Fig. 14

**This Page is Inserted by IFW Indexing and Scanning Operations and is not part of the Official Record**

## BEST AVAILABLE IMAGES

Defective images within this document are accurate representations of the original documents submitted by the applicant.

Defects in the images include but are not limited to the items checked:

&#10063; **BLACK BORDERS**

&#10063; **IMAGE CUT OFF AT TOP, BOTTOM OR SIDES**

&#10063; **FADED TEXT OR DRAWING**

&#10063; **BLURRED OR ILLEGIBLE TEXT OR DRAWING**

&#10063; **SKEWED/SLANTED IMAGES**

☑ **COLOR OR BLACK AND WHITE PHOTOGRAPHS**

&#10063; **GRAY SCALE DOCUMENTS**

☑ **LINES OR MARKS ON ORIGINAL DOCUMENT**

&#10063; **REFERENCE(S) OR EXHIBIT(S) SUBMITTED ARE POOR QUALITY**

&#10063; **OTHER:** _____

**IMAGES ARE BEST AVAILABLE COPY.**
**As rescanning these documents will not correct the image problems checked, please do not report these problems to the IFW Image Problem Mailbox.**

PATENT APPLICATION SERIAL NO. _____

## U.S. DEPARTMENT OF COMMERCE
## PATENT AND TRADEMARK OFFICE
## FEE RECORD SHEET

08/01/2005 AKELECH1 00000064 231665   60703367
01 FC:2005        100.00 DA

**PTO-1556**
**(5/87)**

*U.S. Government Printing Office: 2002 — 489-267/69033

PTO/SB/81 (01-09)
Approved for use through 11/30/2011. OMB 0651-0035
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| POWER OF ATTORNEY OR REVOCATION OF POWER OF ATTORNEY WITH A NEW POWER OF ATTORNEY AND CHANGE OF CORRESPONDENCE ADDRESS | | |
|---|---|---|
| Application Number | 60/703,367 | |
| Filing Date | 7/28/2005 | |
| First Named Inventor | Joseph Collins | |
| Title | Method and System for Reducing Traceability | |
| Art Unit | | |
| Examiner Name | | |
| Attorney Docket Number | 60003-001USP1 | |

I hereby revoke all previous powers of attorney given in the above-identified application.

☐ A Power of Attorney is submitted herewith.
OR
☐ I hereby appoint Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith.
OR
☒ I hereby appoint Practitioner(s) named below as my/our attorney(s) or agent(s) to prosecute the application identified above, and to transact all business in the United States Patent and Trademark Office connected therewith:

| Practitioner(s) Name | Registration Number |
|---|---|
| Jamie T. Gallagher | 51714 |
| | |
| | |

Please recognize or change the correspondence address for the above-identified application to:

☐ The address associated with the above-mentioned Customer Number.
OR
☒ The address associated with Customer Number: 118116
OR
☐ Firm or Individual Name

| Address | |
|---|---|
| City | State | Zip |
| Country | | |
| Telephone | Email | |

I am the:
☐ Applicant/Inventor.
OR
☒ Assignee of record of the entire interest. See 37 CFR 3.71.
Statement under 37 CFR 3.73(b) (Form PTO/SB/96) submitted herewith or filed on _____

SIGNATURE of Applicant or Assignee of Record

| Signature | | Date | 3/18/16 |
|---|---|---|---|
| Name | Galina Datskovsky | Telephone | |
| Title and Company | CEO, Vaporstream, Inc. | | |

NOTE: Signatures of all the inventors or assignees of record of the entire interest or their representative(s) are required. Submit multiple forms if more than one signature is required, see below*.

☐ *Total of _____ forms are submitted.

This collection of information is required by 37 CFR 1.31, 1.32 and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450. DO NOT SEND FEES OR COMPLETED  FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/SB/96 (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## STATEMENT UNDER 37 CFR 3.73(b)

Applicant/Patent Owner: Vaporstream, inc.

