UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAPORSTREAM, INC.,<br><br>                            Plaintiff,<br><br>v.<br><br>SNAP INC. d/b/a/ Snapchat, Inc.,<br><br>                            Defendant. | Case No.: 2:17-cv-00220-MLH (KSx)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 74.] |

      On August 22, 2017, Defendant Snap Inc. filed a motion for summary judgment on the basis that the patents-in-suit are invalid under 35 U.S.C. § 101. (Doc. No. 74.) On September 26, 2017, Plaintiff Vaporstream, Inc. filed an opposition to Defendant's motion for summary judgment. (Doc. No. 82.) On October 16, 2017, Snap filed its reply. (Doc. No. 84.) On October 18, 2017, Snap filed a notice of supplemental authority. (Doc. No. 86.) On February 9, 2018, Vaporstream filed a notice of supplemental authority. (Doc. No. 104.) On February 13, 2018, Snap filed a response to Vaporstream's February 9, 2018 notice of supplemental authority. (Doc. No. 105.) On February 14, 2018, Vaporstream filed a second notice of supplemental authority. (Doc. No. 106.) On February 22, 2018, Snap filed a second notice of supplemental authority. (Doc. No. 108.) On February 26,

2018, the Court took the matter under submission. (Doc. No. 113.) For the reasons below, the Court denies Defendant Snap's motion for summary judgment.

## **Background**

On January 10, 2017, Plaintiff VaporStream filed a complaint for patent infringement against Defendant Snap, alleging infringement of U.S. Patent Nos. 8,886,739, 8,935,351, 9,306,885, 9,306,886, 9,313,155, 9,313,156, 9,313,157, 9,338,111, and 9,413,711. (Doc. No. 1.) In the present action, Vaporstream has asserted 89 claims from nine patents against Snap. (Doc. No 54, Ex. C.)

The patents-in-suit are closely related, claim priority to the same July 28, 2005 filing, and share a substantially identical specification.[1] (Doc. No. 23 at 2.) The patents-in-suit relate generally to systems and methods for "reducing traceability" of electronic messages. See '739 Patent at 1:46-2:8. The common Background section of the specification explains some perceived problems with conventional email messaging:

> Typically, an electronic message between two people is not private. It may travel along a public network, such as the Internet, and be susceptible to interception by unintended third parties. Messages are also logged and archived by the communication systems themselves. They may also be copied, cut, pasted, printed, forwarded, blind copied, or otherwise manipulated. This may give a message a "shelf-life" that is often uncontrollable by the sender or even the recipient. Surreptitious logging (e.g., by keystroke and message recording software) may occur by third parties that have gained authorized access to either the computer of the sender and/or the recipient.

---

[1] The claims of the '739, '885, '155, and '156 patents relate to the "sending user device," while the claims of the '351, '886, '157, and '111 patents relate to the "receiving user device." The asserted claims of the '711 patent recite aspects of both the "send side" and the "receive side." (Doc. No. 23 at 2, n. 2.)

'739 Patent at 1:51-64.[2] To address these problems, the claimed inventions disclose systems and methods purporting to reduce the traceability of electronic messages. Id. at 3:48-4:6.

Claim 1 of the '739 patent is an example of a "send side" asserted claim.[3] Claim 1 of the '739 patent claims:

> 1. A computer-implemented method of handling an electronic message, the method comprising:
>
> providing a first display and a second display at a sending user device, the first display configured to allow a sending user to associate a first message content including a media component with the electronic message, the second display configured to allow the sending user to input a first recipient address corresponding to the first message content, the first and second displays not being displayed at the same time;
>
> displaying via the first display a first message content including a media component;
>
> receiving via the second display a first recipient address, wherein the first message content including a media component and the first recipient address are not displayed to the sending user at the same time;
>
> associating a message ID with the first message content including a media component, the message ID correlating the first recipient address and the first message content including a media component; and
>
> transmitting the recipient address and the first message content including a media component from the sending user device to a server computer, the first message content including a media component being transmitted to the server computer separately from the recipient address, the first message content including a media component not being accessible by the sending user for

---

[2]  The parties agree that the specification of the '739 patent may be used and cited to as an exemplary specification for all of the patents-in-suit except for the '711 patent. (See Doc. No. 97-1 at 1; Doc. No. 100 at 3 n.4.)

