ROBERT RIVERA, JR.
(TX 16958030) (*pro hac vice*)
rrivera@susmangodfrey.com
JOSEPH S. GRINSTEIN
(TX 24002188) (*pro hac vice*)
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone (713) 651-9366
Facsimile (713) 654-6666

DAVIDA BROOK (275370)
dbrook@susmangodfrey.com
MENG XI (280099)
mxi@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone (310) 789-3100
Facsimile (310) 789-3150

Attorneys for Plaintiff Vaporstream, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| VAPORSTREAM, INC., | Case No. 2:17-cv-00220-MLH-KSx |
|---|---|
| Plaintiff, | **PLAINTIFF VAPORSTREAM, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE SNAP INC.'S 35 U.S.C. § 103 OBVIOUSNESS DEFENSE AND FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| vs. | |
| SNAP INC. d/b/a SNAPCHAT, INC. | |
| Defendant. | |
| | Hearing Date: January 10, 2020 |
| | Time: 10:00 a.m. |
| | Courtroom: 15A |
| | Judge: Hon. Marilyn L. Huff |

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 10, 2020, at 10:00 a.m., in Courtroom 15A, at the James M. Carter and Judith N. Keep United States Courthouse, 333 West Broadway, San Diego, California, Plaintiff Vaporstream, Inc. ("Vaporstream") will, and hereby does, move to strike Snap Inc.'s 35 U.S.C. § 103 obviousness defense and for partial summary judgment as to Snap's obviousness defense.

This motion is based upon this notice of motion and motion, the attached memorandum, the declaration of Meng Xi filed concurrently herewith, and upon such other and further matters, papers, and arguments as may be submitted to the Court at or before the hearing on this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-2, which took place on November 4, 2019.

Dated: November 12, 2019

ROBERT RIVERA, JR.
JOSEPH S. GRINSTEIN
DAVIDA BROOK
MENG XI
SUSMAN GODFREY L.L.P.

By:  */s/ Meng Xi*

Meng Xi

Attorneys for Plaintiff Vaporstream, Inc.

i

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................1

II.   RELEVANT FACTUAL BACKGROUND ....................................................2

    A.   The IPR Proceedings .................................................................2

    B.   Snap's Invalidity Contentions .....................................................3

    C.   Dr. Greenberg's Expert Report Regarding Invalidity ..............................4

III.  LEGAL STANDARD ...........................................................................5

IV.   ARGUMENT ...................................................................................6

    A.   Snap is Estopped from Relying on Invalidity Grounds That Were Raised or Reasonably Could Have Been Raised in IPR .........................6

    B.   New Invalidity Theories Based on Undisclosed Prior Art Combinations Should Be Stricken ...........................................14

        1.   The Court Should Exclude New Obviousness Combinations That Are Subsets of Previously Disclosed Combinations ...............16

        2.   The Court Should Exclude New Obviousness Combinations That Are Supersets of Previously Disclosed Combinations ...........19

V.    CONCLUSION ...............................................................................21

ii

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*Adobe Sys. Inc. v. Wowza Media Sys.*,
   2014 WL 709865 (N.D. Cal. Feb. 23, 2014)......................................................... 15

6

7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................................. 6

8

9

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
   2019 WL 5616010 (Fed. Cir. Oct. 31, 2019) ....................................................... 7

10

11

*ASUS Computer Int'l v. Round Rock Research, LLC*,
   2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ......................................... 8, 15, 20

12

13

*Brilliant Instruments, Inc. v. GuideTech, Inc.*,
   2011 WL 900369 (N.D. Cal. Mar. 15, 2011) ...................................................... 15

14

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
   2018 WL 7456042 (C.D. Cal. Dec. 28, 2018) .................................................... 13

15

16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................. 6

17

18

*Digital Reg of Tex., LLC v. Adobe Sys. Inc.*,
   2014 WL 1653131 (N.D. Cal. Apr. 24, 2014) .................................................... 15

19

20

*Dynetix Design Sol., Inc. v. Synopsys, Inc.*,
   2013 WL 4537838 (N.D. Cal. Aug. 22, 2013)..................................................... 18

21

22

*Enovsys LLC v. AT&T Mobility LLC*,
   2014 WL 11515025 (C.D. Cal. Nov. 4, 2014) .............................................. 19, 20

23

24

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   2015 WL 3640694 (N.D. Cal. June 11, 2015) .................................................... 17

25

26

*Finjan, Inc. v. Proofpoint, Inc.*,
   2015 WL 7959890 (N.D. Cal. Dec. 4, 2015) ...................................................... 14

27

*Golden Bridge Tech. Inc v. Apple, Inc.*,
   2014 WL 1928977 (N.D. Cal. May 14, 2014) .................................................... 17

28

iii

*Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*,
    2018 WL 3646842 (N.D. Cal. Aug. 1, 2018)...................................................20

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
    2012 WL 4097740 (N.D. Cal. Sept. 17, 2012)................................................15

*MediaTek Inc. v. Freescale Semiconductor, Inc.*,
    2014 WL 690161 (N.D. Cal. Feb. 21, 2014)..............................................15, 17

*Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*,
    417 F. Supp. 2d 1121 (N.D. Cal. 2006)......................................................14, 19

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ........................................................................14

*Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*,
    2019 WL 861394 (N.D. Ill. Feb. 22, 2019)...................................................9, 12

*Palomar Techs., Inc. v. MRSI Sys., LLC*,
    373 F. Supp. 3d 322 (D. Mass. 2019)...............................................................13

*Polaris Indus., Inc. v. Arctic Cat Inc.*,
    2019 WL 3824255 (D. Minn. Aug. 15, 2019)...............................................11, 12

*Scott v. Harris*,
    550 U.S. 372 (2007) ...........................................................................................6

*SEC v. Sands*,
    902 F.Supp. 1149 (C.D. Cal. 1995)....................................................................6

