EXHIBIT 12

COOLEY LLP
HEIDI L. KEEFE (178960)
(hkeefe@cooley.com)
MARK R. WEINSTEIN (193043)
(mweinstein@cooley.com)
REUBEN H. CHEN (228725)
(rchen@cooley.com)
LAM K. NGUYEN (265285)
(lnguyen@cooley.com)
LAUREN J. KRICKL (305379)
(lkrickl@cooley.com)
3175 Hanover Street
Palo Alto, CA  94304-1130
Telephone:   (650) 843-5000
Facsimile:    (650) 849-7400

Attorneys for Defendant
SNAP INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAPORSTREAM, INC., | Case No.  2:17-CV-220-RO-KS |
| Plaintiff, | **SNAP INC.'S INVALIDITY CONTENTIONS** |
| v. | |
| SNAP INC. d/b/a SNAPCHAT, INC., | |
| Defendant. | |

Defendant Snap Inc. ("Snap") hereby discloses its Invalidity Contentions and associated document production.  Snap contends that each of the claims asserted by Plaintiff Vaporstream, Inc. ("Vaporstream") is invalid under at least one or more of 35 U.S.C. §§ 101, 102, 103, and 112.  The case is still in its infancy, discovery has just begun, the parties have not yet had their Rule 26 conference nor agreed on a discovery plan under the Court's standing orders, thus Snap anticipates that these disclosures may be supplemented and/or modified as discovery continues.  The Court has also not set any deadlines for clam construction, fact, or expert discovery.  Snap anticipates that its disclosures may need to be supplemented pending any new fact discovery,

1   claim construction positions taken by Vaporstream, the Court's claim construction

2   order, and any other additional information that may come to light in the course of this

3   case.

4   ## I.      **GENERAL STATEMENTS AND OBJECTIONS**

5   ### A.      **Asserted Claims**

6   Vaporstream served Snap with Infringement Contentions alleging infringement

7   of U.S. Patent Nos. 8,886, 739 ("the '739 patent"), 8,935,351 ("the '351 patent"),

8   9,306,885 ("the '885 patent"), 9,306,886 ("the '886 patent"), 9,313,155 ("the '155

9   patent"), 9,313,156 ("the '156 patent"), 9,313,157 ("the '157 patent"), 9,338,111 ("the

10  '111 patent"), and 9,413,711 ("the '711 patent") (together "the Asserted Patents").

11  Specifically, Vaporstream has alleged that Snap infringes the following 89 claims:

12  - Claims 1, 4-8 of the '739 patent;

13  - Claims 1, 3-7, 9, 11, 12 of the '351 patent;

14  - Claims 1, 5-10 of the '885 patent;

15  - Claims 1-6, 8-13 of the '886 patent;

16  - Claims 1-6, 9-13 of the '155 patent;

17  - Claims 1-3, 6-11 of the '156 patent;

18  - Claims 1-7, 10 of the '157 patent;

19  - Claims 1, 2, 4-6, 8-12 of the '111 patent; and

20  - Claims 1-17 of the '711 patent (together "the Asserted Claims").

21  Snap is not required to provide invalidity contentions against claims that are not

22  asserted against it and will not do so.  To the extent that the Court permits

23  Vaporstream to assert additional claims against Snap in the future, Snap reserves all

24  rights to disclose new or supplemental invalidity contentions regarding such claims.

25  Furthermore, because discovery is still ongoing, Snap reserves the right to revise,

26  amend and/or supplement the information provided herein, including identifying,

27  charting, and relying on additional references, should further investigation and

28  discovery yield additional information or references.

Vaporstream's Infringement Contentions are deficient in multiple respects and do not provide Snap with sufficient information to understand the specific accused features and components and the alleged factual and evidentiary bases for Vaporstream's allegations.  Among other things, the Infringement Contentions lack the specificity to put Snap on adequate notice as to Vaporstream's infringement theories.  Vaporstream fails to properly identify accused instrumentalities, and does not adequately explain Vaporstream's infringement theory for numerous claim elements.  Vaporstream has thus substantially prejudiced Snap's ability to understand, for purposes of preparing these Invalidity Contentions, what Vaporstream alleges to be the scope of the Asserted Claims.  If Vaporstream modifies any assertion or contention in Vaporstream's Infringement Contentions, or presents any new assertion or contention relevant to these Invalidity Contentions, to the extent allowed by the Court, Snap reserves the right to supplement or otherwise amend these Invalidity Contentions.

