Heidi L. Keefe (SBN 178960)
hkeefe@cooley.com
Mark R. Weinstein (SBN 193043)
mweinstein@cooley.com
Reuben H. Chen (SBN 228725)
rchen@cooley.com
COOLEY LLP
3175 Hanover Street
Palo Alto, California  94304
Telephone:  (650) 843-5000

Michael Attanasio (SBN 151529)
mattanasio@cooley.com
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000

ATTORNEYS FOR DEFENDANT
SNAP INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| VAPORSTREAM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SNAP INC. d/b/a SNAPCHAT, INC.,<br><br>Defendant. | Case No.   2:17-cv-00220-MLH (KSx)<br><br>**SNAP INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE SNAP'S 35 U.S.C. § 103 OBVIOUSNES DEFENSE AND FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  January 10, 2020<br>Time:  10:00 a.m.<br>Ctrm:  15A<br>Judge: Hon. Marilyn L. Huff |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................. 1

II.  IPR ESTOPPEL DOES NOT APPLY TO SNAP'S SYSTEM ART-BASED INVALIDITY GROUNDS ........................................... 1

    A.  Snap Properly Relied on System Prior Art ............................... 1

    B.  Snap's Combinations would not be Estopped under Any Heightened Standard for System Art ............................................ 9

III.  SNAP'S SYSTEM ART-BASED INVALIDITY GROUNDS SHOULD NOT BE STRICKEN UNDER THE APPLICABLE LOCAL PATENT RULES ...................................................... 11

    A.  Dr. Greenberg's "Subset" Combinations Should Not Be Stricken ......... 15

    B.  Dr. Greenberg's "Superset" Combinations should not be stricken ........ 16

IV.  CONCLUSION ................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apple Inc. v. Samsung Elecs. Co.*,
No. C 11–1846 LHK (PSG), 2012 WL 2499929 (N.D. Cal. Jun. 27, 2012) ........................................................................................................... 14

*California Inst. of Tech. v. Broadcom Ltd.*
No. CV 16-3714-GW (AGRx), 2019 U.S. Dist. LEXIS 141103 (C.D. Cal. Aug. 9, 2019) ................................................................................... 2

*California Inst. of Tech. v. Broadcom Ltd.*,
No. CV 16-3714 GW (AGRx), 2018 WL 7456042 (C.D. Cal. Dec. 28, 2018) .............................................................................................................. 2

*Clearlamp, LLC v. LKQ Corp.*,
No. 12 C 2533, 2016 WL 4734389 (N.D. Ill. Mar. 18, 2016) ............................... 3, 4

*Fenner Invs., Ltd. v. Hewlett–Packard Co.*,
NO. 6:08–CV–273, 2010 U.S. Dist. LEXIS 17536 (E.D. Tex. Feb. 26, 2010) .......................................................................................................... 14

*Fujifilm Corp. v. Motorola Mobility LLC*,
No. 12–cv–03587–WHO, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015) ........... 9, 14

*Graphic Packaging Int'l v. C.W. Zumbiel Co.*
No. 3:10-cv-891-J-37JBT, 2011 WL 5357833 (M.D. Fl. Nov. 3, 2011) ......... 13, 15

*Greatbatch v. AVX Corp.*,
No. CV 13-723-LPS, 2015 WL 5568621 (D. Del. Sept. 22, 2015) ...................... 15

*HSM Portfolio LLC v. Elpida Memory*,
2016 WL 552543 (D. Del. Feb. 11, 2016) ............................................................ 12

*iLife Techs. Inc. v. Nintendo of Am.*, Inc., No. 3:13-cv-4987-M, 2017 U.S. Dist. Lexis 87769 at *20 (N.D. Tex. May 30, 2017) ............................................. 3

*In re Lister*,
583 F.3d 1307 (Fed. Cir. 2009) ............................................................................ 11

*Polaris Indus., Inc. v. Arctic Cat Inc.*,
No. CV 15-4475, 2019 WL 3824255 (D. Minn. Aug. 15, 2019) ................... 2, 3, 4

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

ii.

SNAP'S OPPOSITION TO MOTION TO STRIKE
CASE NO. 2:17-00220-MLH (KSx)

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

3
4
5

*Regents of Univ. of Cal. v. Affymetrix, Inc.*,
   No.: 17-cv-01394-H-NLS, 2019 WL 1298094 (S.D. Cal. Mar. 21,
   2019) ................................................................................ 12, 13, 14, 16

6

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
   330 F. Supp. 3d 574 (D. Mass. Aug. 30, 2018) ...................................... 11

7
8

*SRAM, LLC v. RFE Holding (Can.) Corp.*,
   No. 15-cv-11362, Dkt. No. 102 (N.D. Ill. Jan. 25, 2019) ........................ 10

9
10

*Verinata Health, Inc. v. Sequenom, Inc.*,
   No. C 12–00865 SI, 2014 WL 4100638 (N.D. Cal. Aug. 20, 2014)................. 9, 14

11
12
13

*Wi-Lan Inc. v. LG Elec., Inc.*,
   No. 18-cv-01577-H-AGS, 2019 WL 5698259 (S.D. Cal. Nov. 4,
   2019) .................................................................................... 2, 11

14

**Statutes**

15

35 U.S.C. § 315(e)(2).......................................................................... 2, 4, 11

16

**Other Authorities**

17

Patent Local Rule 3.6(b) ........................................................................ 14

18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

iii.