Application No./Patent No.: 60/703,367      Filed/Issue Date: 7/28/2005

Titled: Method and System for Reducing Traceability of Electronic Messages

Vaporstream, Inc.     , a     corporation

(Name of Assignee)          (Type of Assignee, e.g., corporation, partnership, university, government agency, etc.

states that it is:

1. [X] the assignee of the entire right, title, and interest in;

2. [ ] an assignee of less than the entire right, title, and interest in
(The extent (by percentage) of its ownership interest is _____%); or

3. [ ] the assignee of an undivided interest in the entirety of (a complete assignment from one of the joint inventors was made)

the patent application/patent identified above, by virtue of either:

A. [ ] An assignment from the inventor(s) of the patent application/patent identified above. The assignment was recorded in the United States Patent and Trademark Office at Reel _____, Frame _____, or for which a copy therefore is attached.

OR

B. [X] A chain of title from the inventor(s), of the patent application/patent identified above, to the current assignee as follows:

     1. From: Amit Shah and Joseph Collins     To: Void Communications, Inc.

       The document was recorded in the United States Patent and Trademark Office at
       Reel 021121     Frame 0568     or for which a copy thereof is attached.

     2. From: Void Communications, Inc.     To: Vaporstream, Inc.

       The document was recorded in the United States Patent and Trademark Office at
       Reel 022991     Frame 0582     or for which a copy thereof is attached.

     3. From: _____     To: _____

       The document was recorded in the United States Patent and Trademark Office at
       Reel _____, Frame _____ or for which a copy thereof is attached.

[ ] Additional documents in the chain of title are listed on a supplemental sheet(s).

[X] As required by 37 CFR 3.73(b)(1)(i), the documentary evidence of the chain of title from the original owner to the assignee was, or concurrently is being, submitted for recordation pursuant to 37 CFR 3.11.

[NOTE: A separate copy (i.e., a true copy of the original assignment document(s)) must be submitted to Assignment Division in accordance with 37 CFR Part 3, to record the assignment in the records of the USPTO. See MPEP 302.08]

The undersigned (whose title is supplied below) is authorized to act on behalf of the assignee.

_____          3/16/16
Signature                           Date

Galina Datskovsky                CEO, Vaporstream, Inc.
Printed or Typed Name              Title

This collection of information is required by 37 CFR 3.73(b). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 25209319 |
| **Application Number:** | 60703367 |
| **International Application Number:** | |
| **Confirmation Number:** | 6282 |
| **Title of Invention:** | Method and system for reducing traceability of electronic messages |
| **First Named Inventor/Applicant Name:** | Joseph  Collins |
| **Customer Number:** | 27267 |
| **Filer:** | Jamie T. Gallagher |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 102760-100 |
| **Receipt Date:** | 16-MAR-2016 |
| **Filing Date:** | 28-JUL-2005 |
| **Time Stamp:** | 11:05:22 |
| **Application Type:** | Provisional |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Power of Attorney | VS001USP1_20160316_POA_signed.pdf | 498966<br>ecc6e91d692f930e63bfcbaaf0d7ef19ef81d7fa | no | 2 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |

Total Files Size (in bytes): 498966

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 60/703,367 | 07/28/2005 | Joseph Collins JR. | 102760-100 |

**CONFIRMATION NO. 6282**

27267
WIGGIN AND DANA LLP
ATTENTION: PATENT DOCKETING
ONE CENTURY TOWER, P.O. BOX 1832
NEW HAVEN, CT 06508-1832

**POWER OF ATTORNEY NOTICE**

*OC000000081725522*

Date Mailed: 03/28/2016

## NOTICE REGARDING CHANGE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/16/2016.

• The Power of Attorney to you in this application has been revoked by the assignee who has intervened as provided by 37 CFR 3.71. Future correspondence will be mailed to the new address of record(37 CFR 1.33).

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/rmohamed/

_____

page 1 of 1

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 60/703,367 | 07/28/2005 | Joseph Collins JR. | 00003-001USP1 |

**CONFIRMATION NO. 6282**

118116
Birch Tree IP Law & Strategy PLLC
370 Farrell Street, Suite 423
South Burlington, VT 05403

**POA ACCEPTANCE LETTER**

*OC000000081725581*

Date Mailed: 03/28/2016

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 03/16/2016.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the requirements it sets forth should be directed to the Office of Data Management, Application Assistance Unit, at **(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/rmohamed/
_____

page 1 of 1