[3]  The "send side" asserted claims are claims 1, 4-8, and 10 of the '739 Patent; claims 1 and 5-10 of the '885 Patent; claims 1-6 and 9-13 of the '155 Patent; and claims 1-3 and 6-11 of the '156 Patent.

display via the sending user device after said transmitting the media component to the server computer.

'739 Patent at 18:50-19:11.

Claim 1 of the '351 patent is an example of a "receive side" asserted claim.[4] Claim 1 of the '351 patent claims:

1. A computer-implemented method of handling an electronic message, the method comprising:

receiving at a recipient user device a first header information corresponding to a first message content that includes a media component;

providing a first display via the recipient user device, the first display including the first header information in a message list, the first display not displaying the media component;

receiving at the recipient user device the first message content including the media component, wherein the first message content including the media component is associated with a unique message ID that correlates the first message content including the media component with the first header information;

receiving a selection by the recipient user via the first display, the selection directed to a portion of the message list corresponding to the first header information;

in response to the selection, providing a second display via the recipient user device, the second display displaying the first message content including the media component without displaying a username associated with the first header information; and

automatically deleting the first message content including the media component at a predetermined amount of time after being displayed such that after the second display is terminated from view, the first message content including the media component is no longer available to the recipient user.

---

[4] The "receive side" asserted claims are claims 1, 3-7, 9, 11, and 12 of the '351 Patent; claims 1-6 and 8-13 of the '886 Patent; claims 1-7 and 10 of the '157 Patent; and claims 1, 2, 4-6, and 8-12 of the '111 Patent. The asserted claims of the '711 patents are claims 1-17, which recites aspects of both the "send side" and "receive side" asserted claims.

'351 Patent at 18:50-19:11.

On February 22, 2017, Snap filed a motion to dismiss Vaporstream's patent infringement claims on the grounds that the patents-in-suit fail to claim patent-eligible subject matter and, thus, are invalid under 35 U.S.C. § 101. (Doc. No. 23.) On June 12, 2017, the Court denied Snap's motion to dismiss for lack of patentable subject matter without prejudice. (Doc. No. 59.) In the order, the Court analyzed the subject matter eligibility of the patents-in-suit under the two-step inquiry from Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347, 2355 (2014). At Alice step one, the Court held that "the asserted claims and their specific limitations 'do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea.'" (Doc. No. 59 at 10-11 (quoting Bascom Global Internet Services, Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1349 (Fed. Cir. 2016).)

The Court then turned to Alice step two and explained that the determination of "[w]hether the generic components [utilized by the patents-in-suit] operate in an unconventional manner to achieve an improvement in computer functionality raises factual issues that precludes adjudication of Snap's motion to dismiss." (Id. at 12.) "At the pleadings stage, the record is ambiguous as to whether the various claimed limitations . . . are conventional protocols or technological improvements. Given the ambiguity, it is premature to determine if these limitations, when considered individually and as an ordered combination, provide an inventive concept." (Id. at 12-13.) Accordingly, the Court concluded that Snap's Alice motion was premature and denied the motion without prejudice. (Id. at 13.)

On June 26, 2017, Snap filed an answer to the complaint. (Doc. No. 61.) On December 1, 2017, the Court issued an amended scheduling order. (Doc. No. 96.) By the present motion, Snap moves for summary judgment on the grounds that the patents-in-suit are invalid as a matter of law. (Doc. No. 74.) Specifically, Snap argues that the patents-

in-suit fail to claim patent-eligible subject matter and, therefore, are invalid under 35 U.S.C. § 101. (Id.)

## Discussion

**I. Legal Standards for Summary Judgment**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 322-23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his

pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. "The evidence of the non-movant is to be believed." Id. Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

## II. Legal Standards for Patent Eligibility under § 101

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "'long held that this provision contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract ideas are not patentable.'" Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2116 (2013). "The concern underlying these judicial exclusions is that 'patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity.'" Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc., 827 F.3d 1042, 1047 (Fed. Cir. 2016).