*Star Envirotech, Inc. v. Redline Detection, LLC*,
    2015 WL 4744394 (C.D. Cal. Jan. 29, 2015).....................................7, 10, 11, 12

*Whittlestone, Inc. v. HandiCraft Co.*,
    618 F.3d 970 (9th Cir. 2010)...............................................................................5

*Wi-Lan Inc. v. LG Elec., Inc.*,
    2019 WL 5698259 (S.D. Cal. Nov. 4, 2019) .......................................7, 13, 21

**Statutes**

35 U.S.C. § 103.........................................................................................1, 2, 3, 21

35 U.S.C. § 311(b).........................................................................................................6

35 U.S.C. § 315(e)(2) ...........................................................................................1, 6, 7

**Rules**

Fed. R. Civ. P. 12..................................................................................................5

Fed. R. Civ. P. 56............................................................................................6, 21

N.D. Cal. Patent L.R. 3–3..............................................................................14, 17

S.D. Cal. Patent L.R. 3.3..................................................................................*passim*

**Treatises**

Wright & Miller, Federal Practice and Procedure § 2735 (4th ed.)........................21

## I.     INTRODUCTION

Once a party avails itself of an *inter partes* review ("IPR") and loses, statutory estoppel applies to forbid that party from asserting invalidity grounds at trial that it "raised or reasonable could have raised" in the IPR proceeding. 35 U.S.C. § 315(e)(2). Simply stated, IPR estoppel is the price that a party must pay for bringing and losing an IPR. Having unsuccessfully challenged the '886, '111, and '711 patents (collectively, the patents-in-suit) in IPR before the Patent Trial and Appeal Board ("PTAB"), Snap has returned to this Court hoping to litigate the second-string invalidity theories it *chose* not to pursue in IPR. Snap is statutorily estopped from doing so.

Snap recognizes its estoppel problems, but only barely. Snap has agreed to withdraw just three invalidity grounds under 35 U.S.C. § 103 as a result of the final written decisions ("FWDs") issued in the IPRs, apparently acknowledging that estoppel applies to grounds that it *actually* raised in an IPR petition. But this means that Snap intends to go to trial with the ability to present 23 obviousness combinations through its invalidity expert, Dr. Saul Greenberg, even though, as Vaporstream contends, all 23 combinations should be stricken because Snap "reasonably could have raised" them in IPR.

Estoppel applies against Snap's obviousness defenses because Snap knew of all 35 prior art references and 80 obviousness combinations asserted in its invalidity contentions, served within weeks of the IPR petitions, and therefore reasonably could have raised all of them at IPR. Snap tries to evade this result by claiming that its present theories rely on "system art" that could not have been raised in IPR. But estoppel should still apply because (1) Dr. Greenberg has not actually relied on any feature of the supposed "systems," as opposed to features of documentation pertaining to the "systems," and (2) in any event, the supposed "system art" is cumulative of—or reduceable to—the printed publications identified in Snap's contentions.

1

A separate and alternative ground to strike Snap's § 103 obviousness defense is based on Snap's violation of the Patent Local Rules. Despite Snap's considerable disclosure of 80 obviousness combinations in its operative invalidity contentions, Dr. Greenberg inexcusably introduced 23 *new* obviousness combinations in his expert report, each adding and/or subtracting multiple references from the previously-disclosed combinations. The Court should force Snap to adhere to its own disclosures.

Under either IPR estoppel or Snap's violation of the patent disclosure rules or a blend of each, Vaporstream urges the Court to strike Snap's obviousness defense and thus grant partial summary judgment in favor of Vaporstream as to Snap's obviousness defense.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   The IPR Proceedings

Between December 26, 2017 and January 9, 2018, Snap filed four IPR petitions against 21 claims of the three patents-in-suit,[1] asserting that certain combinations of prior art render each challenged claim or group of claims obvious. Exs. 1-4.[2] Although Snap could have raised numerous grounds challenging the validity of the asserted claims, it limited its IPR petitions to just two or three grounds each. Six months later, the PTAB instituted review with respect to all grounds set forth in each IPR petition. Exs. 5-8.  And one year after that, the PTAB issued three FWDs (one FWD issued for the two IPR petitions filed against the '711 patent), finding that Snap has failed to prove that the challenged patent claims are unpatentable. Exs. 9-11.

The below chart summarizes the relevant dates and other pertinent details regarding the IPR proceedings:

---

[1] Vaporstream currently asserts only 20 claims against Snap. They are: claims 1, 5, 9-11, and 13 of the '886 patent; 1, 4, 5, and 9-11 of the '111 patent; and claims 1, 4-6, 11, 13, 15, and 16 of the '711 patent.

[2] All exhibits referenced herein are exhibits to the Declaration of Meng Xi, submitted concurrently herewith.

| Petition | Patent | Claim(s) | Obviousness Grounds | Institution | FWD |
|---|---|---|---|---|---|
| 12/26/2017 | '886 | 1, 4, 5 | Wren, Berger | 7/10/2018 | 6/28/2019 |
| | | 9-11 | Wren, Berger, Hanna | | |
| | | 13 | Wren, Berger, Thorne | | |
| 12/29/2017 | '111 | 1, 4, 5 | Wren, Berger | 7/10/2018 | 6/28/2019 |
| | | 9-11 | Wren, Berger, Hanna | | |
| 12/31/2017 | '711 | 1, 4-6, 11 | Namias, Wren, Fardella, Stevenson, Yuan | 8/8/2018 | 8/1/2019 |
| | | 15, 16 | Namias, Wren, Fardella, Stevenson, Yuan, Thorne | | |
| 1/9/2018 | | 13 | Namias, Wren, Fardella, Stevenson, Yuan, RFC 2821, Hazel | 8/2/2018 | |