### B.    Claim Construction

The Court has not yet construed the Asserted Claims.  Snap reserves all rights to modify, amend, and/or supplement its Invalidity Contentions following the Court's claim construction ruling or upon alteration or clarification by Vaporstream of its asserted claim construction to the extent permitted by this Court.  Snap also reserves the right to supplement or otherwise amend these Invalidity Contentions in response to any proposed claim constructions or alleged supporting evidence offered by Vaporstream, any report from any expert witness for Vaporstream regarding claim construction issues, any claim construction briefing filed by Vaporstream, and any position taken by Vaporstream concerning claim construction, infringement, or validity issues.

To the extent that these Invalidity Contentions reflect constructions of claim terms that may be consistent with or implicit in Vaporstream's Infringement Contentions, no inference is intended or should be drawn that Snap agrees with such

claim constructions.  Snap takes no position on any matter of claim construction in these invalidity contentions.  Any statement herein describing or tending to describe any claim element is provided solely for the purpose of understanding the relevant prior art.  Snap expressly reserves the right to propose any claim construction it considers appropriate and/or to contest any claim construction is considers inappropriate.  Nothing contained in these Invalidity Contentions or any accompanying appendices or claim charts should be understood or deemed to be an express or implied admission or contention with respect to the proper constructions of any terms in the Asserted Claims.  The information provided shall not be deemed an admission regarding the scope of any claims or the proper construction of those claims or any terms contained therein.  Snap expressly reserves the right to take positions with respect to claim construction issues that are inconsistent with, or even contradictory to, claim construction positions expressed or implied in these Invalidity Contentions.  Moreover, nothing herein admits in any way that any of Snap's accused products or services, or any of Snap's other products or services, infringes any of the Asserted Claims.

## C.    Ongoing Discovery and Disclosures

Discovery in this case is ongoing and Snap's investigation, including Snap's search for prior art, is ongoing.  Snap bases these Invalidity Contentions on its current knowledge and understanding of the Asserted Patents, Vaporstream's Infringement Contentions, the prior art, and other facts and information available as of the date of these contentions.  Snap has not yet completed its investigation, collection of information, discovery, or analysis relating to this action, and additional discovery may require Snap to supplement or modify these contentions.  For example:

- Vaporstream has not produced all of the information relevant to Snap's claims and defenses.

- Snap also has not yet deposed the named inventors of the Asserted Patents and/or other persons having potentially relevant information, but

1    will engage in this and other such discovery consistent with this Court's

2    orders.

3        Snap therefore reserves the right to further supplement or alter the positions

4   taken and information disclosed in these Invalidity Contentions including, without

5   limitation, the prior art and grounds of invalidity set forth herein, to take into account

6   information or defenses that may come to light as a result of these continuing efforts.

7   Snap further reserves the right to introduce and use such supplemental materials at

8   trial.

9        Moreover, Vaporstream has not produced any documents regarding conception

10  and reduction to practice.  Thus, the Asserted Patents are not entitled to any date of

11  invention earlier than its effective filing date.  Snap objects to Vaporstream alleging or

12  providing evidence of any earlier date of invention.  To the extent Vaporstream asserts

13  an earlier date of invention for the Asserted Patents, Snap further reserves the right to

14  seek preclusion of said evidence and/or seek to supplement, modify, and/or amend its

15  Invalidity Contentions and identification and production of prior art.

16       Further, as described above, Snap intends to diligently seek discovery from

17  third parties to demonstrate earlier invention by other parties under at least 35 U.S.C.

18  § 102(g).   Snap further intends to take discovery on the issues of improper

19  inventorship and/or derivation under 35 U.S.C. § 102(f), public use and/or the on-sale

20  bar under 35 U.S.C. § 102(b), and/or applicants' failure to comply with 35 U.S.C. §

21  112.  Snap therefore reserves all rights to further supplement or amend these invalidity

22  contentions if and when further information becomes available.

23       **D.    Incorporation by Reference**

24       Snap incorporates by reference its Motion to Dismiss on the basis that the

25  Asserted Patents are invalid for failure to claim patentable subject matter under 35

26  U.S.C. § 101 (ECF No. 23) and related papers.

27       **E.    Prior Art Identification and Citation**

28       In the accompanying charts, Snap identifies specific portions of prior art

references that disclose the elements of the Asserted Claims. Although Snap has identified at least one citation per element for each reference, each and every disclosure of the same element in said reference is not necessarily identified. In an effort to focus the issues, Snap identifies only limited portions of the cited references. It should be recognized that a person of ordinary skill in the art would generally read a prior art reference as a whole and in the context of other publications, literature, and general knowledge in the field. To understand and interpret any specific statement or disclosure in a prior art reference, a person of ordinary skill in the art would rely upon other information including other publications and general scientific or engineering knowledge. Snap therefore reserves the right to rely upon other unidentified portions of the prior art references and on other publications and expert testimony to provide context and to aid understanding and interpretation of the identified portions. Snap also reserves the right to rely upon other portions of the prior art references, other publications, and the testimony of experts to establish that the alleged inventions would have been obvious to a person of ordinary skill in the art, including on the basis of modifying or combining certain cited references. Snap also reserves the right to rely upon any admissions relating to prior art in the Asserted Patents or their prosecution history.