SNAP'S OPPOSITION TO MOTION TO STRIKE
CASE NO. 2:17-00220-MLH (KSx)

## I.   INTRODUCTION

Snap, Inc. ("Snap") served its Third Amended Invalidity Contentions and its opening invalidity expert report in April 2018.  Vaporstream, Inc. ("Vaporstream") deposed Snap's expert, Dr. Greenberg, and rebutted *each invalidity ground* in its own expert report, served on May 2018.  Almost 18 months later, on the eve of trial, Vaporstream belatedly and opportunistically seeks to strike Snap's system art-based obviousness combinations.  This Court should **DENY** Vaporstream's Motion.

Snap is not estopped from asserting its system art-based combinations because it is well-settled that grounds involving system art "could not have been raised" during an *inter partes* review ("IPR") proceeding.  The Court should also deny Vaporstream's motion to strike the so-called "subset" and "superset" combinations in Dr. Greenberg's report because each and every reference within these combinations was previously cited and charted in Snap's invalidity contentions.  Vaporstream therefore cannot claim any prejudice as a result of these combinations—especially since Vaporstream deposed Dr. Greenberg on the combinations and submitted its own rebuttal expert report analyzing each combination almost 18 months ago.

## II.   IPR ESTOPPEL DOES NOT APPLY TO SNAP'S SYSTEM ART-BASED INVALIDITY GROUNDS

### A.   <u>Snap Properly Relied on System Prior Art</u>

Vaporstream seeks to apply IPR estoppel to 23 obviousness grounds in Dr. Greenberg's report that each include at least one system art reference, i.e., the Nokia 7xxx Series Mobile Phone System, the Pocket PC Phone System, the Microsoft Server System, and the Microsoft Outlook Software System.  Dkt. No. 179, *e.g.*, at 7-8.  As Vaporstream contends, "[t]o the extent Vaporstream is able to show that the documentation Snap disclosed for its cumulative system art was reasonably available to Snap during IPR, <u>the Court should find that estoppel applies to the phones and</u>

Microsoft Server and Outlook software . . . ." *Id.* at 12.[1]

In requesting that the Court "apply IPR estoppel to these <u>products</u> as well as their documentation," *id.*, Vaporstream invites the Court to embark on a radical departure from the way § 315(e)(2) estoppel has been applied by courts around the country.  As recently explained by Judge Wu in *California Inst. of Tech. v. Broadcom Ltd.* ("*Caltech II*"): "A handful of district court cases have considered whether IPR statutory estoppel can preclude a patent challenger from relying on a prior art product or system, where that product or system is related to a prior art printed publication that could have been asserted in an IPR.  Notably, of those district court decisions, <u>none have extended estoppel to prior art grounds involving the product or system</u>."  No. CV 16-3714-GW (AGRx), 2019 U.S. Dist. LEXIS 141103, at *18 (C.D. Cal. Aug. 9, 2019)[2]; *see also Polaris Indus., Inc. v. Arctic Cat Inc.*, No. CV 15-4475 (JRT/TNL), 2019 WL 3824255, at *3 (D. Minn. Aug. 15, 2019) ("Polaris has not produced, nor could this court find, any court granting the relief Polaris now requests—to apply § 315(e)(2) estoppel to products.").

This is because the plain language of the estoppel provision precludes only grounds "that the petitioner raised or reasonably could have raised during that inter partes review."  35 U.S.C. § 315(e)(2).  And "a petitioner could not have reasonably

---

[1] All underlining, italics, and boldfaced font have been added by Snap for emphasis unless otherwise noted.

[2] The *Caltech II* opinion, dated August 9, 2019, follows and incorporates by reference an earlier opinion in the same case, *California Inst. of Tech. v. Broadcom Ltd.,* No. CV 16-3714 GW (AGRx), 2018 WL 7456042 (C.D. Cal. Dec. 28, 2018) (hereafter, "*Caltech I*").  *Caltech II*, at *6 ("On December 28, 2018, the Court issued a Final Ruling resolving Plaintiffs' summary judgment motion regarding inter partes review ('IPR') estoppel . . . .  The Estoppel Order is incorporated by reference in its entirety, and should hereinafter be understood and interpreted based on the applicable clarifications and statements made in this Order.").  This very Court has expressly found the analysis provided by Judge Wu in *Caltech I* to be "well-reasoned and persuasive."  *Wi-Lan Inc. v. LG Elec., Inc.,* No. 18-cv-01577-H-AGS, 2019 WL 5698259, at *8 (S.D. Cal. Nov. 4, 2019) (Huff, J.).

raised a combination of a prior art **product** with a patent or printed publication as a ground for invalidity before the PTAB . . . ." *See e.g., Polaris*, 2019 WL 3824255, at *3 n.1 (citing *iLife Techs. Inc. v. Nintendo of Am.*, Inc., No. 3:13-cv-4987-M, 2017 U.S. Dist. Lexis 87769, at *20 (N.D. Tex. May 30, 2017) (emphasis in original)).