"The Supreme Court has devised a two-stage framework to determine whether a claim falls outside the scope of section 101." Affinity Labs of Texas, LLC v. DIRECTV, LLC, 838 F.3d 1253, 1257 (Fed. Cir. 2016); see Alice, 134 S. Ct. at 2355. "The prescribed approach requires a court to determine (1) whether the claim is directed to a patent-ineligible concept, i.e., a law of nature, a natural phenomenon, or an abstract idea, and if so, (2) whether the elements of the claim, considered both individually and as an ordered combination, add enough to transform the nature of the claim' into a patent-eligible

application." Affinity Labs, 838 F.3d at 1257 (internal quotation marks omitted) (citing Alice, 134 S. Ct. at 2355). "In the context of claims that are challenged as containing only abstract ideas, those two stages are typically referred to as the 'abstract idea' step and the 'inventive concept' step." Id.

"The 'abstract idea' step of the inquiry" requires courts "to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." Id. at 1257. "The 'inventive concept' step requires [courts] to look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed. Id. at 1258. "This inventive concept must do more than simply recite 'well-understood, routine, conventional activity.'" FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1093 (Fed. Cir. 2016).

"Patent eligibility under 35 U.S.C. § 101 is ultimately an issue of law." Berkheimer v. HP Inc., No. 2017-1437, 2018 WL 774096, at *3 (Fed. Cir. Feb. 8, 2018). But "[t]he patent eligibility inquiry may contain underlying issues of fact." Id. "The accused infringer bears the burden of proof on both steps" of the Alice inquiry. InsideSales.com, Inc. v. SalesLoft, Inc., No. 2:16CV859DAK, 2017 WL 2559932, at *2 (D. Utah June 13, 2017); see Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011). Patent ineligibility must be proven by clear and convincing evidence. See Berkheimer, 2018 WL 774096, at *3; Microsoft, 564 U.S. at 95.

III. Analysis

A. Alice Step One

Defendant Snap argues that the patents-in-suit are directed to an abstract idea because the claims specifically are directed to the abstract idea of "preventing third parties from tracing a message's content to the sender or recipient." (Doc. No. 74 at 1, 8.) In response, Vaporstream argues that the claims are not directed to an abstract idea. (Doc. No. 82 at 2-10.) Vaporstream argues instead the claims are directed to a specific

technological solution to the various and unique challenges within the field of electronic messaging. (Id. at 1, 3-8.)

"The step one inquiry focuses on determining 'whether the claim at issue is 'directed to' a judicial exception, such as an abstract idea.'" Apple, Inc. v. Ameranth, Inc., 842 F.3d 1229, 1241 (Fed. Cir. 2016). The Federal Circuit has explained that "[w]hile the two steps of the Alice framework are related, the 'Supreme Court's formulation makes clear that the first-stage filter is a meaningful one, sometimes ending the § 101 inquiry.'" Thales Visionix Inc. v. United States, 850 F.3d 1343, 1347 (Fed. Cir. 2017).

The Federal Circuit has cautioned that the step one inquiry does not "simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world." Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016). "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" Id. In so doing, a court should "determine whether the claims 'focus on a specific means or method that improves the relevant technology' or are 'directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" Apple, 842 F.3d at 1241.

In the Court's order denying Snap's motion to dismiss without prejudice, the Court held that "the asserted claims and their specific limitations 'do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea.'" (Doc. No. 59 at 10-11 (quoting Bascom Global, 827 F.3d at 1349).) Nothing in the parties' summary judgment briefing has altered the Court's prior conclusion as to the Alice step one analysis. Accordingly, the Court turns to step two of the Alice inquiry.

B. Alice Step Two

Snap argues that the asserted claims fail to recite an inventive concept under Alice step two. (Doc. No. 74 at 16-25.) In response, Vaporstream argues that Snap's motion

should be denied at Alice step two because at the very least, a genuine issue of material fact exists as to whether the asserted claims provide an inventive concept under Alice step two. (Doc. No. 82 at 10.)

At Alice step two, the Court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." Berkheimer, 2018 WL 774096, at *4 (internal quotation marks omitted) (quoting Alice, 134 S. Ct. at 2355). "The second step of the Alice test is satisfied when the claim limitations 'involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry."'" Berkheimer, 2018 WL 774096, at *5 (quoting Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014)); see Aatrix Software, Inc. v. Green Shades Software, Inc., No. 2017-1452, 2018 WL 843288, at *5 (Fed. Cir. Feb. 14, 2018) ("If the elements involve 'well-understood, routine, [and] conventional activity previously engaged in by researchers in the field,' they do not constitute an 'inventive concept.' (quoting Mayo, 566 U.S. at 73)). The Federal Circuit has recently held that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." Berkheimer, 2018 WL 774096, at *5; accord Aatrix, 2018 WL 843288, at *5.