### B.   Snap's Invalidity Contentions

In the district court proceeding, Snap served four sets of invalidity contentions. Exs. 12-15. Snap served two sets of invalidity contentions before it petitioned for IPR, and two more sets after. The third and fourth sets—the Second and Third Amended invalidity contentions—are substantively identical with respect to Snap's obviousness arguments pursuant to 35 U.S.C. § 103. The following table summarizes relevant details from Snap's invalidity disclosure (the count supplied for the number of obviousness combinations pertain only to the 20 asserted claims):

| Date | Set | Prior Art Refs | Obv. Combos | "System" Art |
|---|---|---|---|---|
| 6/12/2017 | Invalidity Contentions | 55 | N/A | N/A |
| 10/3/2017 | Corrected First Amended | 40 | 80 | 11 |
| 1/12/2018 | Second Amended | 35[3] | 80 | 7 |

---

[3] Snap's Second Amended Invalidity Contentions at p. 9 actually lists 40 prior art "reference short names," but reference numbers 36-40 are repeats of reference numbers 28-32. *See* Ex. 14 at 8-9. Snap's Third Amended Invalidity Contentions corrects the aforementioned "typographical error." Ex. 15 at 10 n.5. The Second and Third Amended Invalidity Contentions are identical in all other respects with respect to Snap's obviousness arguments.

| Date | Set | Prior Art Refs | Obv. Combos | "System" Art |
|------|-----|----------------|-------------|--------------|
| 4/18/2018 | Third Amended | 35 | 80 | 7 |

### C.   Dr. Greenberg's Expert Report Regarding Invalidity

On April 25, 2018, Snap's invalidity expert, Dr. Greenberg issued a report regarding invalidity of the patents-in-suit. Ex. 16. The below chart summarizes each of the 26 combinations of prior art (or grounds for obviousness) that Dr. Greenberg asserts would render each challenged claim or group of claims obvious:

| Patent | Claim(s) | Obviousness Ground(s) |
|--------|----------|-----------------------|
| '711 | 1, 4-6, 11 | 1. Namias and Wren (primary references), Yuan, Fardella, Stevenson, Hartselle;<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Wren, Jo, Nikkanen, Fardella; or<br>3. Pocket PC Phone System (with MMS Composer) (primary system), Wren. |
| | 13 | 1. Namias and Wren (primary references), Yuan, Fardella, Stevenson, Hartselle, RFC 2821, Hazel, Microsoft Server System;<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Wren, Jo, Nikkanen, Fardella; or<br>3. Pocket PC Phone System (with MMS Composer) (primary system), Wren, Fardella. |
| | 15 | 1. Namias and Wren (primary references), Yuan, Fardella, Stevenson, Hartselle, Thorne, Microsoft Outlook Software System, Microsoft Server System;<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Wren, Jo, Nikkanen, Fardella, Jain; or<br>3. Pocket PC Phone System (with MMS Composer) (primary system), Wren, Jain. |
| | 16 | 1. Namias and Wren (primary references), Yuan, Fardella, Stevenson, Hartselle, Thorne, Microsoft Server System;<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Wren, Jo, Nikkanen, Fardella, Jain, Hartselle; or<br>3. Pocket PC Phone System (with MMS Composer) (primary system), Wren, Jain, Hartselle. |
| '886 | 1, 5 | 1. Wren (primary reference), Berger, Hartselle; or<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Nikkanen, Jo, Fardella, Berger, Calloway. |

| Patent | Claim(s) | Obviousness Ground(s) |
|--------|----------|----------------------|
| '886 | 9 | 1. Wren (primary reference), Berger, Hartselle, Hanna, Microsoft Server System; or<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Nikkanen, Jo, Fardella, Berger, Calloway. |
| | 10, 11 | 1. Wren (primary reference), Berger, Hartselle, Hanna, Microsoft Outlook Software System, Microsoft Server System; or<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Nikkanen, Jo, Fardella, Berger, Calloway, Jain. |
| | 13 | 1. Wren (primary reference), Berger, Hartselle, Thorne, Microsoft Outlook Software System; or<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Nikkanen, Jo, Fardella, Berger, Calloway, Thorne, Ogilvie. |
| '111 | 1, 4, 5 | 1. Wren (primary reference), Berger, Hartselle; or<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Nikkanen, Jo. |
| | 9 | 1. Wren (primary reference), Berger, Hartselle, Hanna, Microsoft Server System; or<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Nikkanen, Jo, Berger, Calloway. |
| | 10, 11 | 1. Wren (primary reference), Berger, Hartselle, Hanna, Microsoft Outlook Software System, Microsoft Server System; or<br>2. Nokia 7xxx Series Mobile Phone System (primary system), Nikkanen, Jo, Jain. |

## III.   LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . ." "The function of a motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. HandiCraft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal citation omitted). To show that a defense is "insufficient," "the moving party must demonstrate that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of

circumstances could the defense succeed." *SEC v. Sands*, 902 F.Supp. 1149, 1165 (C.D. Cal. 1995).

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether any genuine fact issue exists, the court must pierce the pleadings and assess the proof as presented in the record. Fed. R. Civ. P. 56(c). In doing so, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324. If a claim or defense is factually unsupported, it should be disposed of on summary judgment. *Id.* at 323-24.

## IV.   ARGUMENT

### A.   Snap is Estopped from Relying on Invalidity Grounds That Were Raised or Reasonably Could Have Been Raised in IPR

IPR estoppel, as codified in section 315(e)(2) of the Patent Act, states:

> The petitioner in an *inter partes* review of a claim in a patent under this chapter that results in a final written decision . . . may not assert . . . in a civil action rising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review.

35 U.S.C. § 315(e)(2). In an IPR, a petitioner is limited to challenging patent claims as invalid only on grounds that "could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b).

Thus, IPR estoppel applies when: (1) a final written decision is issued in an IPR;[4] (2) the contention at issue asserts invalidity under §§ 102 or 103 based on prior art consisting of patents or printed publications; and (3) the contention at issue either was raised or reasonably could have been raised during the IPR. *Wi-Lan Inc. v. LG Elec., Inc.*, No. 18-cv-1577-H-AGS, 2019 WL 5698259, at \*10 (S.D. Cal. Nov. 4, 2019) (granting partial summary judgment of defendant's obviousness defense based on IPR estoppel).

In his expert report, Dr. Greenberg presented 26 separate obviousness grounds asserting various prior art combinations against various claims or groups of claims of the patents-in-suit. Ex. 16 (Greenberg Expert Report), at ¶¶ 442-45, 478-80, 496-99. Snap does not dispute that IPR estoppel applies with some effect to these grounds, having voluntarily withdrawn three of the 26 grounds in an apparent effort to comply with the estoppel provision at 35 U.S.C. § 315(e)(2). Ex. 17 (Oct. 15, 2019 Chen email).[5] Snap contends, however, that estoppel should not apply to the other 23 "obviousness combinations [because they] rely on system art that was unavailable for IPR." *Id.* (citing *Star Envirotech, Inc. v. Redline Detection, LLC,* No. SACV 12-1861 JGB (DFMx), 2015 WL 4744394, at \*3-4 (C.D. Cal. Jan. 29, 2015)). Not so fast.

Snap's contention that IPR estoppel generally does not apply to system art is uncontroversial, because unlike a patent or a printed publication, system art—typically a machine, product, or some other object embodying an invention—could not have been offered as prior art in the IPR. *See Star Envirotech*, 2015 WL 4744394, at \*4. However, what Snap calls "system art" here is not system art at all. Although each of

---

[4] It does not matter that Snap has currently appealed the FWDs to the Federal Circuit, or that there is a possibility that *Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2018-2140, 2019 WL 5616010 (Fed. Cir. Oct. 31, 2019), may render the current FWDs invalid at some point, as Snap may argue. IPR estoppel is plainly triggered upon the issuance of "a final written decision under section 318(a)" of the Patent Act, which undisputedly happened here. 35 U.S.C. § 315(e)(2). Whether that FWD will later be disturbed is of no legal consequence to the estoppel issue for this upcoming trial.
[5] Snap withdrew one obviousness combination each against claims 1 and 5 of the '886 patent (<u>Wren</u>, <u>Berger</u>, and <u>Hartselle</u>); claims 1, 4, and 5 of the '111 patent (<u>Wren</u>, <u>Berger</u>, and <u>Hartselle</u>) and claims 1, 4-6, and 11 of the '711 patent (<u>Namias</u>, <u>Wren</u>, <u>Yuan</u>, <u>Fardella</u>, <u>Stevenson</u>, and <u>Hartselle</u>).

the 23 obviousness grounds in Dr. Greenberg's report includes at least one reference which Snap now alleges to be "system art" (*i.e.*, <u>Nokia 7xxx Series Mobile Phone System</u>, <u>Microsoft Server System</u>, <u>Microsoft Outlook Software System</u>, and <u>Pocket PC Phone System</u>), Snap's invalidity contentions tell a different story.

For each of the foregoing four prior art references relied upon by Dr. Greenberg and which Snap calls "system art," Snap has identified only "documentation" in its operative invalidity contentions. *See* Ex. 15 (Snap's Third Amended Invalidity Contentions) at 9-10. The "documentation" consists of only printed publications: two user guides for the <u>Nokia 7610 Mobile Phone System</u>; one 719-page book on "Microsoft Outlook Version 2002," authored by Jim Boyce, for the <u>Microsoft Outlook Software System</u>; one 689-page book titled "Running Microsoft Internet Information Server," authored by Lenoid Braginski, for the <u>Microsoft Server System</u>; and one book, one user manual, one user guide, and three PC Magazine articles about the <u>Pocket PC Phone System</u>. *Id.* Other than labeling this "documentation" using a "reference short name" that includes the word "system," *id.* at 8, Snap's contentions are devoid of anything that is *not* a printed publication for the alleged "system art."[6] *Id.* at 8-10.

In short, in its contentions, Snap appears to use the word "system" as a label to refer to printed publications describing or pertaining to the actual systems; and Snap's contentions did not even have a picture or other representation of the systems to inform Vaporstream of its intention to rely on the actual systems, rather than the documentation that relates to or is cumulative of the systems. Indeed, Snap even

---

[6] Dr. Greenberg has attempted to incorporate system art in his expert report by presenting photographs of the alleged system art. Ex. 16 (Greenberg <u>Expert Report</u>) at ¶ 265 (photo of a Nokia phone), ¶¶ 279, 280 (photos of a Pocket PC phone), ¶ 357 (photo of the "Microsoft Outlook" software-in-a-CD), ¶¶ 352 (photo of the "Windows Server 2003, Standard Edition" software-in-a-box). But because Snap has not sufficiently disclosed its intention to rely upon any prior art that is actually system art, Dr. Greenberg cannot "introduce [these] new prior art references not disclosed in the . . . invalidity contentions." *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014) (citations omitted); *see infra* Section IV.B.

specifically called each alleged system reference a "publication" in its invalidity contentions. Ex. 15 at 7:5 ("The following patents and publications are prior art . . . ."). Documentation (such as a user manual, an article, or a book) by any other name would still be a printed publication, and there simply exists no reason why Snap could not have submitted the printed publications that embody the alleged "system art" to the PTAB.

Snap seeks to cloak its reliance upon the phones and the software products as system art, ostensibly to avoid IPR estoppel, but the argument is disingenuous because it is those products' documentation upon which Snap and Dr. Greenberg have relied to attempt to invalidate the asserted claims. The Court should not allow Snap to avoid estoppel simply because its contentions disclosed the documentation but called it "system art." *See Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co.*, Case No. 15-c-1067, 2019 WL 861394, at *10 (N.D. Ill. Feb. 22, 2019) (a defendant "cannot avoid estoppel simply by pointing to [system art] (rather than the printed materials) during litigation").

Moreover, Snap's own inconsistency in its treatment of alleged system art belies its thinly veiled attempt to avoid estoppel by calling documentation "system art." In addition to some of the systems Dr. Greenberg purports to rely on in his report, Snap's First Amended Invalidity contentions, served October 3, 2017, includes something Snap has labeled "Majikam software system." Ex. 13 (Snap's Corrected First Amended Invalidity Contentions) at 7. The "documentation" Snap has provided for the "Majikam software system" was a single published application for a patent by an inventor named Fardella, which made mention of the Majikam software system. *Id*. Like all of Snap's other supposed "system art," Snap was apparently using "Majikam software system" as a "reference short name" for the <u>Fardella</u> patent application. *Id.* at 6, 7. On December 31, 2017 and January 9, 2018, Snap submitted two IPR petitions on the '711 patent, challenging various claims. Exs. 3, 4. Snap submitted the <u>Fardella</u> reference to the PTAB as part of the three obviousness combinations it used to

challenge the '711 patent. Ex. 3 at 5; Ex. 4 at 5. Snap did not submit to the PTAB any other documentation related to the "Majikam software system."

On January 12, 2018, perhaps realizing that it had now actually raised obviousness grounds that included Fardella in the IPRs, Snap dropped the reference to the "Majikam software system" from its Second Amended Invalidity Contentions, even though it continues to disclose Fardella, the patent application, therein. Ex. 14 at 7.

Why didn't Snap similarly withdraw the other so-called system art (*i.e.*, the Nokia 7xxx Series Mobile Phone System, Microsoft Server System, Microsoft Outlook Software System, etc.) on January 12, 2018? *See id.* at 7-8. One explanation is that Snap wanted to hold on to these—its second-string invalidity theories—in the district court proceeding, hedging that the PTAB would reject its first-string theories which were based on Fardella. But even though Snap chose not to submit any of the documentation for the Microsoft software products and the Nokia phone (*e.g.*, Boyce, Braginski, Nokia User Guides, etc.) to the PTAB, Snap knew that it could not avoid the application of IPR estoppel under the "reasonably could have raised" standard for these printed publications, because such documentation was in Snap's possession before the IPRs. *See* Ex. 13 at 6-8. The only recourse available to Snap, then, would be to insist that they are "system art" (even though they are not). Stated differently, the Court should not allow Snap to call the same prior art (printed publications) by a different name ("system" art) ostensibly to avoid estoppel.

Even if the Court were to allow Dr. Greenberg to rely on the alleged system art (which Vaporstream contends was not previously disclosed by Snap), such art is merely cumulative of the printed publications Snap identified in its contentions (and which would have been available in IPR), thereby triggering estoppel. *Id.*; *see Star Enviro*, 2015 WL 4744394, at *4. Indeed, aside from including five photographs of the alleged "system art" in his report, Dr. Greenberg has not pointed out—and Snap has not and cannot articulate—how each of the Nokia and Pocket PC Phone Systems,

the <u>Microsoft Server Software</u>, or the <u>Microsoft Outlook Software</u> "discloses features claimed in the [asserted patent claims] that are *not* included in the instruction manual" or other documentation, and "is therefore a superior and separate reference" from the printed publications. *Star Envirotech*, 2015 WL 4744394, at *4 (emphasis added). To the contrary, the documentation disclosed by Snap for these alleged systems each so thoroughly describe the relevant features of the alleged systems that Dr. Greenberg, other than including photographs of the system (such as a phone), or an object embodying the system (such as a CD or box with software), has not had a single occasion to cite to a potentially invalidating feature of the actual system that was not also included in its instruction or user manual, or described in a book, article, or other documentation. *See* Ex. 16 (Greenberg Expert Report) at ¶¶ 265-67 (<u>Nokia 7xxx Series Mobile Phone System</u>), ¶¶ 279-81 (<u>Pocket PC Phone System</u>), ¶¶ 352-54 (<u>Microsoft Server System</u>), ¶¶ 357-59 (<u>Microsoft Outlook Software System</u>).

District courts have yet to apply IPR estoppel to system art that is merely cumulative of its documentation. *Cf. Star Envirotech*, 2015 WL 4744394, at *4 (declining to apply estoppel where the defendants demonstrated that the system art (a LeakMaster machine), when dissembled, discloses "a heating element within a closed smoke producing chamber"—a patent claim limitation that is "not included in the [Leakmaster] instruction manual," which the defendants possessed at the time of the IPR, thus rendering the machine a "superior and separate reference" to the instruction manual); *Polaris Indus., Inc. v. Arctic Cat Inc*., No. CV 15-4475 (JRT/TNL), 2019 WL 3824255, at *3 (D. Minn. Aug. 15, 2019) (declining to apply IPR estoppel to off-road vehicles because although the application of IPR estoppel to products "may be possible," "such a rule has not been recognized by any circuits") (noting that the plaintiff asserted that the vehicle operation manuals disclosed "all relevant material information regarding the physical vehicles" to potentially invalidate the asserted patents directed to vehicular features). But the critically important distinction separating these cases from this one is that the prior art machine in *Star Envirotech*

was found to have disclosed a feature that was "separate and superior" to the user manual for the machine, and so is not merely cumulative of it, 2015 WL 4744394, at *4, and it was unclear whether the printed manuals in *Polaris Industries* were in fact cumulative of all the relevant features of the prior art all-terrain vehicles. 2019 WL 3824255, at *3.

By contrast, Snap here has not actually relied on a feature in the phones or software products themselves in its invalidity contentions; Snap has *only* called out the features in the *documentation* for the phones and software products in attempting to invalidate the asserted patent claims. "Where there is evidence that a petitioner had reasonable access to printed publications corresponding to or describing a product that it could have proffered during the IPR process, it cannot avoid estoppel simply by pointing to its finished product (rather than the printed materials) during litigation." *Oil-Dri Corp.*, 2019 WL 861394, at *10. To the extent Vaporstream is able to show that the documentation Snap disclosed for its cumulative system art was reasonably available to Snap during IPR, the Court should find that estoppel applies to the phones and Microsoft Server and Outlook software because Snap has only relied on the features in the documentation itself, rather than point out any features in the products to which the documentation relates.

There can be no dispute that Snap was in actual possession of the documentation for the Nokia phone and the Microsoft Outlook software by October 3, 2017—which was the date Snap served its First Amended Invalidity Contentions, and months *before* it filed any of the four IPR petitions against the patents-in-suit. Ex. 13 (Snap's Corrected First Amended Invalidity Contentions) at 7-8. The Court should therefore apply IPR estoppel to these products as well as their documentation, to the extent Dr. Greenberg relied on them.

With respect to the documentation for the Pocket PC phone and Microsoft Server software, the standard for demonstrating that Snap "reasonably could have raised" these references in IPR entails showing that "a skilled searcher conducting a

12

diligent search reasonably could have been expected to discover" these references. *Wi-Lan*, 2019 WL 5698259, at *8; *Palomar Techs., Inc. v. MRSI Sys., LLC*, 373 F. Supp. 3d 322, 331 (D. Mass. 2019); *Cal. Inst. of Tech. v. Broadcom Ltd.*, No. CV-16-3714 GW (AGRx), 2018 WL 7456042, at *8 (C.D. Cal. Dec. 28, 2018). The "fact that [a defendant] eventually found the . . . references at issue" is "clear" and "compelling evidence itself that [the defendant] could have discovered these references through a diligent search." *Wi-Lan*, 2019 WL 5698259, at *9.

Here, not only did Snap eventually find all the prior art references it disclosed in its contentions (and which Dr. Greenberg relies upon in his report), which includes the documentation for the Pocket PC phone and Microsoft Server software, these references (along with the 80 obviousness grounds Snap asserted against the asserted claims of the patents-in-suit) were disclosed in Snap's Second Amended Invalidity Contentions dated January 12, 2018. Ex. 14.[7] As such, because Snap did find them by *at least* January 12, 2018, this is "clear and compelling evidence" that Snap "reasonably could have raised" each of these prior art references and combinations in IPR, and therefore should be estopped from continuing to assert these references and combinations in this lawsuit. *Wi-Lan*, 2019 WL 5698259, at *8-9. Indeed, given the closeness in time between Snap's constructive discovery date (January 12, 2018) and the timing of the IPR petitions Snap filed against the patents-in-suit (between December 26, 2017 and January 9, 2018), there should be a *presumption* that Snap actually did find these references and combinations prior to filing the IPR petitions, likely as part of the same prior art search it or its vendor performed. If Snap was able to actually find the references and disclose 80 prior art combinations on January 12, 2018, surely it could have found the same references (and worked to identify the same 80 obviousness combinations) with some diligence by December 26, 2017—which was just 17 calendar days (or 12 business days) before January 12, 2018.

---

[7] The prior art references and 80 obviousness combinations disclosed in Snap's Second and Third Amended Invalidity Contentions are substantively identical. *Compare* Ex. 14 *with* Ex. 15.

1   Thus, all of the prior art combinations Snap relies on for its obviousness
2   defense should be stricken on the basis that they are subject to IPR estoppel. The Court
3   should preclude Snap and Dr. Greenberg from relying on any of the obviousness
4   combinations disclosed in Snap's operative invalidity contentions and grant partial
5   summary judgment in favor of Vaporstream as to Snap's obviousness defense.

## B.   New Invalidity Theories Based on Undisclosed Prior Art Combinations Should Be Stricken

An alternative and independent ground exists for the Court to grant partial summary judgment on Snap's obviousness defense: the 23 obviousness combinations that Dr. Greenberg presents in his report must be stricken because they all are new invalidity theories not disclosed by Snap in its invalidity contentions, in violation of the Patent Local Rules.

Under Patent Local Rule 3.3(b), an accused infringer alleging an obviousness defense must include in its invalidity contentions "an identification of any combinations of prior art showing obviousness." Patent L.R. 3.3(b).[8] As many courts recognize, patent disclosure rules are "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *See, e.g.*, *Nova Measuring Instruments Ltd. v. Nanometrics, Inc.*, 417 F. Supp. 2d 1121, 1123 (N.D. Cal. 2006); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006). "Once served, the contentions constitute the *universe* of the parties' respective [legal] theories," and no deviation is allowed absent "court order and upon a showing of good cause." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 7959890, at *2 (N.D. Cal. Dec. 4, 2015) (emphasis added). "[I]nvalidity theories not disclosed pursuant to Local Rule 3–3 are barred, accordingly, from presentation at trial (whether through expert opinion

---

[8] This Court's Amended Scheduling Order specified that the disclosure requirements as set forth in the Southern District of California Patent Local Rules apply to this case, and directed Snap to serve "Amended Invalidity Contentions" by January 12, 2018 to comply with such requirements. Dkt. 96 at 6-7 & n.1.

testimony or otherwise)." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-CV-53411-YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014).[9]

"Given this requirement and the purpose behind the patent local rules, a party may not use an expert report to introduce . . . new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *ASUS Computer*, 2014 WL 1463609, at *1 (citations omitted); *see, e.g.*, *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. 12–cv–00852 WHA, 2012 WL 4097740, at *2–4 (N.D. Cal. Sept. 17, 2012) (striking portions of expert report relying on prior art references not disclosed in invalidity contentions); *Brilliant Instruments, Inc. v. GuideTech, Inc.*, No. 09–cv–05517 CW, 2011 WL 900369, at *2 (N.D. Cal. Mar. 15, 2011) (same).

"The threshold question in deciding whether to strike an expert report is . . . whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW, 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014). Prejudice is "inherent in the assertion of a new theory after discovery has closed" and therefore the new theory must be stricken. *Adobe Sys. Inc. v. Wowza Media Sys.*, No. 11–CV–02243–JST, 2014 WL 709865, at *15 n.7 (N.D. Cal. Feb. 23, 2014).

As mentioned before, Dr. Greenberg presented 26 separate obviousness theories asserting various prior art combinations against various claims or groups of claims of the patents-in-suit in his expert report. Ex. 16 (Expert Report of S. Greenberg), at ¶¶ 442-45, 478-80, 496-99. Because 23 out of 26 obviousness grounds are not prior art combinations previously identified in Snap's invalidity contentions, they constitute new theories in violation of the Patent Local Rules and should be excluded by the Court.

---

[9] The Patent Local Rules 3-3(b) for the Northern District of California are substantially the same as the Patent Local Rules 3.3(b) for the Southern District of California.

Dr. Greenberg's 26 obviousness grounds fall into three categories, two of which are at issue on this motion to strike:

(1) **Subset:** Five prior art combinations each of which is based on a smaller subset of references taken from combinations that were disclosed in Snap's invalidity contentions;

(2) **Superset:** Eighteen new prior art combinations each of which is comprised of (a) some references from a disclosed combination and (b) at least one new reference that is not part of the disclosed combination; and

(3) **Withdrawn:** Three prior art combinations that were withdrawn by Snap and therefore not subject to this motion, *see* Ex. 16 (Oct. 15, 2019 Chen email).

### 1. The Court Should Exclude New Obviousness Combinations That Are Subsets of Previously Disclosed Combinations

The Court should forbid Dr. Greenberg from presenting new invalidity theories that are created from a "subset" of prior art references in disclosed combinations because these newly created combinations had not been identified by Snap in its contentions in violation of Patent L.R. 3-3(b). One example of a new obviousness combination that is based on a "subset" of a disclosed prior art combination can be found in one of three obviousness grounds Dr. Greenberg uses to challenge claim 1 of the '711 patent. Ex. 16 (Greenberg Expert Report) at ¶ 496. Although Dr. Greenberg uses just two references (Pocket PC Phone System and Wren) to construct the combination, nowhere is that particular combination disclosed in Snap's contentions. *Compare id. with* Ex. 15 (Snap's Third Amended Invalidity Contentions) at 11 (disclosing four obviousness combinations against claim 1 of the '711 patent, each comprising at least six references). Among the four disclosed combinations against claim 1, one combination includes both the Pocket PC and Wren references, but that combination also contains seven other references (Motorola MPx200 Phone System, Nokia 68xx Series Mobile Phone System, Nextel i100plus, Parikh, Microsoft Server System, CopySafe Software System, Fardella) Dr. Greenberg has chosen not to

16

include in the new two-reference combination. Ex. 15 at 11.

Dr. Greenberg repeats this offense of creating new obviousness combinations by taking a subset of references in disclosed combinations four more times against 12 other asserted claims (out of a total of 20 asserted claims). *See* Appendix A (Subset and Superset Obviousness Combinations). Because these five newly created obviousness combinations are undisclosed invalidity theories in Snap's contentions, they should be stricken. *Golden Bridge Tech. Inc v. Apple, Inc*., No. 12–cv–04882–PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014) ("Expert reports may not introduce theories not set forth in contentions."); *MediaTek*, 2014 WL 690161, at *1 ("Any invalidity theories not disclosed pursuant to Local Rule 3–3 are barred . . . from presentation at trial (whether through expert opinion testimony or otherwise).").

Snap acknowledges that "remov[ing] D from the combination [of] A + B + C + D" would be an act that "narrow[s] its disclosures," resulting in the creation of the afore-described "subset" combinations. Ex. 15 (Snap's Third Amended Invalidity Contentions) at 27. Snap nevertheless attempts to justify the permissibility of creating "subset" combinations, reasoning that by dropping certain references from a disclosed combination Snap effectively is working to "streamline its invalidity theories for the benefit of the parties and the Court." *Id*. But Snap's self-serving justification would render Patent L.R. 3.3(b)'s requirement for "an identification of any combinations of prior art showing obviousness" meaningless and Vaporstream's ability to ascertain Snap's invalidity theories in preparation for trial nearly impossible.

In an obviousness analysis, the combination made up of A + B + C + D is meaningfully different than a combination of A + B + C, or a combination of A + C. *See Finjan, Inc. v. Blue Coat Sys., Inc*., No. 13-CV-03999-BLF, 2015 WL 3640694, at *7 (N.D. Cal. June 11, 2015) ("The Court agrees with Plaintiff's basic proposition that a prior art combination involving three references may present a different theory than a combination involving two references."). Mathematically, a four-prior art reference combination would yield 11 different obviousness combinations: one four-

reference combination; four different three-reference combinations; and six different two-reference combinations.[10] If patent defendants were allowed to create 10 new obviousness combinations by taking smaller subsets of references from a disclosed combination made up of four references, then patent plaintiffs would suffer great difficulty in ascertaining the specific obviousness theory defendants are "identifying" as part of their invalidity contentions—because defendants would effectively be identifying 11 different combinations by disclosing just one combination.

Permitting such a practice would encourage, even embolden, defendants to identify one overarching "umbrella" obviousness combination consisting of every single prior art reference they could conceivably rely on, and would unfairly burden plaintiffs to sift through the hundreds, if not thousands, of possible combinations that could result.[11] Thus, allowing an expert to choose any "subset" combination from a disclosed obviousness combination would run antithetical to the purpose behind the patent disclosure rule and turn Patent L.R. 3.3(b) on its head. *See Dynetix Design Sol., Inc. v. Synopsys, Inc.*, No. 11–cv–05973 PSG, 2013 WL 4537838, at *2 (N.D. Cal. Aug. 22, 2013).

Here, some of the obviousness combinations disclosed in Snap's invalidity contentions already contain 10 prior art references each. *See, e.g.*, Ex. 15 (Snap's Third Amended Invalidity Contentions) at 19-20 (against claims 10 and 11 of the '881 patent), 21-22 (against claims 10 and 11 of the '111 patent). If, based on such a disclosure, Dr. Greenberg were allowed to choose from the 1,012 "subset" combinations which one(s) he will opt to present at trial and which one(s) he may drop, then Snap hadn't effectively "identif[ied] any combinations of prior art showing obviousness" in its contentions "in a way that would [require Snap to] adhere to those

---

[10] The formula for finding how many combinations *(C)* can be created given a certain number of references and specifying a certain number of references being chosen at a time is $C = n! \div (r! * (n - r)!)$, where $n$ represents the total number of references, and $r$ represents the number of references being chosen at a time.
[11] For perspective, six prior art references can yield 57 different prior art combinations. Ten prior art references can yield 1,013 different prior art combinations.

theories" or allow Vaporstream to prepare for trial. *Nova Measuring*, 417 F. Supp. 2d at 1123; *see* Patent L.R. 3.3(b).

2.   **The Court Should Exclude New Obviousness Combinations That Are Supersets of Previously Disclosed Combinations**

Vaporstream also moves the Court to strike portions of Dr. Greenberg's expert report that rely on new invalidity theories created by mixing-and-matching references in disclosed obviousness combinations, again in violation of Patent L.R. 3.3(b). Dr. Greenberg's creation of these "superset" obviousness combinations is even more egregious than his use of "subset" combinations, because he adds *at least* one reference that is not part of a disclosed combination to create a superset. An example of a "superset" combination is the eight-reference obviousness combination (Nokia 7xxxx Series Mobile Phone, Nikkanen, Jo, Fardella, Berger, Calloway, Thorne, and Ogilvie) Dr. Greenberg asserts against claim 13 of the '886 patent. Ex. 16 (Greenberg Expert Report) at ¶ 445. This particular combination is not disclosed anywhere in Snap's invalidity contentions. *See* Ex. 15 (Snap's Third Amended Invalidity Contentions). Yet the single obviousness combination disclosed against claim 13 that includes the Nokia 7xxx Series Mobile Phone actually *excludes* Fardella, Calloway, and Ogilvie—references Dr. Greenberg chose to *add* to create the new combination. *Id.* at 20. The disclosed combination is also made up of five other references (Yuan, Edwards, Parikh, Hartselle, and Redlich) that Dr. Greenberg has simply *dropped* from the newly created combination. *Id.*

Dr. Greenberg repeats the offense of creating new obviousness combinations by adding references to (or adding *and* dropping references from) disclosed combinations 17 additional times, using these grounds to challenge 17 out of 20 asserted claims. *See* Appendix A (Subset and Superset Obviousness Combinations). The Court is well within its discretion to strike these 18 new and undisclosed obviousness theories. *See Envosys LLC v. AT&T Mobility LLC*, No. CV115210 FMOAGRX, 2014 WL 11515025, at *5 (C.D. Cal. Nov. 4, 2014) (striking expert

19

report that articulated an infringement theory based on the combined operation of three components rather than the previously disclosed operation of two of the three components) ("While Envosys identified the 'ID and password' combination and the MSISDN in the Infringement Contentions, it did not identify the combination of the three components. Rather, the Infringement Contentions provide a list of theories, including (1) the combination of the app ID and PW, (2) the MSISDN, and (3) E911. Plaintiff did not give reasonable notice as to the combination of the 'app ID, PW, and MSISDN,' because it did not articulate this infringement theory in its contentions."); *ASUS Computer*, 2014 WL 1463609, at *10 (striking undisclosed obviousness combinations in expert report) ("RR moves to strike Baker's opinions that Mills renders the '791 patent obvious in view of Atsumi, Lee, and JESD79R1; Choi renders the '791 patent obvious in view of Lee and JESD79R1; and Hwang renders the '791 patent obvious in view of Atsumi, Lee, and JESD79R1. Because ASU's Invalidity Contentions did not disclose those obviousness combinations, the Court strikes Baker's opinions based on those combinations."); *see also Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2018 WL 3646842, at *7 (N.D. Cal. Aug. 1, 2018) (finding the use of obviousness combinations for one claim applied to a different claim to be "impermissible" and the equivalent of creating "a new [obviousness] theory altogether") (striking expert report as to the "'new and previously-undisclosed' obviousness theories regarding claim 6 of the '310 patent" because "combinations of Nakamura and Okada, Nakamura and Dowdy, and Nakamura and Oshima" had not been asserted against claim 6; they were only asserted against "claims 1, 2, 9-12, 15, 16, 21 and 22 [of the same patent]").

The Court should therefore disallow Snap's attempt to introduce 23 new invalidity theories through Dr. Greenberg, because these new "subset" and "superset" obviousness combinations were never previously disclosed to Vaporstream.

## V.    CONCLUSION

Based on the foregoing reasons, each ground for Snap's obviousness defense is either statutorily estopped and/or in violation of the Patent Local Rules. In light of the presumptive validity of the patents-in-suit, there is no genuine fact dispute and Vaporstream is entitled to judgment as a matter of law on each of Snap's obviousness grounds. The Court should therefore grant partial summary judgment that the patents-in-suit are not obvious under 35 U.S.C. § 103. Fed. R. Civ. P. 56; *see also* 10B Wright & Miller, Federal Practice and Procedure § 2735 (4th ed.); *Wi-Lan*, 2019 WL 5698259, at *10 (granting partial summary judgment of defendant's obviousness defense based on IPR estoppel).

Dated: November 12, 2019

ROBERT RIVERA, JR.
JOSEPH S. GRINSTEIN
DAVIDA BROOK
MENG XI
SUSMAN GODFREY L.L.P.

By: */s/ Meng Xi*
Meng Xi

Attorneys for Plaintiff Vaporstream, Inc.

21

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 12, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Meng Xi*
Meng Xi

22