Where Snap identifies a particular figure in a prior art reference, the identification should be understood to encompass the caption and description of the figure as well as any text relating to the figure in addition to the figure itself. Similarly, where an identified portion of text refers to a figure or other material, the identification should be understood to include the referenced figure or other material as well.

## II.   **INVALIDITY CONTENTIONS**

### A.   **Identification of Prior Art**

Snap identifies the following prior art references now known to it that anticipate the Asserted Claims of the Asserted Patents, either expressly, implicitly in the larger

context of the passage, or inherently as understood by a person having ordinary skill in the art.  Each of these prior art patents, publications, and systems anticipates the Asserted Claims of the Asserted Patents.  In some instances, Snap treated certain prior art as anticipatory where certain elements are expressly, implicitly, or inherently present based on Vaporstream's apparent claim construction in its Infringement Contentions.

**B.     Prior Art Against The Asserted Patents**

The following patents and publications are prior art under at least 35 U.S.C. §§ 102(a), (b), (e) and/or (g) and 103 over the Asserted Patents.

| |
|---|
| "Facilitating Mobile Communication with Multimodal Access to Email Messages on a Cell Phone," CHI 2004 "Lai" |
| "One-Handed Use as a Design Driver: Enabling Efficient Multi-channel Delivery of Mobile Applications," Mobile and Ubiquitous Information Access, Sep. 8, 2003 "Nikkanen" |
| Alcatel One Touch Com User Manual "Alcatel" |
| Ericsson i888 User Manual "Ericsson i888" |
| Ericsson R320s User Guide "Ericsson R320s" |
| Nextel i1000plus User's Guide "Nextel" |
| Nokia 9000i User Manual "Nokia" |
| U.S. Patent No. 5,812,670 "Micali" |
| U.S. Patent No. 5,958,005 "Thorne" |
| U.S. Patent No. 6,014,689 "Budge" |
| U.S. Patent No. 6,018,774 "Mayle" |
| U.S. Patent No. 6,161,129 "Rochkind" |
| U.S. Patent No. 6,223,213 "Cleron" |
| U.S. Patent No. 6,252,588 "Dawson" |
| U.S. Patent No. 6,324,569 "Ogilvie" |
| U.S. Patent No. 6,332,164 "Jain" |
| U.S. Patent No. 6,360,252 "Rudy" |
| U.S. Patent No. 6,369,908 "Frey" |
| U.S. Patent No. 6,564,248 "Budge 2" |
| U.S. Patent No. 6,601,088 "Kelley" |
| U.S. Patent No. 6,836,846 "Kavensky" |
| U.S. Patent No. 6,965,926 "Shapiro" |
| U.S. Patent No. 6,999,565 "Delaney" |

| |
|---|
| U.S. Patent No. 7,113,767 "Vaananen" |
| U.S. Patent No. 7,120,455 "Chen" |
| U.S. Patent No. 7,130,885 "Chandra" |
| U.S. Patent No. 7,149,503 "Aarnio" |
| U.S. Patent No. 7,149,893 "Leonard" |
| U.S. Patent No. 7,191,252 "Redlich '252" |
| U.S. Patent No. 7,305,713 "Crance" |
| U.S. Patent No. 7,334,267 "Engstrom" |
| U.S. Patent No. 7,356,564 "Hartselle" |
| U.S. Patent No. 7,516,183 "Shiigi" |
| U.S. Patent No. 7,631,336 "Diaz Perez" |
| U.S. Patent No. 7,669,051 "Redlich '051" |
| U.S. Patent No. 7,802,161 "Sohn" |
| U.S. Patent No. 7,865,394 "Calloway" |
| U.S. Patent No. 8,145,715 "Henry" |
| U.S. Patent No. 8,504,080 "Jo" |
| US 2001/0011262A1 "Hoyt" |
| US 2001/0032246A1 "Fardella" |
| US 2002/0112005A1 "Namias" |
| US 2002/0180788A1 "Wu" |
| US 2002/0184322A1 "Simpson" |
| US 2003/0023695A1 "Kobata" |
| US 2003/0038835 "DeFelice" |
| US 2003/0122922A1 "Saffer" |
| US 2003/0126215 "Udell" |
| US 2004/0019644 "Fellenstein" |
| US 2004/0218047A1 "Goodman" |
| US 2005/0086527A1 "Jackson" |
| US 2005/0120230 "Waterson" |
| US 2006/002315A1 "Theurer" |
| WO 2003/005636 "Barriga" |
| WO 2004/085814A1 "Doulton" |

Exhibits A-I include charts specifically identifying where each element of each asserted claim is found in the prior art. In addition, for certain limitations, the discussion below includes an identification of where certain prior art references disclose that limitation and the rationale for combining that reference with those found in Exhibits A-I as identified in those exhibits.

To the extent any limitation of any of the Asserted Claims of the Asserted Patents is construed to have a similar meaning, or to encompass similar feature(s) and/or function(s), with any other claim limitation of any of the other Asserted Claims, as apparently contended by Vaporstream in its Infringement Contentions, or later by the Court, and to the extent at least one claim chart in Exhibits A-I  hereto identifies any prior art reference, or a portion thereof, as disclosing or teaching such similarly construed claim limitation, such identified prior art reference, or the portion thereof, and Snap's contentions with respect to such claim limitation and such prior art reference as found in such claim chart, are incorporated by reference, and are part of, Snap's invalidity contention with respect to each Asserted Claim that includes such similarly construed claim limitation.

To the extent that they are prior art, Snap reserves the right to rely upon foreign counterparts of the U.S. Patents identified in Snap's Invalidity Contentions; U.S. counterparts of foreign patents and foreign patent applications identified in Snap's Invalidity Contentions; and U.S. and foreign patents and patent applications corresponding to articles and publications identified in Snap's Invalidity Contentions. Snap also reserves the right to rely upon parent or ancestor patents or patent applications from which any of the patents or patent applications listed in Exhibit A claim priority as continuation, divisional, or continuation-in-part applications.

The claim charts of Exhibits A-I provide example sections within the prior art references that teach or suggest each and every element of the Asserted Claims.  Each reference or combination of references suggested by each chart indicates whether the prior art renders the claim obvious or anticipated.  To the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I.

No showing of a specific motivation to combine prior art is required to combine the references disclosed herein, as each combination of art would have no unexpected results, and at most would simply represent a known alternative to one of ordinary

skill in the art.  *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 416-17, 127 S. Ct. 1727, 1739-40 (2007) ("*KSR*") (rejecting the Federal Circuit's "rigid" application of the teaching, suggestion, or motivation to combine test, instead espousing an "expansive and flexible" approach).  Indeed, the Supreme Court held that a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton" and "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 1742.

In view of the Supreme Court's *KSR* decision, the PTO issued a set of Examination Guidelines.  *See* Examination Guidelines for Determining Obviousness Under 35 U.S.C. § 103 in View of the Supreme Court Decision in *KSR International Co. v. Teleflex Inc.*, 72 Fed. Reg. 57,526 (Oct. 10, 2007).   Those Guidelines summarized the *KSR* decision, and identified various rationales for finding a claim obvious, including those based on other precedents.  Those rationales include:

(A)  Combining prior art elements according to known methods to yield predictable results;

(B)  Simple substitution of one known element for another to obtain predictable results;

(C)  Use of known technique to improve similar devices (methods, or products) in the same way;

(D)  Applying a known technique to a known device (method, or product) ready for improvement to yield predictable results;

(E)  "Obvious to try" – choosing from a finite number of identified, predictable solutions, with a reasonable expectation of success;

(F)  Known work in one field of endeavor may prompt variations of it for use in either the same field or a different one based on design incentives or other market forces if the variations would have been predictable to one of ordinary skill in the art;

(G)  Some teaching, suggestion, or motivation in the prior art that would have led one of ordinary skill to modify the prior art reference or to combine prior art

Cooley LLP
Attorneys At Law
Palo Alto

10.

Snap Inc.'s Invalidity Contentions
2:17-CV-220-RS-KS

reference teachings to arrive at the claimed invention.

*Id.* at 57,529. Snap contends that one or more of these rationales apply in considering the obviousness of the claims of the Asserted Claims.

A person of ordinary skill at the time of the invention had reason to combine or modify one or more of the references listed and charted in Exhibits A-I in light of the knowledge of a person of ordinary skill in the art at the time of the invention and information in the prior art cited herein. In particular, and without limitation, a person of ordinary skill at the time of the invention would have been motivated to combine or modify one or more of the references charted and listed in Exhibits A-I because these references are directed to a common field of endeavor and to solving a common problem, namely electronic messaging systems. Thus, these references would logically have been combined pursuant to 35 U.S.C. § 103, and there was abundant motivation to combine such references at the time of the purported invention of the Asserted Patents. Additional rationales with citations can be found in the accompanying charts in Exhibits A-I and below.

For example, Redlich '051 states:

> Concerns regarding the privacy of certain data (for example, an individual's social security number, credit history, medical history, business trade secrets and financial data) is an important issue in society. In another words, individuals and businesses have a greater concern regarding maintaining the secrecy of certain information in view of the increasing ease of distribution of documents through computer networks and the Internet.

Redlich '051 at 1:37-44. Redlich '252 further states:

> It is common knowledge that the highest security is delivered through total separation. Whereas this concept has only been implemented physically or by isolating computer environments, the invention achieves this concept of total separation within open and networked computer environments. The invention can implement a total physical

and logical separation of important and critical data from its context and can preclude access to that information without a needed granular access permission.

Redlich '252 at 10:31-40.

Kavensky also identified this problem with electronic mail:

> Senders of E-mail messages often want the message to be retrieved and accessed by the intended recipient and not made available to anybody else to access. For example, a sender of an e-mail message including content of an intimate or personal nature would like to prevent a receiving user from showing his/her note to other people. Standard pre-vention methods that include encryption only helps to pre-vent unauthorized access to data while it is being commu-nicated over the communication medium, e.g., phone lines. These security methods however, cannot prevent improper use of messages at a receiving end after they are decrypted.
>
> ***It would thus be highly desirable to provide a system and method that enables a sender to control access to e-mail data after sending the e-mail message to the intended recipient.***

Kavensky at 1:13-26 (emphasis added).

Ogilvie further teaches:

> The present invention relates to methods, articles, signals, and systems for self-removing email messages. Self-removal of email (or other transmitted digital information presentations) can provide at least two advantages. ***First, self-removing email can be used to enhance the security of a system by reducing the number of message copies and the life span of those copies.*** Second, self-removing email can be used to reduce the inconvenience of unsolicited email by making it possible for officials, advertisers, and other broad-cast email originators to present messages that do not have to be manually removed by the target audience. A given method, article, signal, or system may use self-

Cooley LLP
Attorneys At Law
Palo Alto

12.

Snap Inc.'s Invalidity Contentions
2:17-cv-220-RS-KS

removing email to enhance message security, to reduce recipient annoyance, or both.

Ogilvie at 2:32-46 (emphasis added).

Thus the problems of enhancing security of electronic messaging and various solutions were well-known prior to the alleged inventions of the Asserted Patents.

### 1.    Send Side References

For limitations that incorporate by reference Send Side References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I.   For example, as charted in the accompanying exhibits, DeFelice, Fellenstein, Redlich '252 / '051, Diaz Perez, Fardella, Namias, Simpson, Saffer, and Calloway each disclose these limitations either alone or in combination.   Where any charts incorporate by reference the Send Side References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Send Side References with the charted reference for the reasons stated above.   In addition, because messaging systems inherently include both senders and recipients, a person of ordinary skill in the art would have been motivated to combine references that disclose only a receive side with any of the Send Side References to create a complete electronic messaging system such as that disclosed in the Asserted Patents.

### 2.    Receive Side References

For limitations that incorporate by reference Receive Side References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I.   For example, as charted in the accompanying exhibits, Barriga, Jain, Redlich '252 / '051, Diaz Perez, Saffer, Nikkanen, and Calloway each disclose these limitations alone or in combination.   Where any charts incorporate by

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

SNAP INC.'S INVALIDITY CONTENTIONS
2:17-CV-220-RS-KS

reference the Receive Side References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Receive Side References with the charted reference for the reasons stated above.  In addition, because messaging systems inherently include both senders and recipients, a person of ordinary skill in the art would have been motivated to combine references that disclose only a send side with any of the Receive Side References to create a complete electronic messaging system such as that disclosed in the Asserted Patents.

### 3.    Separate Display References

For limitations that incorporate by reference Separate Display References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I.  For example, as charted in the accompanying exhibits, Jo, Redlich '252 / '051, Namias, Rudy, Delaney, and Aarnio each disclose these limitations alone or in combination.  Further references that teach these limitations include Alcatel (*See, e.g.,* at 45, 49-50), Ericsson i888 *See, e.g.,* at 23-24), Ericsson R320s (*See, e.g.,* at 53), Fellenstein (*See, e.g.,* [0023]), Nextel (*See, e.g.,* at 52), Nokia (*See, e.g.,* at 6-2), Lai (*See, e.g.,* at 1260), Delaney (*See, e.g.,* Figs. 2B, 2D), Chandra (*See, e.g.,* Figs. 8A, 8B), Aarnio (*See, e.g.,* Figs. 3, 4), and Doulton (*See, e.g.,* Figs. 6, 7).  Where any charts incorporate by reference the Separate Display References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Separate Display References with the charted reference for the reasons stated above.

### 4.    Deletion References

For limitations that incorporate by reference Deletion References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I.  For example, as charted in the accompanying exhibits, Mayle, Saffer,

Cooley LLP
Attorneys At Law
Palo Alto

14.

Snap Inc.'s Invalidity Contentions
2:17-cv-220-RS-KS

Henry, and Jain disclose these limitations alone or in combination.  Further references that teach these limitations include Ogilvie (*See, e.g.* at 2:32-46, 5:59-7:22), Kavensky (*See, e.g.* at 3:16-30), Engstrom (*See, e.g.* at 1:31-35, 3:29-54, 4:19-23, 4:36-55, Fig. 3b), Hartselle (*See, e.g.* at 3:14-29, 10:66-11:15, 11:38-46, 12:9-28, Fig. 10), Udell (*See, e.g.,* Abstract, Figs. 2-13), Thorne (*See, e.g.* at 7:16-42, 8:59-67, 9:21-43, 11:5-12), Kelley (*See, e.g.,* Abstract, Figs. 4-6, 2:40-51, 2:62-3:6), Shapiro (*See, e.g.* at 20:42-66), and Leonard (*See, e.g.* at 14:39-44).  Where any charts incorporate by reference the Deletion References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Deletion References with the charted reference for the reasons stated above.

### 5.   Correlation References

For limitations that incorporate by reference Correlation References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I.  For example, as charted in the accompanying exhibits, Calloway, Saffer, Mayle, and Delaney each disclose these limitations alone or in combination.  Further references that teach these limitations include Sohn (*See, e.g.,* Fig. 4, 1:8-15, 1:62-2:3, 3:18-4:39, 5:20-27, 5:49-56), Micali (*See, e.g.* at 2:1-4, 3:59-4:51), Jackson (*See, e.g.,* Abstract, [0023], [0024], [0025], [0081]), and Rochkind (*See, e.g.* at 2:1-16, 4:11-65, Figs. 2, 3, 4).  Where any charts incorporate by reference the Correlation References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Correlation References with the charted reference for the reasons stated above.

### 6.   Separate Transmission References

For limitations that incorporate by reference Separate Transmission References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I.  For example, as charted in the accompanying exhibits,

Cooley LLP
Attorneys At Law
Palo Alto

15.

Snap Inc.'s Invalidity Contentions
2:17-cv-220-RS-KS

Henry, Barriga and Jain each disclose these limitations alone or in combination. Where any charts incorporate by reference the Separate Transmission References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Separate Transmission References with the charted reference for the reasons stated above.

### 7.  Capture Prevention References

For limitations that incorporate by reference Capture Prevention References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I.  For example, as charted in the accompanying exhibits, Redlich '252 / '051 discloses these limitations alone or in combination.  Further references that teach these limitations include Theurer (*See, e.g.,* Abstract, [0021]), Kavensky (*See, e.g.* at 2:45-3:8, 5:32-45), and Shapiro (*See, e.g.,* at 20:58-21:3). Where any charts incorporate by reference the Capture Prevention References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Capture Prevention References with the charted reference for the reasons stated above.

### 8.  Server References

For limitations that incorporate by reference Server References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I.  For example, as charted in the accompanying exhibits, Fardella, Mayle, Delaney, Henry, Shiigi, Simpson, Saffer, and Rudy each disclose these limitations alone or in combination.  Further references that teach these limitations include Udell (*See, e.g.,* Fig. 1, [0039-41]), Thorne (*See, e.g.* at 4:37-61, 6:1-8), and Kelley (*See, e.g.,* Abstract at 1:12-52, 2:40-51, 2:62-3:6, 8:5, 16).  Where any charts incorporate by reference the Server References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Server

Cooley LLP
Attorneys At Law
Palo Alto

16.

Snap Inc.'s Invalidity Contentions
2:17-CV-220-RS-KS

References with the charted reference for the reasons stated above.

### 9. Mobile Device References

For limitations that incorporate by reference Mobile Device References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I. For example, as charted in the accompanying exhibits, Shiigi, Aarnio, and Nikkanen each disclose these limitations alone or in combination. Further references that teach these limitations include Alcatel, Ericsson i888, Ericsson R320s, Fellenstein, Nextel, Nokia, Lai, Rudy, and Doulton, all of which are expressly directed toward messaging systems on mobile devices and thus as a whole support a motivation to combine any of the other messaging systems with mobile devices. Where any charts incorporate by reference the Mobile Device References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Mobile Device References with the charted reference for the reasons stated above.

### 10. Header References

For limitations that incorporate by reference Header References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I. For example, as charted in the accompanying exhibits, Delaney and Chandra disclose these limitations alone or in combination. Where any charts incorporate by reference the Header References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Header References with the charted reference for the reasons stated above.

### 11. Display-Based Keyboard References

For limitations that incorporate by reference Display-Based Keyboard References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art

Cooley LLP
Attorneys At Law
Palo Alto

17.

Snap Inc.'s Invalidity Contentions
2:17-CV-220-RS-KS

references identified in Exhibits A-I.  For example, as charted in the accompanying exhibits, Namias, DeFelice, and Dawson each disclose these limitations alone or in combination.  Further references that teach these limitations include Hoyt (*See, e.g.,* Fig. 4E, [0607]).  Where any charts incorporate by reference the Display-Based Keyboard References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Display-Based Keyboard References with the charted reference for the reasons stated above.

### 12.    Message List References

For limitations that incorporate by reference Message List References to the extent that an element of an Asserted Claim is not found in a chart, the claim is rendered obvious by combination with one or more other prior art references identified in Exhibits A-I.  For example, as charted in the accompanying exhibits, Nikkanen, Calloway, and Rudy each disclose these limitations alone or in combination.  Further references that teach these limitations include Alcatel (*See, e.g.,* at 45, 49-50), Ericsson i888 *See, e.g.* at 23-24), Ericsson R320s (*See, e.g.,* at 53), Fellenstein (*See, e.g.,* [0023]), Nextel (*See, e.g.,* at 52), Nokia (*See, e.g.,* at 6-2), and Lai (*See, e.g.* at 1260).  Where any charts incorporate by reference the Message List References, a person of ordinary skill in the art at the time of the alleged invention would have been motivated to combine the teachings of the Message List References with the charted reference for the reasons stated above.

## C.    Invalidity under 35 U.S.C. § 112

Snap contends that certain Asserted Claims are invalid under 35 U.S.C. § 112 because:  (1) the claims are indefinite; (2) the claims are not enabled; and/or (3) the claims lack adequate written description.  Snap's contentions that the following claims are invalid under 35 U.S.C. § 112 are made in the alternative, and do not constitute, and should not be interpreted as, admissions regarding the construction or scope of the Asserted Claims, or that any of the Asserted Claims are not anticipated or rendered obvious by any prior art.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

18.

SNAP INC.'S INVALIDITY CONTENTIONS
2:17-CV-220-RS-KS

### 1.   Indefiniteness

The second paragraph of 35 U.S.C. § 112 requires that a patent claim "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention."  A patent is invalid for indefiniteness under § 112 if, when viewed in light of the specification and prosecution history, it fails to "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014).

Snap contends that the following claim terms fail to satisfy 35 U.S.C. § 112, second paragraph and are thus indefinite:

- "reduced traceability displays"
- "reduced traceability electronic messaging application program"
- "first display"
- "second display"
- "third display"
- "fourth display"
- "deleting the message content … after said providing a second display"
- "deleting the message content . . . at a predetermined amount of time after being displayed such that after the second display is terminated from view, the message content . . . is no longer available to the recipient user"
- "the sending user mobile device"
- "deleting the electronic message after the fourth display is provided"
- "the first message content including a media component not being accessible by the sending user for display via the sending user device after said transmitting the media component to the server computer"
- "header information"
- "the selection directed to a portion of a message list"

Cooley LLP
Attorneys At Law
Palo Alto

19.

Snap Inc.'s Invalidity Contentions
2:17-cv-220-RS-KS

- "preventing a single screen capture of both the identifier of a recipient and the media component"
- "preventing a single screen capture of both the identifier of a sending user and the media component"
- "wherein the identifier of a recipient and the message content transmitted received at the server each optionally include a correlation to allow the server to receive the identifier of a recipient and the message content separately and to relate the identifier of a recipient to the message content if the identifier of the recipient is received separately from the message content at the server"
- "wherein the identifier of a recipient and the message content transmitted from the server each optionally include a correlation to allow the identifier of a recipient and the message content to be related to each other by the second reduced traceability electronic messaging application program if the identifier of a recipient and the message content are transmitted from the server separately"
- "correlation to allow the identifier of a recipient and the message content including a media component to be related to each other at a later time by the server computer"
- "first processor"
- "second processor"
- "display generator acts with the display element to generate the second display such that the simultaneous capture of the media component and the header information via screenshot logging is prevented at the recipient user device"
- "preventing screenshot logging at the recipient user device from capturing the media component and the first header information simultaneously"

Cooley LLP
Attorneys At Law
Palo Alto

20.

Snap Inc.'s Invalidity Contentions
2:17-CV-220-RS-KS

### 2.   Enablement

The first paragraph of 35 U.S.C. § 112 requires a patent to describe "the manner and process of making and using [the claimed invention], in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same."  A patent must disclose enough to permit a person of skill in the art, after reading the specification, to practice the claimed invention without undue experimentation.  *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008).   Moreover, "[t]he full scope of the claimed invention must be enabled."  *Id.; see also id.* at 1000 ("Because the asserted claims are broad enough to cover both movies and video games, the patents must enable both embodiments.").

Snap contends that the following claim terms fail to satisfy 35 U.S.C. § 112, second paragraph's enablement requirement and are thus indefinite:

- "display element"
- "display generator"
- "first processor"
- "second processor"
- "display generator acts with the display element to generate the second display such that the simultaneous capture of the media component and the header information via screenshot logging is prevented at the recipient user device"
- "preventing screenshot logging at the recipient user device from capturing the media component and the first header information simultaneously"
- "preventing a single screen capture of both the identifier of a recipient and the media component"

Cooley LLP
Attorneys At Law
Palo Alto

1          •       "preventing a single screen capture of both the identifier of a sending

2                  user and the media component"

3          •       "wherein the identifier of a recipient and the message content transmitted

4                  received at the server each optionally include a correlation to allow the

5                  server to receive the identifier of a recipient and the message content

6                  separately and to relate the identifier of a recipient to the message content

7                  if the identifier of the recipient is received separately from the message

8                  content at the server"

9          •       "wherein the identifier of a recipient and the message content transmitted

10                 from the server each optionally include a correlation to allow the

11                 identifier of a recipient and the message content to be related to each

12                 other by the second reduced traceability electronic messaging application

13                 program if the identifier of a recipient and the message content are

14                 transmitted from the server separately"

15         A person of ordinary skill in the art would not, at the time of the alleged

16  invention, have been able to practice those aspects of the Asserted Claims without

17  undue experimentation.  As a result, these claims are not enabled.

18                        **3.      Written Description**

19         In general, the specification of the Asserted Patents does not provide an

20  adequate written description to support the scope of the asserted claim sought by

21  Vaporstream in furtherance of its infringement theories.  The first paragraph of 35

22  U.S.C. § 112 requires a patent specification to contain "a written description of the

23  invention."  The written description "must do more than merely disclose that which

24  would render the claimed invention obvious."  *ICU Med., Inc. v. Alaris Med. Sys.,*

25  *Inc.*, 558 F.3d 1368, 1377 (Fed. Cir. 2009).  The written description must "clearly

26  allow persons of ordinary skill in the art to recognize that the inventor invented what

27  is claimed" by the time of the application filing date.  *Ariad Pharm., Inc. v. Eli Lilly &*

28  *Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).  Thus, a written description is

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

22.

SNAP INC.'S INVALIDITY CONTENTIONS
2:17-CV-220-RS-KS

1    inadequate where the claim in question exceeds the scope of what the patent discloses
2    by (for example) omitting an attribute of the described invention from the limitations,
3    thereby over-extending the reach of the claim.  *ICU*, 558 F.3d at 1377-78.

4         Snap contends that the following claim terms fail to satisfy 35 U.S.C. § 112,
5    second paragraph's enablement requirement and are thus indefinite:

6    •    "display element"

7    •    "display generator"

8    •    "first processor"

9    •    "second processor"

10   •    "display generator acts with the display element to generate the second
11        display such that the simultaneous capture of the media component and
12        the header information via screenshot logging is prevented at the
13        recipient user device"

14   •    "preventing screenshot logging at the recipient user device from
15        capturing the media component and the first header information
16        simultaneously"

17   •    "preventing a single screen capture of both the identifier of a recipient
18        and the media component"

19   •    "preventing a single screen capture of both the identifier of a sending
20        user and the media component"

21   •    "wherein the identifier of a recipient and the message content transmitted
22        received at the server each optionally include a correlation to allow the
23        server to receive the identifier of a recipient and the message content
24        separately and to relate the identifier of a recipient to the message content
25        if the identifier of the recipient is received separately from the message
26        content at the server"

27   •    "wherein the identifier of a recipient and the message content transmitted
28        from the server each optionally include a correlation to allow the

1         identifier of a recipient and the message content to be related to each

2         other by the second reduced traceability electronic messaging application

3         program if the identifier of a recipient and the message content are

4         transmitted from the server separately"

5      A person of ordinary skill in the art would not, at the time of the alleged

6 invention, have understood what this element described based on the specification.

7

8

9 Dated: June 12, 2017           COOLEY LLP

10

11                  */s/ Reuben H. Chen*

12                  Reuben H. Chen

13                  Attorneys for Defendant

14                  Snap Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

24.

SNAP INC.'S INVALIDITY CONTENTIONS
2:17-CV-220-RS-KS

1

## CERTIFICATE OF SERVICE

2   I certify that all counsel of record are being served via electronic mail with a

3 copy of this document on June 12, 2017.

4

5            */s/ Shemica Westbrook*

6            Shemica Westbrook

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

25.