Vaporstream argues that the system art relied upon by Dr. Greenberg "is <u>merely cumulative of the printed publications</u> Snap identified in its contentions (and which would have been available in IPR), thereby triggering estoppel."  Dkt. No. 179, at 10. But not only has the Central District of California expressly rejected the "'superior and separate reference' standard or any other higher standard" with respect to system art, *Caltech II*, at *22, by Vaporstream's own admission, <u>not a single court</u> "ha[s] yet to apply IPR estoppel to system art that is merely cumulative of its documentation," Dkt. No. 179 at 11.  As Judge Wu of the Central District of California recently explained:

> [T]he Court declines to adopt a "superior and separate reference" standard or any other higher standard that would require, for instance, that certain claim limitations be independently satisfied by prior art in a way that is different from an associated prior art patent or printed publication. <u>The statute does not include such requirements, and they would likely extend the reach of statutory IPR estoppel beyond its intended scope.</u> . . . "[R]edundant" prior art grounds appear commonly in patent litigation. For instance, a primary reference may be used to argue that the majority of claim limitations are disclosed, and a patent challenger may then simply swap out secondary references to show that one final limitation is also disclosed in the prior art. <u>Finding that a patent challenger should be estopped from relying on a piece of prior art because that piece of prior art is used to meet the same claim limitations as a related prior art printed publication would be contrary to this practice and ignore the importance of the difference in the underlying evidence used to support the prior art theory.</u> Instead, the Court agrees with *Clearlamp*, *Milwaukee Electric* and other decisions that attempt to discern if a patent challenge is simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to "cloak" its prior art ground and "skirt" estoppel.

*Caltech II*, at *22-23. (emphasis added).  As explained by another court in *Clearlamp, LLC v. LKQ Corp.*:

> It is true that grounds can be cumulative or redundant of one another, but that does not mean that § 315(e)(2) estops those redundant grounds from being offered in civil litigation if they were not available during inter partes review. . . . The relevant inquiry, therefore, is not whether the ground is redundant of a ground that was asserted but, rather, whether the ground reasonably could have been raised. Merely being redundant to a ground that could have been asserted during inter partes review does not estop the alleged infringer from relying upon a ground based upon prior art that was not reasonably available during inter partes review.

No. 12 C 2533, 2016 WL 4734389, at *8 (N.D. Ill. Mar. 18, 2016).

Vaporstream's attempt to characterize Snap's reliance on the phones and software products as an end-run around estoppel, *see* Dkt. No. 179 at 9 ("Snap seeks to cloak its reliance upon the phones and the software products as system art, ostensibly to avoid IPR estoppel . . . ."), is therefore contrary to the law. Indeed, such a characterization was just recently rejected in *Polaris Industries*:

> Polaris argues that estoppel should apply to combinations 1, 2, and 5 because Arctic Cat reasonably could have <u>raised</u> those grounds during the 433 IPR using the manuals of the physical vehicles instead of the vehicles themselves. Polaris asserts that the manuals disclose all relevant material information regarding the physical vehicles. <u>Polaris further argues that allowing Arctic Cat to point to physical vehicles rather than the printed materials describing them would allow Arctic Cat to end-run estoppel.</u>
>
> Polaris has not produced, nor could this court find, any court granting the relief Polaris now requests—to apply § 315(e)(2) estoppel to products. Although some courts have suggested that this relief may be possible, such a rule has not been recognized by any circuits. Thus, the Court declines to adopt such a rule here. Other courts, and this Court agrees, have held that products embodying patents or printed publications are not subject to § 315(e)(2) estoppel.

2019 WL 3824255, at *3 (internal citation omitted). Vaporstream's halfhearted attempt to distinguish *Polaris Industries* only confirms that the analysis in that case did not turn on the "non-cumulativeness" of system art. Dkt. No. 179 at 11-12 ("[I]t was unclear whether the printed manuals in *Polaris Industries* were in fact cumulative of

1    all the relevant features of the prior art all-terrain vehicles.").

2    Vaporstream further alleges that "it
3    is <u>those products' documentation</u> upon
4    which Snap and Dr. Greenberg have relied
5    to attempt to invalidate the asserted
6    claims," Dkt. No. 179 at 9, suggesting that
7    Snap is "simply swapping labels for what
8    is otherwise a patent or printed publication
9    invalidity ground in order to 'cloak' its
10    prior art ground and 'skirt' estoppel,"
11    *Caltech II*, at *23.   But this is simply not
12    true.   As the exhibits accompanying Dr.
13    Greenberg's report make clear (which
14    Vaporstream did not submit with its
15    opening brief), Snap relies on the physical



16    products themselves for certain claim limitations, and only cites associated

17    documentation as further evidence of their functionality.  For example, photos taken of

18    the actual Nokia and Pocket PC phones during operation were included in claim chart

19    exhibits to show how the phones' display screens rendered obvious the user interface

20    limitations of the asserted patents.  *See, e.g.*, Ex. A (Ex. C-14 to Expert Report of Saul

21    Greenberg, Ph.D.) at 3, 9, 10, 11, 12, 13, 14, 27, 31, 32, 34, 41, 48, 49, 51, 57, 68, 74,

22    75.  One such photo (of the Nokia phone) is reproduced above right.  *Id.* at 34.  Dr.

23    Greenberg's report further included a video of the Pocket PC, in operation, that shows

24    its message composition user interface.  Dkt. No. 179-18, Ex. 16, at 7 (listing exhibit

25    "B-87": "Video Showing Message Composition Sequence Using the Pocket PC (with

26    MMS Composer)"), 34 ("I have also provided, concurrently with this report, a video

27    showing this sequence using the MMS Composer application with the above-pictured

28    XDA II phone. (Ex. B-87.)")  And as Vaporstream admits, Dr. Greenberg's report also

presented photographs of each of the physical products that Vaporstream now attempts to exclude. Dkt. No. 179 at 8 n.6.[3] Because Snap relies on physical copies of the products themselves and not solely on associated documentation, Snap cannot be said to be "simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to 'cloak' its prior art ground and 'skirt' estoppel." *Caltech II*, at *23.

Perhaps recognizing that the photographic and video evidence in Dr. Greenberg's report clearly demonstrate a proper reliance on the products themselves as prior art, Vaporstream attempts to seize upon the absence of such visual evidence in Snap's contentions. The gist of Vaporstream's argument appears to be that because such visual evidence of the actual systems were missing from Snap's contentions, Vaporstream was never informed of Snap's intention to rely on system art. Dkt. No. 179, *e.g.*, at 8 ("Snap's contentions did not even have a picture or other representation of the systems to inform Vaporstream of its intention to rely on the actual systems, rather than the documentation that relates to or is cumulative of the systems."), 8 n.6 ("[B]ecause Snap has not sufficiently disclosed its intention to rely upon any prior art that is actually system art, Dr. Greenberg cannot introduce these new prior art references not disclosed in the invalidity contentions.") (internal brackets and quotation marks omitted).

But Vaporstream cannot credibly feign misunderstanding of Snap's disclosure. Snap's contentions consistently identified the art at issue as "systems," in both the numerical listing of individual pieces of art as well as the listing of prior art combinations. Dkt. No. 179-17, Ex. 15 at 8-10 (enumerating 35 individual pieces of prior art), 11-26 (listing combinations that include the previously listed art). The listing

---

[3] These physical products were also made available to Vaporstream for inspection. Ex. B (email chain between Snap and Vaporstream). Vaporstream's validity expert in fact inspected at least the Nokia phone. Ex. C (Rebuttal Expert Report of Geoff A. Cohen) at ¶145.

of art expressly identified the "Microsoft Outlook Software System," *id.* at 9, the "Microsoft Server system," *id.*, the "Nokia 7xxx Series Mobile Phone system," *id.*, and the "Pocket PC Phone system," *id.* at 10.  That list is reproduced in condensed form below:

|  | Reference Short Name | Documentation |
|---|---|---|
| … | … | … |
| 14 | **Microsoft Outlook Software System** | Jim Boyce, Microsoft Outlook Version 2002 |
| 15 | **Microsoft Server system** | Lenoid Braginsky, Running Microsoft Internet Information Server (1998) |
| … | … | … |
| 20 | **Nokia 7xxx Series Mobile Phone system** | (1) User's Guide for Nokia 7610 (2004) (2) Nokia 7610 User Guide |
| … | … | … |
| 24 | **Pocket PC Phone system** | (1) User Manual: Pocket PC Phone (2003) (2) HP iPAQ h6315 Guide (2003) (3) Segan, "HP iPAQ h6315," PC Magazine (Sept. 23, 2004) (4) Brown, "Pocket PC Joins the PDA/Phone Parade," PC Magazine (Aug. 1, 2002) (5) Miller, "Forward Thinking: Gadgets of the Month," (6) PC Magazine at p. 43 (Oct. 1, 2002) "Pocket Multimedia," PC Magazine at p. 112 (May 6, 2003). |

The listing of combinations similarly made clear the "system" art within each combination.  As one example, "Combination References 4" for claim 1 of the '711 patent identified "Nokia 7xxx Series Mobile Phone (**System**), Yuan, Edwards, Wren, Parikh, Berger, Hartselle, Redlich, and Fardella."  Dkt. No. 179-17 at 11 (boldface underlining added).

Vaporstream spills much ink attempting to justify its tortured (and likely ad hoc) interpretation of the contentions' "use [of] the word 'system' as a <u>label to refer to printed publications</u> describing or pertaining to the actual systems."  Dkt. No. 179 at 8;

*id.* at 8-10.  But this is belied by the fact that the Nokia and Pocket PC phones were each identified with underline(multiple) pieces of supporting documentation, as shown above. Dkt. No. 179-17 at 9, 10.  It strains credulity that Vaporstream would have interpreted a single reference short name to refer to a multiplicity of distinct documents, rather than the actual system that those documents describe.  Moreover, the documentation "Jim Boyce, Microsoft Outlook Version 2002" is listed twice, once for prior art "Boyce" and separately for the "Microsoft Outlook Software System," which should have fairly indicated that the "Boyce" reference is intended to be distinct prior art from the actual "Microsoft Outlook Software System."  Dkt. No. 179-17 at 8, 9.

Vaporstream's feigned confusion is also betrayed by its validity expert Dr. Cohen, who had no trouble understanding—and responding to—Snap's reliance on the actual prior art systems based on the short names used.  Ex. C, *e.g.*, at ¶141 ("As another 'primary reference,' Dr. Greenberg uses the Nokia 7xxx Series phones, and relies on a number of supplementary documents that purportedly describe the functionality of the Nokia 7xxx phones."), ¶145 ("[T]his is already the way that the Nokia 7xxx functions. As a relatively simple inspection of the messaging capability of the Nokia 7610 reveals, both the recipient and the content are visible on the display at the same time. See Exhibit E hereto."), ¶85, ¶148 ("Dr. Greenberg relies on as a 'primary reference' the Pocket PC Phone System, in particular the application MMS Composer."), ¶191 ("Dr. Greenberg also relies on a system reference he refers to as 'Microsoft Server System.' Based on a photograph in his report (Para. 352), this is apparently Microsoft Windows Server, 2003, Standard Edition."), ¶¶261-262 ("Dr. Greenberg also relies on Microsoft Outlook, Version 2002 ('Microsoft Outlook Software System' or 'Outlook'). . . .  Dr. Greenberg relies on the Microsoft Outlook email program to demonstrate that 'automatic deletion of electronic messages' was well-known in the art."); *see also id.* at ¶310 ("As a general matter, if it were true, as Dr. Greenberg alleges, that the equivalent functionality of the Asserted Patents was available to any person of ordinary skill in the art merely by underline(combining), for example,

out-of-date phones with configuration options from Microsoft Outlook, then a product that offered only that combination certainly would not have received notice."). Indeed, it was the signatory of the present motion to strike who initially requested inspection of system art on behalf of Dr. Cohen, confirming that Vaporstream's apparent confusion was only recently manufactured for the sole purpose of trying to exclude Snap's prior art defenses on the eve of trial. Dkt. No. 179 at 21; Ex. B (email chain initiated by Vaporstream's counsel to request inspection).

In any event, "any potential confusion to [Vaporstream] should have been resolved by compelling [Snap] to amend its contentions rather than by filing a motion to strike [Dr. Greenberg's] report," *Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12–00865 SI, 2014 WL 4100638, at \*7 (N.D. Cal. Aug. 20, 2014), and "not for [Vaporstream] to wait until expert discovery and then move to strike the expert report." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12–cv–03587–WHO, 2015 WL 757575, at \*29 (N.D. Cal. Feb. 20, 2015) (quoting *Verinata*). "In these circumstances, striking the [] combinations would be a windfall to [Vaporstream] and would be unfair to [Snap]." *Id*.

**B.**   **Snap's Combinations would not be Estopped under Any Heightened Standard for System Art**

As explained at length, the Central District of California has expressly "decline[d] to adopt a 'superior and separate reference' standard or any other higher standard that would require, for instance, that certain claim limitations be independently satisfied by prior art in a way that is different from an associated prior art patent or printed publication." *Caltech II*, at \*22. But even were this Court inclined to adopt such a heightened standard, Snap's system art-based combinations would still not be estopped as Vaporstream contends. Dkt. No. 179 at 10-11.

The asserted patent claims heavily recite user interface features of user devices. For example, claim 1 of the '711 patent recites a "first plurality of reduced traceability displays including a first display and a second display, the first display configured to

1   allow a user of the sending user mobile device to associate the message content

2   including a media component with the electronic message, the second display

3   configured to allow the user of the sending user mobile device to associate the identifier

4   of a recipient with the electronic message, the instructions executable by the first

5   processor providing the first and second displays such that the identifier of the recipient

6   is not displayed with the media component via the first display preventing a single

7   screen capture of both the identifier of a recipient and the media component."  Dkt. No.

8   at 24:25-43.

9       And only an operational device can readily demonstrate all of the details of a

10  user interface relevant to the claimed features, at least some of which may not be

11  explicitly shown in documentation such as a user manual.  Indeed, if Snap were

12  precluded from presenting a functional device at trial, it is possible that Vaporstream

13  would seize upon certain user interface details not expressly shown in documentation

14  to suggest claim limitations missing from the prior art, in ways Snap cannot fully

15  predict at this juncture.  Accordingly, no manual, book, or article can exactly substitute

16  for the display screens as demonstrated on the devices themselves.  *See SRAM, LLC v.*

17  *RFE Holding (Can.) Corp.*, No. 15-cv-11362, Dkt. No. 102 at 11-12 (N.D. Ill. Jan. 25,

18  2019) ("Ground F of Race Face's invalidity contentions argues that several '027 claims

19  were obvious based on a combination including the Boone Chainring, a prior art device

20  purportedly containing offset tooth tips. . . .  Although the Boone Chainring was

21  depicted in a printed publication, it was <u>not depicted at an appropriate angle or in</u>

22  <u>enough detail to show its relevant feature of offset tooth tips</u>.").  Although certain

23  features of a device's interface may be inferred by persons of ordinary skill based on

24  descriptions provided in associated documentation, Dkt. No. 179 at 11, Snap should

25  not have to present its invalidity case to the jury using less compelling, explicit, and

26  definitive forms of evidence.  *See, e.g.*, Ex. A at 29-35 (juxtaposing textual descriptions

27  from a phone's user manual to the photographed display screens of the phone in

28  operation).

More fundamentally, a prerequisite to any application of a heightened standard for system art is that the associated documentation must themselves qualify as "printed publications" that could have been raised in IPR—and this requires a showing of public accessibility of the documentation (as distinct from the public availability of the described product or system). *See, e.g.*, *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 603 (D. Mass. Aug. 30, 2018) (explaining that "[f]or a document to be considered a 'printed publication,' it must have been publicly available" and declining to find estoppel with respect to a prior art product where there was "a genuine issue of material fact as to whether the manufacturing specification [describing the product] was public"). It is well-settled that public accessibility must be "determined on a case-by-case basis based on the facts and circumstances surrounding the reference's disclosure to members of the public." *In re Lister*, 583 F.3d 1307, 1311 (Fed. Cir. 2009).

"The party asserting estoppel bears the burden to show that estoppel applies." *Wi-Lan*, 2019 WL 5698259, at *8. And here, Vaporstream has neither shown nor stipulated that all of the supporting documentation characterized as "printed publications," Dkt. No. 179, *e.g.*, at 9, were in fact publicly available references—and thus "could have [been] raised" in IPR, 35 U.S.C. § 315(e)(2). In the absence of such a showing, any heightened standard cannot bar Snap from relying on the underlying described products.

## III. SNAP'S SYSTEM ART-BASED INVALIDITY GROUNDS SHOULD NOT BE STRICKEN UNDER THE APPLICABLE LOCAL PATENT RULES

Vaporstream also cites the Patent Local Rules as an ostensible alternative to IPR estoppel in its attempt to preclude Snap from presenting prior art-based invalidity theories at trial. But each and every piece of prior art included in the combinations Vaporstream now seeks to exclude were properly disclosed in Snap's contentions. Vaporstream thus cannot—and does not—point to any prejudice suffered as a result of the purported "subset" and "superset" combinations set forth in Dr. Greenberg's report.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11.

SNAP'S OPPOSITION TO MOTION TO STRIKE
CASE NO. 2:17-00220-MLH (KSx)

Dkt. No. 179 at 14-20.

In fact, Dr. Greenberg's report was served on April 25, 2018.  Vaporstream has thus been aware of these precise combinations for <u>several months</u> (not counting the period during which the case was stayed), and chose to not raise an issue with Snap's invalidity theories until now—after invalidity expert discovery has been completed and on the eve of trial.  Indeed, Vaporstream's validity expert embraced and analyzed each "subset" and "superset" combination in his rebuttal expert report, foreclosing any possibility that Vaporstream has suffered actual prejudice.  Ex. C at ¶¶281-287.

The lack of prejudice to Vaporstream, as compounded by its inexcusable delay in raising the issue, should be dispositive of its estoppel challenge repurposed as a violation of the Local Patent Rules.  In a remarkably similar case, this very Court made clear that when addressing a motion to strike prior art theories alleged to have been insufficiently disclosed as part of contentions, the focus is on any prejudice suffered by the plaintiff:

> Plaintiffs argue that in his expert report, Dr. Burgess relies on prior art references and combinations that Defendants did not select in their October 19, 2018 election of prior art references, and, thus, the Court should strike these additional references from Dr. Burgess's invalidity opinions. . . .
>
> . . . [E]ven if the Court considers these additional pieces of literature as additional prior art references and not simply background material, <u>Plaintiffs have failed to explain how they have been prejudiced by the inclusion of these additional references</u>. Plaintiffs do not assert that these are brand new references that were not previously disclosed in Defendants' invalidity contentions. Plaintiffs were able to depose Dr. Burgess regarding these additional references, and Plaintiffs were able to serve their own rebuttal expert report addressing these references.

*Regents of Univ. of Cal. v. Affymetrix, Inc.*, No.: 17-cv-01394-H-NLS, 2019 WL 1298094, at *2-3 (S.D. Cal. Mar. 21, 2019) (Huff, J.).[4]

---

[4] Other courts have similarly looked to prejudice in evaluating motions to strike prior art defenses. *See, e.g.*, *HSM Portfolio LLC v. Elpida Memory*, No. 11–770–RGA, 2016 WL 552543, at *1 (D. Del. Feb. 11, 2016) ("To the extent there has been any prejudice

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

SNAP'S OPPOSITION TO MOTION TO STRIKE
CASE NO. 2:17-00220-MLH (KSx)

This Court in *Regents* went on to note that to the extent the obviousness combinations were not identical to those previously disclosed, they would still comply with the purpose of the Court's order limiting the number of combinations:

> [E]ven if Dr. Burgess's report included additional references, Dr. Burgess's analysis was still limited to no more than 20 specific anticipatory references/obviousness combinations, which complies with the purpose of the Court's September 20, 2018 <u>order</u>. Indeed, in his report, Dr. Burgess's relies on only 9 specific anticipatory references/obviousness combinations in performing his invalidity analysis, well under the limit of 20 set forth in the September 20, 2018 order. In sum, the Court declines to strike from Dr. Burgess's report these additional pieces of literature.

2019 WL 1298094, at *3 (Huff, J.).

The Court in this case has made clear that S.D. Cal.'s Patent Local Rules govern the disclosure of invalidity theories. Dkt. 96 at 2 n.1 ("The parties should specifically note that the Court's scheduling order sets forth disclosure requirements that are based on the requirements set forth in the Southern District of California Patent Local Rules . . . ."); *see also id.* at 6-8, 9-10 (setting forth invalidity disclosure requirements using language taken directly from S.D. Cal.'s Patent Local Rules); *see also* Dkt. No. 162 at 3 n.2; Dkt. No. 179 at 14 n.8. The analysis provided in *Regents*—from the Southern District of California—thus has the most persuasive weight in determining how S.D. Cal.'s Patent Local Rules should be applied in evaluating the present motion to strike.[5]

---

at all, it has been substantially mitigated by the fact that Plaintiffs' validity expert was able to address the references in his report."); *Graphic Packaging Int'l v. C.W. Zumbiel Co.* No. 3:10-cv-891-J-37JBT, 2011 WL 5357833, at *4 (M.D. Fl. Nov. 3, 2011) ("[I]t does not appear that Plaintiff will be unfairly prejudiced, as Defendant's [sic; Plaintiff's] expert, Mr. Anthony, has already submitted a rebuttal report, which responds to the merits of Dr. Kimmel's Supplementary Expert Report, including his opinions based on the [prior art at issue].").

[5] Notably, despite the direct applicability of *Regents*, Vaporstream makes no mention of this case, or any other case from the Southern District of California. Vaporstream instead relies almost exclusively on authority from the Northern District of California, Dkt. No. 179 at 14-20, which is puzzling given its apparent agreement that the Southern District of California's application of its Patent Local Rules should govern. Dkt. No.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

SNAP'S OPPOSITION TO MOTION TO STRIKE
CASE NO. 2:17-00220-MLH (KSx)

Moreover, given that Vaporstream has suffered no prejudice (as confirmed by *Regents*), its delay in raising an issue with Snap's combinations has deprived Snap of any opportunity to amend its contentions to cure the alleged deficiencies, through either a formal motion with the Court or an informal agreement with Vaporstream.  *See, e.g.*, *Verinata*, 2014 WL 4100638, at *6 (citing *Fenner Invs., Ltd. v. Hewlett–Packard Co.*, No. 6:08–CV–273, 2010 U.S. Dist. LEXIS 17536, at *12 (E.D. Tex. Feb. 26, 2010) for the statement that "[i]f Defendants were unclear as to the scope of the contentions, it was their responsibility to work with Plaintiff, informally or through motion practice, to clarify the issue."); *id.* at *7 ("[B]ecause this discrepancy should have been apparent to Verinata based on a review of Sequenom's contentions and its claim charts, any potential confusion to Verinata should have been resolved by compelling Sequenom to amend its contentions rather than by filing a motion to strike Dr. Metzker's report.").

For example, S.D. Cal.'s Patent Local Rule 3.6(b), as incorporated into the Court's Scheduling Order (Dkt. 96 at 10-11), expressly allows for the amendment of invalidity contentions in the absence of prejudice "upon a timely motion showing good cause."[6]  Under these circumstances, where Vaporstream's own delay contributed to the alleged deficiencies it now opportunistically complains of, "striking the [] combinations would be a windfall to [Vaporstream] and would be unfair to [Snap]."  *Fujifilm*, 2015 WL 757575, at *29.  This unfairness is particularly

---

179 at 14 n.8 ("This Court's Amended Scheduling Order specified that the disclosure requirements as set forth in the Southern District of California Patent Local Rules apply to this case . . . .").  In any event, the Northern District of California has characterized the relevant question as: "will striking the report result in not just a trial, but an overall litigation, that is more fair, or less?" *Verinata*, 2014 WL 4100638, at *3 (quoting *Apple Inc. v. Samsung Elecs. Co.*, No. C 11–1846 LHK (PSG), 2012 WL 2499929, at *1 (N.D. Cal. Jun. 27, 2012)).  Framing the issue in this manner would result in the same outcome, as explained further in the text below.

[6] N.D. Cal.'s Patent Local Rules, to the extent applicable to the present dispute, contains a similar provision 3-6, which goes on to state that good cause may be supported by "[r]ecent discovery of material, prior art despite earlier diligent search."

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

SNAP'S OPPOSITION TO MOTION TO STRIKE
CASE NO. 2:17-00220-MLH (KSx)

compelling where, as here, striking Snap's system-based combinations would leave it without a single prior art defense based on IPR determinations that may yet be reversed (Dkt. No. 160 at 2-3). *See Greatbatch v. AVX Corp.,* No. CV 13-723-LPS, 2015 WL 5568621, at \*2 (D. Del. Sept. 22, 2015) (denying motion to strike based on "Defendants' allegedly late disclosure of prior art references and combinations," and explaining that "whatever prejudice Plaintiff may have suffered (or will suffer) is outweighed by other factors, including the importance of the information Plaintiff seeks to strike").

Courts have recognized, moreover, that both private and public interests are best served by resolving questions of patent validity on their merits. As one court has explained:

> [I]n addition to <u>courts' typical heavy preference in favor of not excluding evidence, so that cases can be decided on their merits, that preference is even stronger in patent cases, where not just the parties, but the public, has an interest in the correct resolution of the dispute</u>. . . . [T]his Court recognizes the importance of resolving questions of patent validity on their merits. The Court also recognizes the potential importance of the subject prior art to deciding the patent validity question in the present case.

*Graphic Packaging v. C.W. Zumbiel Co.,* No. 3:10-CV-891-J-37JBT, 2011 WL 5357833, at \*4 (M.D. Fl. Nov. 3, 2011) (internal citations omitted). This Court should accordingly reject Vaporstream's citation to the Patent Local Rules in its attempt to avoid litigating the present case on its merits.

## A.   Dr. Greenberg's "Subset" Combinations Should Not Be Stricken

Vaporstream identifies five prior art combinations in Dr. Greenberg's Expert Report that are each based on a subset of references from five respective combinations disclosed in Snap's invalidity contentions. Dkt. No. 179 at 16, Appendix A. But each subset combination includes references—Pocket PC Phone System, Wren, Fardella, Berger, Hartselle, Hanna, Microsoft Server System, Nokia 7xxx Series Mobile Phone System, Nikkanen, Jo, and Jain—that were identified, cited, and charted in Snap's invalidity contentions. *See* Dkt. No. 179-14, Ex. 12 at 7-9, 13-18; Dkt. No. 179-15,

Ex. 13 at 6-26, 30-35; Dkt. No. 179-16, Ex. 14 at 7-27; Dkt. No. 179-17 at 8-28.  Snap is not relying upon any of the references in the subset combinations to satisfy any claim different from those it identified in the contentions.  *See* Dkt. No. 179 at 16, Appendix A.  Vaporstream cannot fairly claim to have been prejudiced or surprised by Dr. Greenberg's reliance on these references.

To the contrary, Vaporstream <u>benefits</u> from Dr. Greenberg's streamlined "subset" combinations with fewer references.  Snap should not be punished for refining and simplifying its invalidity theories.

### B.   Dr. Greenberg's "Superset" Combinations should not be Stricken

Similarly, each prior art reference in the "superset" combinations was cited and charted in Snap's invalidity contentions.  *See* Dkt. No. 179-14 at 7-9, 13-18; Dkt. No. 179-15 at 6-26, 30-35; Dkt. No. 179-16 at 7-27; Dkt. No. 179-17 at 8-28.  As previously explained, Vaporstream has "failed to explain how [it has] been prejudiced by the inclusion of these additional references," particularly since Vaporstream does not "assert that these are brand new references that were not previously disclosed in [Snap's] invalidity contentions."  *See Regents*, 2019 WL 1298094, at *3 (Huff, J.).  Further, Vaporstream was "able to depose Dr. [Greenberg] regarding these additional references" and was "able to serve [its] own rebuttal expert report addressing these references"—as well as the precise "superset" combinations it now complains of.  *See id.*  Vaporstream can thus claim no prejudice.

Despite Snap's previous disclosures and Dr. Cohen's Rebuttal Report, Vaporstream seeks to strike the "superset" combinations apparently because the contentions' cover pleadings do not specifically call out certain references <u>in combination</u> with other cited references.  Dkt. No. 179 at 19-20.  But if Vaporstream has suffered any prejudice from these "superset" combinations, as discussed above, it should have raised the issue long ago.  Vaporstream instead opted to proceed with deposing Dr. Greenberg, serving the Cohen Rebuttal Report analyzing the "superset" combinations, and allowing the close of expert discovery to pass without a single

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

SNAP'S OPPOSITION TO MOTION TO STRIKE
CASE NO. 2:17-00220-MLH (KSX)

complaint regarding these combinations.  In fairness, therefore, the Court should allow the "superset" combinations to stand.[7]

## IV.   CONCLUSION

Snap respectfully requests that the Court deny Plaintiff's motion to strike Snap's obviousness defense and for partial summary judgment.


Dated: November 26, 2019

*/s/ Reuben H. Chen*
Reuben H. Chen

Heidi L. Keefe (SBN 178960)
hkeefe@cooley.com
Mark R. Weinstein (SBN 193043)
mweinstein@cooley.com
Reuben H. Chen (SBN 228725)
rchen@cooley.com
COOLEY LLP
3175 Hanover Street
Palo Alto, California  94304
Telephone:  (650) 843-5000
Facsimile:  (650) 849-7400

Michael Attanasio (SBN 151529)
mattanasio@cooley.com
COOLEY LLP
4401 Eastgate Mall
San Diego, CA 92121
Telephone: 858-550-6000
Facsimile: 858-550-6420

*Attorneys For Defendant Snap Inc.*

---

[7] To the extent the Court finds any prejudice caused by the "superset" combinations, Snap would be willing to withdraw the additional references from each "superset" combination, so that they effectively become "subset" combinations.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

17.

SNAP'S OPPOSITION TO MOTION TO STRIKE
CASE NO. 2:17-00220-MLH (KSx)