Snap argues that each of the claim elements of the patents-suit – separate displays, separate transmissions, access restrictions/automatic deletion, message IDs, a display-based keyboard, and electronic instruction – were well-understood, routine, and conventional at the time of the invention. (Doc. No. 74 at 16-25.) In support of this contention, Snap relies on testimony from its technical expert as to what techniques were well know and routine at the time of the invention. (See Doc. No. 74-9, Greenberg Decl. ¶¶ 16-68.)

In response, Vaporstream disputes Snap's assertion as to what was well-understood, routine, and conventional at the time of the invention, and Vaporstream offers competing

testimony from its own technical expert on this issue. (Doc. No. 82 at 10-25 (citing Doc. No. 82-5, Cohen Decl. ¶¶ 19-89).) Vaporstream further argues that there is a genuine dispute of facts as to the Alice step two analysis, rendering summary judgment on this issue inappropriate. (Id. at 1-2, 10.)

The Court agrees with Vaporstream. The Federal Circuit has explained that that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." Berkheimer, 2018 WL 774096, at *5; accord Aatrix, 2018 WL 843288, at *5. Here, there is competing expert testimony as to that specific question of fact. (See Doc. No. 74-9, Greenberg Decl. ¶¶ 16-68; Doc. No. 82-5, Cohen Decl. ¶¶ 19-89.) Accordingly, summary judgment on this issue is inappropriate. See Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp., 635 F.3d 1373, 1384 (Fed. Cir. 2011) ("Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate."); Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1362 (Fed. Cir. 2002) (finding summary judgment inappropriate because "the conflicting allegations of the experts here leave unresolved factual disputes").

Further, Vaporstream argues that Snap's motion should be denied because Snap failed to conduct a proper ordered combination analysis as part of its Alice step analysis. (Doc. No. 82 at 21-25.) The Court agrees. Both the Supreme Court and the Federal Circuit have explained that when conducting an Alice step two analysis, a Court must examine the "elements of each claim both individually and as an ordered combination." Alice, 134 S. Ct. at 2355; Berkheimer, 2018 WL 774096, at *4. Both Snap and its expert's Alice step two analysis simply breaks apart the asserted claims into their individual elements and analyzes each element in an attempt to show that each individual element, by itself, was well-understood and conventional at the time of the invention. (See Doc. No. 74 at 17-25.) But "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the

11

2:17-cv-00220-MLH (KSx)

non-conventional and non-generic arrangement of known, conventional pieces." <u>Bascom Glob.</u>, 827 F.3d at 1350.  Here, Snap has failed to present any evidence showing that the specific combination of the elements performed in the specific order claimed in the patents-in-suit was conventional and generic at the time of the invention in the field of electronic messaging, or in any other field.  As a result, this is an additional reason for denying Snap's motion for summary judgment.

Finally, the Court notes that with respect to the '886 patent, the patent examiner specifically allowed the claims in that patent to issue over a prior rejection of the claims for failure to claim patent-eligible subject matter under § 101.  (Doc. No. 82-3, Xi. Decl. Ex. 2 at 14-28; Doc. No. 82-4, Xi Decl. Ex. 3 at 1-3.)  The Federal Circuit has explained that "an examiner's decision on an original or reissue application is 'evidence the court must consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence.'"  <u>Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.</u>, 807 F.2d 955, 961 (Fed. Cir. 1986).  Although the examiner's decision is not dispositive of the Court's § 101 analysis, it is additional evidence weighing against Snap's assertion that the patents-in-suit are invalid under § 101 and rendering summary judgment of this issue inappropriate.

In sum, Snap has failed to show at the summary judgment stage that the patents-in-suit are invalid under § 101 as a matter of law.  As a result, the Court denies Snap's motion for summary judgment.

### Conclusion

For the reasons above, the Court denies Defendant Snap's motion for summary judgment.

**IT IS SO ORDERED.**

DATED: February 27, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT