UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAPORSTREAM, INC.,<br><br>                              Plaintiff,<br><br>v.<br><br>SNAP INC. d/b/a/ Snapchat, Inc.,<br><br>                              Defendant. | Case No.:  2:17-cv-00220-MLH (KSx)<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF THE COURT'S FEBRUARY 27, 2018 SUMMARY JUDGMENT ORDER;**<br><br>[Doc. No. 183.]<br><br>**(2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT; AND**<br><br>[Doc. No. 178.] |

**(3) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF OBVIOUSNESS BASED ON IPR ESTOPPEL**

[Doc. No. 179.]

On November 12, 2019, Defendant Snap Inc. filed: (1) a motion for summary judgment of non-infringement and no willful infringement; and (2) a motion for reconsideration of the Court's February 27, 2018 order denying Snap's motion for summary judgment that the patents-in-suit are invalid under 35 U.S.C. § 101. (Doc. Nos. 178, 183.) On November 12, 2019, Plaintiff Vaporstream, Inc. filed a motion for partial summary judgment of Snap's obviousness defense based on *inter partes* review estoppel under 35 U.S.C. § 315(e)(2). (Doc. No. 179.) On November 26, 2019, the parties filed their respective responses in opposition to the motions for summary judgment. (Doc. Nos. 190, 193, 194.) On December 6, 2019, the parties filed their respective replies. (Doc. Nos. 202, 203, 205.) On January 9, 2020, the Court issued a tentative supplemental claim construction order. (Doc. No. 220.)

The Court held a hearing on the matter on January 10, 2020. Meng Xi appeared for Plaintiff Vaporstream. Heidi L. Keefe, Michael A. Attanasio, Reuben H. Chen, Elizabeth L. Stameshkin, and Lam K. Nguyen appeared for Defendant Snap. For the reasons below, the Court: (1) denies Snap's motion for reconsideration of the Court's February 27, 2018 summary judgment order; (2) denies Snap's motion for summary judgment of non-infringement; (3) grants Snap's motion for summary judgment of no willful infringement; and (4) grants Vaporstream's motion for partial summary judgment of no obviousness based on IPR estoppel.

///

## Background

### I. Procedural Background

On January 10, 2017, Plaintiff Vaporstream filed a complaint for patent infringement against Defendant Snap, alleging infringement of U.S. Patent Nos. 8,886,739, 8,935,351, 9,306,885, 9,306,886, 9,313,155, 9,313,156, 9,313,157, 9,338,111, and 9,413,711. (Doc. No. 1.) On June 26, 2017, Snap filed an answer to the complaint. (Doc. No. 61.)

On February 27, 2018, the Court issued a claim construction order. (Doc. No. 118.) On February 27, 2018, the Court also denied Snap's motion for summary judgment that the patents-in-suit are invalid under 35 U.S.C. § 101. (Doc. No. 117.)

Starting on June 6, 2018, the Patent Trial and Appeal Board instituted *inter partes* review of the challenged claims for each of the patents-in-suit. See Snap Inc. v. Vaporstream, Inc., Case Nos. IPR2018-00200, IPR2018-00312, IPR2018-00369, IPR2018-00397, IPR2018-00404, IPR2018-00408, IPR2018-00416, IPR2018-00439, IPR2018-00455, IPR2018-00458. On June 12, 2018, the parties filed a joint motion to stay the action pending the IPR proceedings as to the patents-in-suit. (Doc. No. 148.) On June 13, 2018, the Court granted the parties' joint motion and stayed the action pending the last final written decision by the PTAB in the IPR proceedings for the patents-in-suit. (Doc. No. 150.)

Between June 4, 2019 and August 30, 2019, the PTAB issued final written decisions in each of the IPR proceedings for the patents-in-suit. In those decisions, the PTAB held that the challenged claims from the '739 patent, the '885 patent, the '155 patent, the '351 patent, and the '156 patent are all unpatentable, and the PTAB held that the challenged claims from the '886 patent, the '111 patent, the '711 patent, and the '157 patent had not been shown to be unpatentable. (Doc. Nos. 156-1, 157-1, 158-1, 158-2, 158-3, 158-4, 159-1.)

In light of this, on September 13, 2019, the Court partially lifted the stay of the action. (Doc. No. 160.) The Court lifted the stay as to the '886 patent, the '111 patent, the '711 patent, and the '157 patent. (Id. at 3.) The Court continued the stay of the action as

to the '739 patent, the '885 patent, the '155 patent, the '351 patent, and the '156 patent. (Id.)

By the present motions for summary judgment: (1) Snap moves for summary judgment of non-infringement and of no willful infringement; and (2) Vaporstream moves for partial summary judgment of Snap's obviousness defense based on IPR estoppel under 35 U.S.C. § 315(e)(2). (Doc. No. 178-1 at 1; Doc. No. 179 at 1-2, 21.) In addition, Snap moves for reconsideration of the Court's February 27, 2018 order denying Snap's motion for summary judgment that the patents-in-suit are invalid under 35 U.S.C. § 101. (Doc. No. 183-1 at 4.)

## II. The Patents-In-Suit

The patents-in-suit are closely related, claim priority to the same July 28, 2005 provisional application, and share a substantially identical specification. (Doc. No. 23 at 2.) The patents-in-suit relate generally to systems and methods for "reducing the traceability" of electronic messages. See U.S. Patent No. 9,306,886, at 18:57-19 (filed Apr. 5, 2016).

The common Background section of the specification explains some perceived problems with conventional email messaging:

> Typically, an electronic message between two people is not private. It may travel along a public network, such as the Internet, and be susceptible to interception by unintended third parties. Messages are also logged and archived by the communication systems themselves. They may also be copied, cut, pasted, printed, forwarded, blind copied, or otherwise manipulated. This may give a message a "shelf-life" that is often uncontrollable by the sender or even the recipient. Surreptitious logging (e.g., by keystroke and message recording software) may occur by third parties that have gained authorized access to either the computer of the sender and/or the recipient. Electronic messages include the message content itself coupled to identifying information regarding the sender, the recipient, the location of the message, times and dates associated with the message, etc. This allows a third party that is logging messages, intercepting messages, or simply gaining access to the messaging system's logs or inbox archives to associate the potentially important identifying information (typically referred to as header information) with the message content. These are only some of the ways in

which electronic messages can be misused. There is a demand for a system
and method for reducing the traceability of electronic messages.

'886 Patent at 2:7-29. To address these problems, the claimed inventions disclose systems

and methods purporting to reduce the traceability of electronic messages. See id. at 3:48-

4:6.

In the present action, Vaporstream asserts infringement of claims 1, 5, 9, 10, 11, and

13 of the '886 patent; claims 1, 4, 5, 9, 10, and 11 of the '111 patent; and claims 1, 4, 5, 6,

11, 13, 15, and 16 of the '711 patent.[1] Independent claim 1 of the '886 patent, independent

claim 1 of the '111 patent, and independent claim 1 of the '711 patent are the only asserted

independent claims from the patents-in-suit.

Independent claim 1 of the '886 patent recites:

1. A computer-implemented method of handling an electronic message at a
recipient user device in a networked environment, the electronic message
including a message content and a header information that corresponds to the
message content, the recipient user device having access to electronic
instructions, the method comprising:

providing a plurality of reduced traceability displays via the recipient user
device using a display generator that acts upon a display element of the
recipient user device to provide the plurality of reduced traceability displays,
the display generator including the electronic instructions, the plurality of
reduced traceability displays including a first display presenting a header
information of an electronic message received at the recipient user device and
a second display presenting a message content of the electronic message, the
message content including a media component, the message content and the
header information having been related to each other using a correlation
previously assigned to each of the message content and the header
information;

receiving a selection by the recipient user via the first display, the selection
directed to a portion of a message list corresponding to the header information;
and

in response to the selection, providing the second display via the recipient user
device such that the second display does not include a display of the header

---

[1]     Vaporstream does not currently assert infringement of any claims from the '157 patent. (See Doc.
No. 200 at 11.)

information via the second display such that a single screen capture of both the header information and the media component is prevented.

'886 Patent at 18:57-19.

Independent claim 1 of the '111 patent recites:

1. A computer-implemented method of handling an electronic message at a recipient user mobile device in a networked environment, the electronic message including a message content and a header information that corresponds to the message content, the recipient user mobile device having access to electronic instructions, the electronic instructions being stored at the recipient user mobile device and/or at a server, the method comprising:

providing a plurality of reduced traceability displays via the recipient user mobile device using a display generator that acts upon a display element of the recipient user mobile device to provide the plurality of reduced traceability displays, the display generator including the electronic instructions, the plurality of reduced traceability displays including a first display presenting a header information of an electronic message received at the recipient user mobile device and a second display presenting a message content of the electronic message, the message content including a media component, the first display being generated by the display generator such that the first display does not include a display of the media component via the first display such that a single screen capture of both the header information and the media component is prevented, the first and second displays not being displayed to the user at the same time;

receiving a selection by the recipient user via the first display, the selection directed to a portion of a message list corresponding to the header information; and

in response to the selection, providing a second display via the recipient user device, the second display displaying the message content including the media component.

U.S. Patent No. 9,338,111, at 18:58-19:21 (filed May 10, 2016).

Independent claim 1 of the '711 patent recites:

1. A method of handling an electronic message between a sending user device and a recipient user device in a networked environment, the method comprising:

providing a first reduced traceability electronic messaging application program to a sending user device, the first reduced traceability electronic messaging application program including instructions executable by a first

6

processor of the sending user device to provide a first plurality of reduced traceability displays via the sending user device;

providing a second reduced traceability electronic messaging application program to a recipient user device, the second reduced traceability electronic messaging application program including instructions executable by a second processor of the recipient user device to provide a second plurality of reduced traceability displays via the recipient user device;

receiving an electronic message at a server via a first network, the electronic message sent from the sending user device, wherein the electronic message received at the server includes an identifier of a recipient and a message content including a media component, the first plurality of reduced traceability displays including a first display and a second display, the first display configured to allow a user of the sending user mobile device to associate the message content including a media component with the electronic message, the second display configured to allow the user of the sending user mobile device to associate the identifier of a recipient with the electronic message, the instructions executable by the first processor providing the first and second displays such that the identifier of the recipient is not displayed with the media component via the first display preventing a single screen capture of both the identifier of a recipient and the media component; and

transmitting th/e electronic message from the server to the recipient user device via a second network that includes a wireless communications portion, wherein the electronic message transmitted to the recipient user device includes an identifier of a sending user and the message content including a media component, the second plurality of reduced traceability displays including a third display and a fourth display, the third display presenting the identifier of a sending user, the fourth display presenting the media component, the instructions executable by the second processor providing the third and fourth displays such that the identifier of a sending user is not displayed with the media component via the fourth display preventing a single screen capture of both the identifier of a sending user and the media component, wherein the identifier of a recipient and the message content received at the server each optionally include a correlation to allow the server to receive the identifier of a recipient and the message content separately and to relate the identifier of a recipient to the message content if the identifier of a recipient is received separately from the message content at the server, and wherein the identifier of a recipient and the message content transmitted from the server each optionally include a correlation to allow the identifier of a recipient and the message content to be related to each other by the second

reduced traceability electronic messaging application program if the identifier of a recipient and the message content are transmitted from the server separately.

U.S. Patent No. 9,413,711, at 24:8-25:4 (filed Aug. 9, 2016).

**Discussion**

## I. Legal Standards for Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 322-23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry

this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. "The evidence of the non-movant is to be believed." Id. Further, the court may consider other materials in the record not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

## II. Snap's Motion for Reconsideration of the Court's February 27, 2018 Summary Judgment Order

On February 27, 2018, the Court denied Snap's motion for summary judgment that the patents-in-suit fail to claim patent-eligible subject matter and, therefore, are invalid under 35 U.S.C. § 101. (Doc. No. 117.) Snap argues that the Court should reconsider its February 27, 2018 summary judgment order in light of the Federal Circuit's subsequent decisions in Interval Licensing LLC v. AOL, Inc., 896 F.3d 1335 (Fed. Cir. 2018), and BSG Tech LLC v. Buyseasons, Inc., 899 F.3d 1281 (Fed. Cir. 2018). (Doc. No. 183-1 at 1.) In response, Vaporstream argues that Snap's motion should be denied because Interval Licensing and BSG do not present a material difference in law, and because both cases are distinguishable from the facts of this case. (Doc. No. 193 at 1-3.)

### A. Legal Standards for a Motion for Reconsideration

A district court has inherent jurisdiction to modify, alter, or revoke a prior order. United States v. Martin, 226 F.3d 1042, 1049 (9th Cir. 2000). "Reconsideration [of a prior order] is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an

intervening change in controlling law." <u>School Dist. No. 1J v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993); <u>see</u> C.D. Cal. Civ. L.R. 7-18.

Reconsideration should be used conservatively, because it is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." <u>Carroll v. Nakatani</u>, 342 F.3d 934, 945 (9th Cir. 2003); <u>see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 880 (9th Cir. 2009) ("'[A] motion for reconsideration should not be granted, absent highly unusual circumstances . . . .'"). A motion for reconsideration may not be used to relitigate old matters, or to raise arguments or present evidence for the first time that reasonably could have been raised earlier in the litigation. <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 486 n.5 (2008); <u>see Kona Enterprises, Inc. v. Estate of Bishop</u>, 229 F.3d 877, 890 (9th Cir. 2000) ("A [motion for reconsideration] may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."). "A party seeking reconsideration must show more than a disagreement with the Court's decision." <u>United States v. Westlands Water Dist.</u>, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001); <u>accord Huhmann v. FedEx Corp.</u>, No. 13-CV-00787-BAS NLS, 2015 WL 6128494, at *2 (S.D. Cal. Oct. 16, 2015); <u>Franklin v. Madden</u>, No. CV 17-4281 DSF(JC), 2018 WL 6038332, at *2 (C.D. Cal. July 18, 2018).

B.    <u>Legal Standards for Patent Eligibility under § 101</u>

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "'long held that this provision contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract ideas are not patentable.'" <u>Ass'n for Molecular Pathology v. Myriad Genetics, Inc.</u>, 133 S. Ct. 2107, 2116 (2013). "The concern underlying these judicial exclusions is that 'patent law not inhibit further discovery by improperly tying up the future use of these building blocks of human ingenuity.'" <u>Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.</u>, 827 F.3d 1042, 1047 (Fed. Cir. 2016).

"The Supreme Court has devised a two-stage framework to determine whether a claim falls outside the scope of section 101." Affinity Labs of Texas, LLC v. DIRECTV, LLC, 838 F.3d 1253, 1257 (Fed. Cir. 2016); see Alice, 134 S. Ct. at 2355. "The prescribed approach requires a court to determine (1) whether the claim is directed to a patent-ineligible concept, *i.e.*, a law of nature, a natural phenomenon, or an abstract idea, and if so, (2) whether the elements of the claim, considered both individually and as an ordered combination, add enough to transform the nature of the claim' into a patent-eligible application." Affinity Labs, 838 F.3d at 1257 (internal quotation marks omitted) (citing Alice, 134 S. Ct. at 2355). "In the context of claims that are challenged as containing only abstract ideas, those two stages are typically referred to as the 'abstract idea' step and the 'inventive concept' step." Id.

"The 'abstract idea' step of the inquiry" requires courts "to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter." Id. at 1257. "The 'inventive concept' step requires [courts] to look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed." Id. at 1258. "This inventive concept must do more than simply recite 'well-understood, routine, conventional activity.'" FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d 1089, 1093 (Fed. Cir. 2016).

"Patent eligibility under 35 U.S.C. § 101 is ultimately an issue of law." Berkheimer v. HP Inc., 881 F.3d 1360, 1365 (Fed. Cir. 2018). But "[t]he patent eligibility inquiry may contain underlying issues of fact." Id. "The accused infringer bears the burden of proof on both steps" of the Alice inquiry. InsideSales.com, Inc. v. SalesLoft, Inc., No. 2:16CV859DAK, 2017 WL 2559932, at *2 (D. Utah June 13, 2017); see Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91, 95 (2011) ("[T]he burden of establishing in-validity of a patent or any claim thereof shall rest on the party asserting such invalidity." (quoting 35 U.S.C. § 282)). Patent ineligibility must be proven by clear and convincing evidence. See Berkheimer, 881 F.3d at 1368; Microsoft, 564 U.S. at 95.

C.    Analysis

    i.    Alice Step One

In the Court's February 27, 2018 summary judgment order, the Court held under step one of the <u>Alice</u> inquiry that the asserted claims are directed to an abstract idea. (Doc. No. 117 at 9; <u>see also</u> Doc. No. 59 at 10-11 (quoting <u>Bascom Global</u>, 827 F.3d at 1349).) Snap does not move for reconsideration of this part of the Court's prior order. As such, the Court turns to step two of the <u>Alice</u> inquiry.

    ii.    Alice Step Two

Snap argues that the asserted claims fail to recite an inventive concept under <u>Alice</u> step two in light of the Federal Circuit's decisions in <u>Interval</u> and <u>BSG</u>. (Doc. No. 183-1 at 2-4.) In response, Vaporstream argues that <u>Interval</u> and <u>BSG</u> do not represent a material difference in the law warranting reconsideration. (Doc. No. 193 at 1.) Vaporstream further argues that even if <u>Interval</u> and <u>BSG</u> represent a material change in the law, the two decisions do not alter the Court's prior conclusion that Snap failed to conduct a proper ordered combination analysis. (<u>Id.</u> at 2.)

At <u>Alice</u> step two, the Court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." <u>Berkheimer</u>, 881 F.3d at 1366 (internal quotation marks omitted) (quoting <u>Alice</u>, 134 S. Ct. at 2355); <u>accord Interval</u>, 896 F.3d at 1342; <u>BSG</u>, 899 F.3d at 1289. "The second step of the <u>Alice</u> test is satisfied when the claim limitations 'involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry."'" <u>Berkheimer</u>, 881 F.3d at 1367 (quoting <u>Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n</u>, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014)); <u>see Aatrix Software, Inc. v. Green Shades Software, Inc.</u>, 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("If the elements involve 'well-understood, routine, [and] conventional activity previously engaged in by researchers in the field,' they do not constitute an 'inventive concept.' (quoting <u>Mayo</u>, 566 U.S. at 73)). "The question of whether a claim element or combination of elements is well-understood,

routine and conventional to a skilled artisan in the relevant field is a question of fact." Berkheimer, 881 F.3d at 1368; accord BSG, 899 F.3d at 1290.

In the Court's February 27, 2018 summary judgment order, the Court provided two reasons for denying Snap's motion for summary judgment at Alice step two. First, the Court explained that under the Federal Circuit's decision in Berkheimer, the question of whether a claim element or combination of elements is well-understood, routine and conventional is a question fact. (Doc. No. 117 at 11 (citing Berkheimer, 881 F.3d at 1368).) The Court then noted that it had been presented with competing expert testimony as to that specific question of fact, and, therefore, summary judgment on that issue was inappropriate. (See id. (citing Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp., 635 F.3d 1373, 1384 (Fed. Cir. 2011); Leggett & Platt, Inc. v. Hickory Springs Mfg. Co., 285 F.3d 1353, 1362 (Fed. Cir. 2002)).)

Second, the Court agreed with Vaporstream that Snap failed to conduct a proper ordered combination analysis. (Id. at 11-12.) The Court explained that when conducting an Alice step two analysis, the Court must examine the elements of each claim both individually and as an ordered combination. (Id. at 11 (citing Alice, 134 S. Ct. at 2355; Berkheimer, 881 F.3d at 1366).) The Court explained that both Snap and its expert's Alice step two analysis simply broke apart the asserted claims into their individual elements and analyzed each element in an attempt to show that each individual element, by itself, was well-understood and conventional at the time of the invention. (Id.) Snap failed to present any evidence showing that the specific combination of elements performed in the specific order claimed in the patents-in-suit was conventional and generic at the time of the invention. (Id. at 12.)

The Court agrees with Vaporstream that Snap has failed to provide a sufficient basis for reconsideration of the Court's February 27, 2018 summary judgment order. The decisions in Interval and BSG have no material affect on either of the conclusions previously reached by the Court under Alice step two.

2:17-cv-00220-MLH (KSx)

The Court's first conclusion was based on <u>Berkheimer</u>'s holding that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." (Doc. No. 117 at 11 (quoting <u>Berkheimer</u>, 881 F.3d at 1368).) Neither <u>Interval</u> nor <u>BSG</u> altered <u>Berkheimer</u>'s holding. Indeed, both decisions cite to <u>Berkheimer</u> and acknowledge its holding that "whether a claim limitation or combination of limitations is well-understood, routine, and conventional is a factual question." <u>BSG</u>, 899 F.3d at 1290 (citing <u>Berkheimer</u>, 881 F.3d at 1368); see <u>Interval</u>, 896 F.3d 1335, 1342 & n.4 (citing <u>Berkheimer</u>, 881 F.3d at 1365, 1368).

Further, both <u>Interval</u> and <u>BSG</u> are distinguishable from the present case as neither decision involved a situation where the court was presented with competing expert testimony on the issue of whether the claim elements or combination of elements were well-understood, routine, and conventional. <u>Interval</u> involved a Rule 12(c) motion for judgment on the pleadings, and, therefore, competing expert testimony could not have been at issue in that decision. <u>See</u> 896 F.3d at 1341; cf. <u>Yakima Valley Mem'l Hosp. v. Washington State Dep't of Health</u>, 654 F.3d 919, 925 (9th Cir. 2011) ("Judgment on the pleadings is limited to material included in the pleadings."). And there is no indication from the decision in <u>BSG</u> that competing expert testimony was at issue in that case.[2] The <u>BSG</u> court's <u>Alice</u> step two analysis focused on the patents' specifications, which the patentee had argued recited unconventional features. <u>See</u> <u>BSG</u>, 899 F.3d at 1290-91.

In contrast, here, Snap relied heavily on expert testimony in its motion for summary judgment to support its <u>Alice</u> step two analysis. (<u>See</u> Doc. No. 74 at 16-25 (citing Doc. No. 74-9, Greenberg Decl. ¶¶ 17-68).) And Vaporstream provided competing expert testimony on that issue. (<u>See</u> Doc. No. 82-5, Cohen Decl. ¶¶ 19-89.) Both <u>Interval</u> and <u>BSG</u> acknowledge that a genuine dispute of fact over whether claim limitations are well-

---

[2] The Court notes that the motion at issue in <u>BSG</u> was originally filed as a 12(b)(6) motion to dismiss. <u>See</u> 899 F.3d at 1285.

understood, routine, and conventional "will preclude summary judgment that a claim is ineligible under § 101." <u>BSG</u>, 899 F.3d at 1290; <u>see Interval</u>, 896 F.3d 1335, 1342 n.4; <u>see also</u> <u>Vasudevan Software, Inc. v. MicroStrategy, Inc.</u>, 782 F.3d 671, 683 (Fed. Cir. 2015) ("""As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case.'" (quoting <u>Provenz v. Miller</u>, 102 F.3d 1478, 1490 (9th Cir. 1996))); <u>Crown Packaging</u>, 635 F.3d at 1384 ("Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate."). As such, the decisions in <u>BSG</u> and <u>Interval</u> do not alter the Court's conclusion that summary judgment of Snap's § 101 defense was inappropriate based on the competing expert testimony in the record.

Turning to the second conclusion in the Court's February 27, 2018 summary judgment order, that conclusion was based on the Supreme Court and the Federal Circuit's holding that in conducting an <u>Alice</u> step two analysis, a court must examine the "elements of each claim both individually and as an ordered combination." (Doc. No. 117 at 11 (quoting <u>Alice</u>, 134 S. Ct. at 2355).) Neither <u>Interval</u> nor <u>BSG</u> altered this rule of law. Indeed, both <u>Interval</u> and <u>BSG</u> acknowledge this specific rule of law, quoting to the Supreme Court's decision in <u>Alice</u>. See <u>Interval</u>, 896 F.3d at 1342 (quoting <u>Alice</u>, 134 S. Ct. at 2355); <u>BSG</u>, 899 F.3d at 1289 (quoting <u>Alice</u>, 134 S. Ct. at 2355). In its reply, Snap argues that it provided a thorough and proper ordered combination analysis in its motion for summary judgment, reply brief, and expert declarations. (Doc. No. 203 at 2.) But Snap cannot make this argument through a motion for reconsideration. This particular argument does not rely on <u>Interval</u>, <u>BSG</u>, or any other intervening Federal Circuit decision. Rather, this argument simply disagrees with the Court's prior conclusion and seeks to relitigate that aspect of the Court's <u>Alice</u> step two analysis. A motion for reconsideration cannot be used to relitigate old matters, and it must show more then a disagreement with the Court's prior decision. See <u>Exxon Shipping</u>, 554 U.S. at 486 n.5 (2008); <u>Franklin</u>, 2018 WL 6038332, at *2.

In sum, Snap has failed to set forth a sufficient basis for reconsideration of the Court's February 27, 2018 order denying Snap's motion for summary judgment that the patents-in-suit are invalid under § 101. As such, the Court denies Snap's motion for reconsideration.

## III. Snap's Motion for Summary Judgment of Non-Infringement

### A. "Header Information" and "Identifier of a Sending User" Limitations

Snap moves for summary judgment of non-infringement of all of the asserted claims of the '886 patent, the '111 patent, and the '711 patent. (Doc. No. 178-1 at 2-9.) Specifically, Snap argues that it is entitled to summary judgment of non-infringement because the accused products do not satisfy the "header information" limitation or the "identifier of a sending user" limitation either literally or under the doctrine of equivalents. (Id.) In response, Vaporstream argues that Snap's non-infringement argument should be rejected because it relies on an untimely and incorrect claim construction. (Doc. No. 200 at 1-3.)

#### i. Legal Standards Governing Patent Infringement

A patent infringement analysis proceeds in two steps. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995); Tinnus Enterprises, LLC v. Telebrands Corp., 846 F.3d 1190, 1203 (Fed. Cir. 2017). In the first step, the court construes the asserted claims as a matter of law. Id. In the second step, the factfinder compares the properly construed claims to the accused device. Id.

"'The patentee bears the burden of proving infringement by a preponderance of the evidence.'" Creative Compounds, LLC v. Starmark Labs., 651 F.3d 1303, 1314 (Fed. Cir. 2011). "To prove infringement, a plaintiff must prove the presence of each and every claim element or its equivalent in the accused method or device." Star Sci., Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1378 (Fed. Cir. 2011); see also Intendis GMBH v. Glenmark Pharm. Inc., USA, 822 F.3d 1355, 1360 (Fed. Cir. 2016) ("Even when an accused product does not meet each and every claim element literally, it may nevertheless be found to infringe the claim 'if there is "equivalence" between the elements of the accused product

or process and the claimed elements of the patented invention.'" (quoting Warner–Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997))).

The Federal Circuit "applies two articulations of the test for equivalence." Voda v. Cordis Corp., 536 F.3d 1311, 1326 (Fed. Cir. 2008) (citing Warner–Jenkinson, 520 U.S. at 21). "Under the insubstantial differences test, '[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial.'" Id. (quoting Honeywell Int'l Inc. v. Hamilton Sundstrand Corp., 370 F.3d 1131, 1139 (Fed. Cir. 2004)). "Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'" Id. (quoting Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1209–10 (Fed. Cir. 2001)).

"'Infringement, whether literal or under the doctrine of equivalents, is a question of fact.'" Advanced Steel Recovery, LLC v. X-Body Equip., Inc., 808 F.3d 1313, 1317 (Fed. Cir. 2015). "Summary judgment of noninfringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device either literally or under the doctrine of equivalents." Id.

        ii.    Legal Standards Governing Claim Construction

Claim construction is an issue of law for the court to decide. Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 838 (2015); Markman v. Westview Instr., Inc., 517 U.S. 370, 372 (1996). Although claim construction is ultimately a question of law, "subsidiary factfinding is sometimes necessary." Teva, 135 S. Ct. at 838.

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008). "It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

Claim terms "'are generally given their ordinary and customary meaning[,]'" which "is the meaning that the term would have to a person of ordinary skill in the art in question

at the time of the invention." Id. at 1312–13. "In some cases, the ordinary meaning of claim language as understood by a [PHOSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." O2 Micro, 521 F.3d at 1360. If the meaning of the term is not readily apparent, the court must look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including intrinsic and extrinsic evidence. See Phillips, 415 F.3d at 1314. A court should begin with the intrinsic record, which consists of the language of the claims, the patent specification, and, if in evidence, the prosecution history of the asserted patent. Id.; see also Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1382 (Fed. Cir. 2014) ("In construing claims, this court relies primarily on the claim language, the specification, and the prosecution history.").

In determining the proper construction of a claim, a court should first look to the language of the claims. See Vitronics, 90 F.3d at 1582; see also Comark Commc'ns v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("The appropriate starting point . . . is always with the language of the asserted claim itself."). The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term. See Phillips, 415 F.3d at 1314. In addition, the context in which the disputed term is used in other claims, both asserted and unasserted, may provide guidance because "the usage of a term in one claim can often illuminate the meaning of the same term in other claims." Id. Furthermore, a disputed term should be construed "consistently with its appearance in other places in the same claim or in other claims of the same patent." Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001); accord Microprocessor Enhancement Corp. v. Texas Instruments Inc., 520 F.3d 1367, 1375 (Fed. Cir. 2008); see also Paragon Sols., LLC v. Timex Corp., 566 F.3d 1075, 1087 (Fed. Cir. 2009) ("We apply a presumption that the same terms appearing in different portions of the claims should be given the same meaning." (internal quotation marks omitted)). Moreover,

"'[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.'" <u>Vederi</u>, 744 F.3d 1383.

A court must also read claims "in view of the specification, of which they are a part." <u>Markman</u>, 52 F.3d at 979; <u>see</u> 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" <u>Vederi</u>, 744 F.3d at 1382. For example, "a claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" <u>Adams Respiratory Therapeutics, Inc. v. Perrigo Co.</u>, 616 F.3d 1283, 1290 (Fed. Cir. 2010).

But "[t]he written description part of the specification does not delimit the right to exclude. That is the function and purpose of claims." <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc). Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." <u>Dealertrack, Inc. v. Huber</u>, 674 F.3d 1315, 1327 (Fed. Cir. 2012); <u>see also</u> <u>Kara Tech. Inc. v. Stamps.com Inc.</u>, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.").

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes. <u>See</u> <u>Vitronics</u>, 90 F.3d at 1583; <u>Teva</u>, 135 S. Ct. at 841. However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" <u>Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.</u>, 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting <u>Phillips</u>, 415 F.3d at 1317). A court must evaluate all extrinsic evidence in

light of the intrinsic evidence. Phillips, 415 F.3d at 1319. "Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1290 (Fed. Cir. 2015); see also Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc., 262 F.3d 1258, 1269 (Fed. Cir. 2001) ("[E]xtrinsic evidence . . . may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history."); Vederi, 744 F.3d at 1382 ("[E]xtrinsic evidence may be less reliable than the intrinsic evidence."). In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." Teva, 135 S. Ct. at 841.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." O2 Micro, 521 F.3d at 1362. In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies. See id.; Phillips, 415 F.3d at 1314. But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." O2 Micro, 521 F.3d at 1361. If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute. Id. at 1362; accord Eon Corp. IP Holdings v. Silver Spring Networks, 815 F.3d 1314, 1318 (Fed. Cir. 2016).

### iii.    Claim Construction Analysis

Independent claim 1 of the '711 patent recites a method including, among other steps: "transmitting the electronic message from the server to the recipient user device via a second network that includes a wireless communications portion, wherein the electronic message transmitted to the recipient user device includes an identifier of a sending user . . . the third display presenting the identifier of a sending user." '711 Patent at 24:43-52. Independent claim 1 of the '886 patent and independent claim 1 of the '111 patent both recite a method including, among other steps: "providing a plurality of reduced traceability

displays via the recipient user [mobile] device . . . , the plurality of reduced traceability displays including a first display presenting a header information of an electronic message received at the recipient user [mobile] device." '886 Patent at 18:63-19:4; '111 Patent at 18:66-19:7. The parties agree that the term "header information" should be construed as "properties of a message that is not the message content, *e.g.*, identifying information regarding the sender, the recipient, the location of the message, times and dates associated with the message, etc." (Doc. No. 118 at 23; Doc. No. 97-2 at 46-47.)

As an initial matter, in their briefing, the parties present the Court with a claim construction dispute regarding the term "presenting." Because the parties dispute the scope of this claim term, it is the Court's duty to resolve the dispute.[3] <u>O2 Micro</u>, 521 F.3d at 1361; <u>Eon Corp.</u>, 815 F.3d at 1318.

Snap argues that the term "presenting" requires "that the recipient device display the same header information (or identifier of a sending user) of the message, that the device received." (Doc. No. 178-1 at 3 (emphasis removed).) In response, Vaporstream argues that "[t]here is no requirement in the claims that the data or information a recipient device receives from the sever (or a sever transmits to a recipient device) must be exactly and identically replicated" on the claimed "display." (Doc. No. 200 at 2.) At the summary

---

[3]    The Court advises the parties that it is improper to be raising this claim construction dispute at this stage in the proceedings. Under the scheduling orders in this case, any proposed claim constructions should have been presented to the Court a long time ago during the claim construction phase of this case. (<u>See</u> Doc. No. 81; Doc. No. 96 at 8-12.)

    Under the Court's scheduling orders, Vaporstream served its initial infringement contentions almost three years ago on March 7, 2017, and Vaporstream served its final infringement contentions two years ago on December 8, 2017 (Doc. No. 34; Doc. No. 96 at 10.) The present claim construction dispute is one that should have been apparent from those contentions. As such, if Snap wanted to raise a non-infringement argument that was based on its proposed interpretation of the claims, Snap should have raised this claim construction issue in its briefing at the claim construction stage of this case, rather, than in its briefing in support of the present motion for summary judgment. Parties put the Court at a disadvantage by improperly raising claim construction disputes at a later stage in the case. <u>Cf.</u> <u>O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.</u>, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (explaining that the procedures set forth in patent local rules are designed to "prevent the 'shifting sands' approach to claim construction"); <u>Keranos, LLC v. Silicon Storage Tech., Inc.</u>, 797 F.3d 1025, 1035 (Fed. Cir. 2015) (same).

judgment hearing, Vaporstream proposed that the term "presenting" be construed as "showing on the display of the recipient device at least some of the [header information/identifier of a sending user] that was [transmitted to/received by] the recipient user device." (Doc. No. 221-1 Ex. A at 2.) In this Court's January 9, 2020 tentative claim construction order, the Court tentatively construed the term " . . . presenting . . ." as "displaying on the recipient user device a [header information/identifier of a sending user] that was included in the electronic message that was [transmitted to/received by] the recipient user device." (Doc. No. 220 at 14.)

The Court begins its analysis of the parties' claim construction dispute by reviewing the claim language. With respect to the '711 patent, independent claim 1 of that patent recites a method including, among other steps: "transmitting the electronic message from the server to the recipient user device . . . , wherein the electronic message transmitted to the recipient user device includes an identifier of a sending user." '711 Patent at 24:43-47. Here, the claim language states that the claimed "identifier of a sending user" is "include[d]" in the claimed "electronic message" that is transmitted to the recipient device. Independent claim 1 of the '711 patent further recites: "the third display presenting the identifier of a sending user." Id. at 24:50-51. Here, the claim language provides that that the claimed "identifier of a sending user" is presented on a display on the recipient device.[4] Further, by using the word "the" to describe "the identifier of a sending user," the claim language explains that the "identifier of a sending user" that is presented on the "third display" is the same "identifier of a sending user" that was included in the claimed "electronic message." See, e.g., Baldwin Graphic Sys., Inc. v. Siebert, Inc., 512 F.3d 1338, 1342 (Fed. Cir. 2008).

Turning to the '886 patent and the '111 patent, independent claim 1 of both patents recites a method including, among other things, an "electronic message including a

---

[4]     Independent claim 1 elsewhere explains that the claimed "third display" is included within the claimed "second plurality of reduced traceability displays," and the claimed "second plurality of reduced traceability displays" is provided via "the recipient user device." '711 Patent at 24:22-24, 24:48-50.

message content and a header information that corresponds to the message content." '886 Patent at 18:59-61; '111 Patent at 18:60-62. The parties agree that the term "header information" can encompass "identifying information regarding the sender." (Doc. No. 118 at 23; Doc. No. 97-2 at 46-47.) See also '886 Patent at 2:25-26, 12:66-13:5. Independent claim 1 of the patents further recites: "providing a plurality of reduced traceability displays via the recipient user [mobile] device . . . , the plurality of reduced traceability displays including a first display presenting a header information of an electronic message received at the recipient user [mobile] device." '886 Patent at 18:63-19:4; '111 Patent at 18:66-19:7. Here, the claim language provides that the claimed "header information" is presented on the claimed "first display" via the recipient device. The claim language further explains that the "header information" that is presented on the display is the header information "of" the electronic message that was received by the recipient device. Id.

In sum, the claim language supports Snap's proposed construction. The claim language for the three independent claims explains that the "header information/identifier of a sending user" that is displayed on the recipient device is the "header information/identifier of a sending user" that was included in the electronic message that was transmitted to/received by the recipient device.

Nevertheless, the Court clarifies that the claim language does not entirely support Snap's proposed construction. Snap argues that the term "presenting" requires "that the recipient device display the same header information (or identifier of a sending user) of the message, that the device received." (Doc. No. 178-1 at 3 (emphasis removed). Although the claim language supports that the requirement that the header information that is display on the recipient device must have been included in the message that the device received. There is nothing in the claim language that requires the recipient device display all the header information that was included in the message. In addition, there is nothing in the claim language that requires that the header information be displayed in an identical manner to how the information is contained in the electronic message. Indeed, at the

hearing, Snap conceded that the claim language does not require that the header information be presented in an identical form.[5]  As such, this is why the Court modified Snap's proposed claim construction order in the Court's tentative claim construction, and the Court did not include the phrase "the same" in tentatively construing the term as "displaying on the recipient user device a [header information/identifier of a sending user] that was included in the electronic message that was [transmitted to/received by] the recipient user device."  (Doc. No. 220 at 14.)

Vaporstream argues that the claim language supports its proposed construction because a review of the claim language shows that the term "presenting" has a different meaning from the term "displaying."  To support this argument, Vaporstream relies on the fact that independent claim 1 of the '111 patent contains both the word "presenting" and the word "displaying" in its claim language.  "Different claim terms are presumed to have different meanings."  Bd. of Regents of the Univ. of Texas Sys. v. BENQ Am. Corp., 533 F.3d 1362, 1371 (Fed. Cir. 2008); accord Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC, 677 F.3d 1361, 1369 (Fed. Cir. 2012); see CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of these different terms in the claims connotes different meanings.").  Nevertheless, this presumption can be "overcome where . . . the evidence indicates that the patentee used the two terms interchangeably." Baran v. Med. Device Techs., Inc., 616 F.3d 1309, 1316 (Fed. Cir. 2010).  Here, a review of the claim language shows that independent claim 1 of the '111 patent uses the terms "presenting" and "displaying" interchangeably.  Compare '111 Patent at 19:7-8 ("a second display presenting a message content of the electronic message") with id. at 19:20-21 ("the second display displaying the message content").  In addition, the common specification

---

[5]  At the hearing, Snap's counsel presented the example of where the header information that is included in the electronic message could include the time presented in Greenwich Mean Time, but when the header information is displayed on the recipient device the time could be presented in Pacific Standard Time.

also uses the terms "presenting" and "display" interchangeably.  Compare id. at 15:23-24 ("FIG. 11 illustrates one example display image 1100 presenting message content . . . .") with id. at 15:31-32 ("[D]isplay image 1100 may employ FLASH technology to display the message content.").  As such, the Court rejects Vaporstream's claim differentiation argument.

Vaporstream argues that Snap's proposed construction is improper because it reads out certain preferred embodiments disclosed in the patents' common specification.  (Doc. No. 200 at 2.)  Specifically, in its briefing, Vaporstream argues that the specification includes an embodiment that "describes identifying, at the server, a 'display name' that corresponds to a user and then transmitting that 'display name' to the recipient device.  When the display name is shown on the recipient device, the recipient display presents a username."  (Id. (emphasis in original removed) (citing '886 Patent at 12:53-57; '11 Patent at 12:53-57; '711 Patent at 13:60-64).  "[A] claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'"  Adams Respiratory Therapeutics, 616 F.3d at 1290.

But Vaporstream's purported embodiment is not actually contain within the common specification.  The Court has reviewed the portion of the specification cited by Vaporstream.  Although that portion of the specification discusses an embodiment that utilizes a "display name," the specification never states that in that embodiment, the recipient display presents a "username" that is different from the "display name."  See '886 Patent at 12:52-57.  Indeed, the word "username" is not even contained in that passage of the specification.  See id.  Rather, the embodiment at issue – consistent with the Court's tentative construction for this term – describes utilizing a "display name" for the sending user that is transmitted to and displayed on the recipient device.[6]  See id.  Thus, consistent

---

[6]     The common specification explains elsewhere that "header information . . . may include . . . a display name representing a sender of the electronic message."  '886 Patent at 12:66-13:4

with the Court's tentative construction and the claim language, the "display name" that is displayed on the recipient device is included in the electronic message that is transmitted to and received by the recipient device.  See id.  As such, the Court rejects Vaporstream's reliance on this portion of the specification.

At oral argument, Vaporstream argued that the Court's tentative construction would read out additional embodiments from the specification.  Vaporstream is wrong.  First, Vaporstream identifies an embodiment described in the common specification where the date and time included in the electronic message is stored as "datereceived=1143660969." '886 Patent at 13:51.  And Vaporstream then identifies another embodiment in the specification where the date and time is displayed as "Mar 29 8:36 pm."  Id. fig. 10.  But this is of no consequence because the Court's tentative construction does not require that the header information be displayed in an identical form to how it is included in the electronic message.  Rather, the Court's tentative construction simply requires that the information that is displayed on the device was included in the electronic message that the device received.  In Vaporstream's identified example, the header information at issue, the date and time, that is displayed on the recipient device was included in the electronic message, albeit in a different form.

Second, Vaporstream identifies an embodiment described in the following passage of the common specification:

> At step 555 of FIG. 5, a display image having header information is communicated (e.g., from server 310 to computer 320.  System 300 provides a display image to computer 320 representing at least some of the header information associated with any electronic messages associated with the recipient user. . . . Each message container (or header information) 1015, 1020, 1025 may also include an association to a message ID and an association to a reply ID (although, not displayed in display image 1000).

'886 Patent at 14:33-48.  But the Court's tentative construction does not exclude this embodiment either.  As explained above, the claim language and the Court's tentative construction does not require that all of the header information that was included in the electronic message be displayed on the recipient device.  The Court notes that

Vaporstream's proposed construction includes the phrase "at least some of the [header information/identifier of a sending user]." The Court is amenable to including this language in the Court's final construction for this term as it is supported by the claim language and the portion of the specification identified by Vaporstream. Nevertheless, the Court declines to adopt Vaporstream's proposed construction in full as it does not expressly include the requirement that the displayed header information be included in the electronic message that the device received, as required by the claim language.

In support of its proposed construction Vaporstream also relies on extrinsic evidence, specifically a dictionary definition for the word "presenting." (Doc. No. 200 at 3 (citing Google Dictionary).) But "[e]xtrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1290 (Fed. Cir. 2015). As explained above, the claim language unambiguously supports the requirement that the header information that is displayed on the recipient device was included in the electronic message that the device received.

In sum, for the reasons above, the Court adopts in part Snap's proposed construction, and the Court adopts in part Vaporstream's proposed construction. The Court construes the term "wherein the electronic message transmitted to the recipient user device includes an identifier of a sending user . . . the third display presenting the identifier of a sending user" and the term "a first display presenting a header information of an electronic message received at the recipient user [mobile] device" both as "displaying on the recipient user device at least some of the [header information/identifier of a sending user] that was included in the electronic message that was [transmitted to/received by] the recipient user device."

iv.  Infringement Analysis

Nevertheless, Snap is not entitled to summary judgment of non-infringement. Snap argues that it is entitled to summary judgment of non-infringement because when a message is sent using the accused Snapchat application, Snapchat transmits a "username"

to the recipient device, but displays a "display name," not the "username," to the user of the recipient device.  (See Doc. No. 178-1 at 4-5 (citing Doc. No. 178-14, Ex. A Weissman Rebuttal Expert Report ¶¶ 118, 196-99; Doc. No. 178-9, Ex. 6 Hicks Expert Report at Exhibit-Infringement-711 at 44, Exhibit-Infringement-886 at 10; Exhibit-Infringement-111 at 11).)  Vaporstream's infringement expert, Mr. Hicks, directly addresses this non-infringement argument in his expert report, and opines that the accused Snapchat application nevertheless infringes the patents at issue under the doctrine of equivalents.  (See Doc. No. 178-9, Ex. 6 Hicks Expert Report at 165.)  Specifically, Mr. Hicks opines:  "When display names are displayed, the display name is linked to the corresponding username, so the difference is insubstantial.  The accused products perform substantially the same function (identifying a sender), in substantially the same way (displaying text and other information that allows the receiving user to recognize a particular sender), to achieve substantially the same result (selection of a message from a particular sender)."  (Id.)  This is sufficient to create a genuine issue of material fact as to whether the accused products satisfy the "identifier of a sending user/header information" claim limitations under the doctrine of equivalents.  See Voda, 536 F.3d at 1326; Vasudevan Software, 782 F.3d at 683 ("'"As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case."'").

Snap argues that Mr. Hick's theory of infringement under the doctrine of equivalents should be rejected as a matter of law because it violates the "all limitations rule." (Doc. No. 178-1 at 7.)  "[T]he 'all limitations rule' restricts the doctrine of equivalents by preventing its application when doing so would vitiate a claim limitation."  Carnegie Mellon Univ. v. Hoffmann-La Roche Inc., 541 F.3d 1115, 1129 (Fed. Cir. 2008) (quoting Warner-Jenkinson, 520 U.S. at 21).  "In determining whether a finding of infringement under the doctrine of equivalents would vitiate a claim limitation, [a court] must consider 'the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless.'"  Id. (quoting Freedman Seating

Co. v. Am. Seating Co., 420 F.3d 1350, 1359 (Fed.Cir. 2005)); see also K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1367 (Fed. Cir. 1999) ("[W]here the patent document expressly identifies a role for a claim limitation, the doctrine of equivalents cannot be used to capture subject matter that does not substantially fulfill that role.").

Snap argues that Mr. Hicks's theory of infringement vitiates the "received" and "transmitted" claim limitations because it is undisputed that the "display name" is neither received nor transmitted as part of the electronic message. (Doc. No. 178-1 at 7.) The Court rejects this argument. In his expert report, Mr. Hicks explains that "[w]hen display names are displayed, the display name is linked to the corresponding username, so the difference is insubstantial." (Doc. No. 178-9, Ex. 6 Hicks Expert Report at 165.) Snap concedes that the username – which Mr. Hick's opines corresponds to and is insubstantial from the display name – is "transmitted to a recipient device when a message is sent using Snapchat." (Doc. No. 178-1 at 4.) Thus, Mr. Hicks's doctrine of equivalents opinion accounts for the "received" and "transmitted" claim limitations, and it does not render those limitations meaningless. Snap may disagree with Mr. Hick's opinion that the username corresponds to and is insubstantial from the display name, but that is a question of fact for the jury that may not be resolved at the summary judgment stage. See Advanced Steel Recovery, LLC, 808 F.3d at 1317 ("'Infringement, whether literal or under the doctrine of equivalents, is a question of fact.'"); Metro. Life Ins. Co. v. Bancorp Servs., L.L.C., 527 F.3d 1330, 1339 (Fed. Cir. 2008) (explaining that resolving credibility disputes between the parties' experts "is not appropriate on summary judgment"). As such, the Court rejects Snap's claim vitiation argument.

Snap also argues that Mr. Hick's theory of infringement under the doctrine of equivalents should be rejected as a matter of law because it runs afoul of the "dedication to the public" doctrine. (Doc. No. 178-1 at 7-9.) Snap argues that Federal Circuit law holds that the doctrine of equivalents cannot be asserted when an inventor discloses an embodiment of an invention in the patent specification, but fails to expressly claim that embodiment in the claim language. (Id. at 7 (citing Johnson & Johnston Assocs. Inc. v.

R.E. Serv. Co., 285 F.3d 1046, 1054 (Fed. Cir. 2002) ("[A] patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of equivalents to establish infringement because the specification discloses equivalents.").)  Snap argues, therefore, Vaporstream cannot rely on the doctrine of equivalents because although the specification discloses an embodiment that utilizes a "display name," Vaporstream chose not to cover this embodiment in the claim language. (Id. at 8-9.)  Snap is incorrect.

The claims at issue expressly claim either "an identifier of a sending user" or "a header information." '711 Patent at 24:47; '886 Patent at 18:60; '111 Patent at 18:61.  The common specification of the patents-in-suit explains that "header information . . . may include . . . a display name representing a sender of the electronic message." Id. at 12:66-13:4.  The specification further explains that "system 300 may identify a user by a variety of identities (e.g., display name, login ID. . . ) . . . ." '886 Patent at 13:14-15; see also id. at 10:36-38 ("Example identifying characteristics include, but are not limited to, a reply ID, an email address, a username, a display name, login ID, and any combination thereof."). Thus, the specification explains that the terms "an identifier of a sending user" and "a header information" may include a "display name."  As such, Snap's assertion that the claim language at issue does not cover embodiments that utilize "display names" is wrong, and the Court rejects Snap's "dedication to the public" doctrine argument.

In sum, there is a genuine issue of material fact as to whether the accused products satisfy the "identifier of a sending user/header information" claim limitations under the doctrine of equivalents.  As such, the Court denies Snap's motion for summary judgment of non-infringement of the patents-in-suit.

B.     Indirect Infringement of the '886 Patent and the '111 Patent

Snap moves for summary judgment of no indirect infringement of the '886 patent and the '111 patent. (Doc. No. 178-1 at 9-10.)  Snap argues that it is entitled to summary judgment on this issue because Vaporstream has no evidence that Snap has the required specific intent necessary to support a claim for induced infringement. (Id. at 10.)  In

response, Vaporstream argues that a triable issue of fact exists as to Snap's knowledge of other's infringement it induced.  (Doc. No. 200 at 7-8.)

Section 271(b) of the Patent Act provides: "Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  The Supreme Court has explained that "liability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'"  Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920, 1926 (2015) (quoting Glob.-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011)).  "Intent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice."  Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009).

"Inducement can be found where there is '[e]vidence of active steps taken to encourage direct infringement,' which can in turn be found in 'advertising an infringing use or instructing how to engage in an infringing use.'"  Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp., 785 F.3d 625, 630–31 (Fed. Cir. 2015) (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 936 (2005)).  "But such instructions need to evidence 'intent to encourage infringement.'"  Id. at 631 (quoting Vita-Mix, 581 F.3d at 1329).  "The focus is not on whether the instructions describe the mode of infringement, but rather on whether the 'instructions teach an infringing use of the device such that [the court is] willing to infer from those instructions an affirmative intent to infringe the patent.'"  HZNP Medicines LLC v. Actavis Labs. UT, Inc., 940 F.3d 680, 701 (Fed. Cir. 2019) (quoting Vita-Mix, 581 F.3d at 1329 n.2).  "Merely 'describ[ing]' an infringing mode is not the same as 'recommend[ing],' 'encourag[ing],' or 'promot [ing],' an infringing use, or suggesting that an infringing use 'should' be performed.  Takeda, 785 F.3d at 631 (citations omitted).

In his report, Vaporstream's infringement expert Mr. Hicks opines that Snap has induced infringement of the patents-in-suit because: (1) "Snap has published and produced various documents that instruct users on how to use Snapchat[, and] [t]hrough these documents, Snap induces its users to carry out infringing steps of the patented method

31

claims;" and (2) "Snap's corporate witness Alex Strand has testified that Snap values and encourages users to practice the asserted methods of the patents by sending snaps, posting stories, and viewing snaps." (Doc. No. 194-3, Ex. A Hicks Expert Report ¶¶ 58-59.) In support of these opinions, Mr. Hicks cites to various instructions contained on Snap's website and cites to specific portions of Mr. Strand's deposition testimony.[7] (See id. ¶¶ 24-37, 59; see also, e.g., id. ¶ 59 ("I would say that Snapchat encourages using Snapchat, yes.")) This evidence is sufficient to create a genuine issue of fact as to whether Snap has the requisite intent for induced infringement. See Takeda, 785 F.3d at 630–31; see, e.g., i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 851-52 (Fed. Cir. 2010) (affirming a jury's finding of inducement as supported by substantial evidence where the evidence in the record showed that the defendant provided instructions that taught users to practice the accused product in a manner the defendant knew would result in an infringing use). As a result, the Court denies Snap's motion for summary judgment of no indirect infringement.

## C.    Infringement of the '157 Patent

Snap argues that it is entitled to summary judgment of non-infringement of the '157 patent. (Doc. No. 178-1 at 12.) Snap notes that although Vaporstream alleged infringement of the '157 patent in the complaint, Vaporstream has subsequently dropped the '157 patent from the case and is no longer asserting any claims from it. (Id.) In response, Vaporstream agrees that it is no longer asserting any claims from the '157 patent, and it has dropped the '157 patent from the case. (Doc. No. 200 at 11.) Vaporstream argues that, therefore, Snap's motion should be denied because judgment cannot be entered on an unasserted patent. (Id. at 11-12.)

---

[7]    Snap argues that Vaporstream's only evidence for the intent element of induced infringement is Mr. Hick's expert report, and because his report is inadmissible hearsay, Snap's motion for summary judgment should be granted. (Doc. No. 202 at 6 & n.9.) The Court rejects this argument as it is based on a flawed premise. In arguing that there is sufficient evidence to create a triable issue of fact, Vaporstream does not rely solely on Mr. Hick's expert report. Rather, Vaporstream relies on the opinions in Mr. Hick's expert report and the evidence cited in the report, such as the instructions located on Snapchat's website and Mr. Strand's testimony. (See Doc. No. 200 at 8.)

Here, the parties agree that Vaporstream is no longer asserting infringement of any claims from the '157 patent in this case, and Vaporstream has dropped the '157 patent from this case. (Doc. No. 178-1 at 12; Doc. No. 200 at 11.) The Federal Circuit has explained that "a patentee's announcement that it [i]s no longer pursuing particular claims, coupled with its ceasing to litigate them, [i]s sufficient to remove those claims from the case even without [the formalities of filing a motion or stipulation]." Alcon Research Ltd. v. Barr Labs., Inc., 745 F.3d 1180, 1193 (Fed. Cir. 2014) (citing SanDisk Corp. v. Kingston Tech. Co., 695 F.3d 1348, 1353 (Fed. Cir. 2012)). As such, in light of the parties' agreement that Vaporstream is no longer asserting any claims from the '157 patent, Vaporstream's claim for infringement of the '157 patent is removed the case, and the Court dismisses the claim without prejudice. See id.; SanDisk, 695 F.3d at 1353 (explaining that a patentee's withdrawal of claims should be treated as a dismissal of the claims without prejudice); see, e.g., Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc., No. 2:14-CV-911-JRG-RSP, 2016 WL 1106442, at *1 (E.D. Tex. Mar. 20, 2016) (dismissing withdrawn infringement claims without prejudice).

In dismissing the claim without prejudice, the Court specifically notes that Snap never filed a counterclaim for a declaratory judgment of non-infringement of the '157 patent in this case. (See generally Doc. No. 61.) The Federal Circuit has explained: "If an accused infringer has filed a counterclaim, then the patentee has notice that, even if it drops its infringement claims, the issue of infringement remains to be litigated. On the other hand, if the accused infringer does not file a counterclaim, then it is up to the patentee to decide what claims are to be litigated and decided at trial." Alcon Research, 745 F.3d at 1193. Because Snap never filed a declaratory judgment counterclaim in this case, it is up to Vaporstream "to decide what claims are to be litigated and decided at trial." Id.

In sum, Vaporstream's claim for infringement of the '157 patent is dismissed from the case without prejudice. Because Vaporstream's claim for infringement of the '157 patent has been dismissed, the Court cannot enter summary judgment as to that claim. See Alcon Research, 745 F.3d at 1193 ("A court should not render judgment with respect to

claims 'reference[d] in the complaint' but not raised in the pretrial statement or litigated at trial; 'a reference in the complaint is not sufficient to support a judgment.'" (quoting <u>800 Adept, Inc. v. Murex Sec., Ltd.</u>, 539 F.3d 1354, 1367–68 (Fed. Cir. 2008))). As such, the Court denies Snap's motion for summary judgment of non-infringement of the '157 patent.

## IV. Snap's Motion for Summary Judgment of No Willful Infringement

Snap moves for summary judgment of no willful infringement. (Doc. No. 178-1 at 10-11.) Snap argues that Vaporstream has presented no evidence of pre- or post-suit willful infringement. (<u>Id.</u> at 11.) In response, Vaporstream argues that Snap's motion should be denied because there is sufficient evidence in the record of post-suit willful infringement to preclude summary judgment. (Doc. No. 200 at 8-11.)

"Section 284 of the Patent Act provides that, in a case of infringement, courts 'may increase the damages up to three times the amount found or assessed.'" <u>Halo Elecs., Inc. v. Pulse Elecs., Inc.</u>, 136 S. Ct. 1923, 1928 (2016) (quoting 35 U.S.C. § 284). The Supreme Court has explained "there is 'no precise rule or formula' for awarding damages under section 284." <u>Id.</u> at 1932 (quoting <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 572 U.S. 545, 554 (2014)). Rather, "a district court's 'discretion should be exercised in light of the considerations' underlying the grant of that discretion." <u>Id.</u>

In applying this discretion, courts should "limit[]the award of enhanced damages to egregious cases of misconduct beyond typical infringement." <u>Id.</u> at 1935; <u>see also</u> <u>id.</u> at 1932 ("[E]nhanced damages are generally appropriate under § 284 only in egregious cases."). "The sort of conduct warranting enhanced damages has been variously described . . . as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." <u>Id.</u> at 1932. In <u>Halo</u>, the Supreme Court clarified that "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless." <u>Id.</u> at 1933.

In <u>Halo</u>, the Supreme Court also explained that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct." <u>Id.</u> Thus,

"[k]nowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016). The Federal Circuit has explained that although the determination of whether to award enhanced damages is committed to the district court, the factual components underlying a willfulness determination are questions of fact to be resolved by the jury. Id.

In its response to Snap's motion, Vaporstream clarifies that it is only asserting post-suit willful infringement in this action. (See Doc. No. 200 at 8 ("Vaporstream does not assert that there was pre-suit willful infringement.").) The Court notes that a claim for willful infringement can be based on post-filing conduct alone. See Apple Inc. v. Samsung Elecs. Co., 258 F. Supp. 3d 1013, 1025–27 (N.D. Cal. 2017); see, e.g., Simplivity Corp. v. Springpath, Inc., No. CV 4:15-13345-TSH, 2016 WL 5388951, at *18 (D. Mass. July 15, 2016); DermaFocus LLC v. Ulthera, Inc., 201 F. Supp. 3d 465, 473 (D. Del. 2016); cf. Mentor Graphics Corp. v. EVE-USA, Inc., 851 F.3d 1275, 1295 (Fed. Cir. 2017) (reversing and holding that the district court erred in concluding that the patentee could not present evidence of post-filing willful infringement because it did not seek a preliminary injunction). Nevertheless, Vaporstream has failed to identify sufficient evidence in the record to raise a genuine issue of material fact as to post-suit willful infringement.

Vaporstream argues that the evidence in the record relevant to the issue of intent for induced infringement is also relevant to the issue of willful infringement. (Doc. No. 200 at 10.) Specifically, Vaporstream argues that this evidence shows that Snap continues to infringe Vaporstream's patents to this day by actively pushing out its infringing offerings to users and encouraging its users to infringe the patents. (Id. at 10.) But, even assuming this is true, evidence that a defendant infringed and induced others to infringe a patent, by itself, is insufficient to support a finding of willful infringement. See, e.g., SRI Int'l, Inc. v. Cisco Sys., Inc., 930 F.3d 1295, 1309 (Fed. Cir. 2019) (finding that "proof that [the defendant] directly infringed and induced others to infringe the patents-in-suit" was insufficient to support a jury's finding of willful infringement); Intellectual Ventures I LLC v. Symantec Corp., 234 F. Supp. 3d 601, 612 (D. Del. 2017) (granting summary judgment

of no willfulness where the evidence only showed that the defendant continued to update, produce, and sell the accused products following the filing of the lawsuit); see also Universal Elecs. Inc. v. Roku, Inc., No. SACV181580JVSADSX, 2019 WL 1877616, at *14 (C.D. Cal. Mar. 5, 2019) (noting that the majority of district courts in the Ninth Circuit have held that "knowledge and continued infringement alone" are insufficient to support a claim for willful infringement).

Vaporstream also notes that, in this case, Snap has not relied on evidence of counsel nor produced an opinion of counsel on the issue of infringement. (Doc. No. 200 at 10.) But under section 298 of the Patent Act: "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent." 35 U.S.C. § 298. As such, Vaporstream cannot rely on Snap's failure to obtain an opinion of counsel as evidence of willful infringement. See SRI, 930 F.3d at 1309 ("Cisco's decision not to seek an advice-of-counsel defense is legally irrelevant under 35 U.S.C. § 298.").

Finally, Vaporstream notes that Snap has failed to implement in a publicly available version of Snapchat any of its proposed low-cost non-infringing alternatives. (Doc. No. 200 at 8-9 (citing Doc. No. 194-4, Ex. B at 207:16-18, 166:9-167:16, 164:6-165:23; Ex. C at 59:6-12, 142:13-19).) Vaporstream argues that evidence that a defendant had a non-infringing alternative that it could have implemented quickly and cheaply but did not will support a jury's finding of willful infringement. (Id. at 9.) But, to support this argument, Vaporstream relies on a single district court decision – Apple Inc. v. Samsung Elecs. Co., 258 F. Supp. 3d 1013 (N.D. Cal. 2017). The Apple decision is easily distinguishable from the present case.

In Apple, the district court found that the jury's finding of willful infringement was supported by "evidence that [the defendant] had a less desirable non-infringing alternative it could have quickly adopted, but chose not to." 258 F. Supp. 3d at 1027. But in Apple,

this evidence regarding the non-adoption of a non-infringing alternative was just one of three pieces of evidence that the district court found combined to support the jury's willfulness finding. See id. Importantly, in Apple, in addition to the evidence regarding a non-infringing alternative, there was evidence that the defendant had "engaged in copying." Id. In contrast, here, Vaporstream has not identified any evidence purporting to show that Snap has engaged in copying. And Vaporstream has not identified any case holding that failure to adopt an available non-infringing alternative alone is sufficient to support a finding of willful infringement. Continued infringement of patent is insufficient by itself to support a finding of willful infringement. See SRI Int'l, 930 F.3d at 1309; Intellectual Ventures I, 234 F. Supp. 3d at 612; Universal Elecs., 2019 WL 1877616, at *14.

In sum, Vaporstream has failed to show that there is sufficient evidence to raise a triable issue as to willful infringement. Vaporstream has failed to identify any egregious conduct or evidence of behavior beyond typical infringement by Snap. As a result, the Court grants Snap's motion for summary judgment of no willful infringement. See Intellectual Ventures I, 234 F. Supp. 3d at 612 (granting summary judgment of no willful infringement where the patentee identified "no evidence of behavior beyond typical infringement"); see also Halo, 136 S. Ct. at 1932 ("[E]nhanced damages are generally appropriate under § 284 only in egregious cases.").

## V.     Vaporstream's Motion for Partial Summary Judgment of IPR Estoppel

Vaporstream moves for partial summary judgment of Snap's obviousness defense. (Doc. No. 179 at 21.) Specifically, Vaporstream argues that 35 U.S.C. § 315(e)(2) estops Snap from asserting invalidity of the '886, '111, and '711 patents based on all of its asserted obviousness combinations because Snap reasonably could have raised them in the *inter partes* review proceedings for those patents. (Id. at 1.) In response, Snap argues that IPR estoppel does not apply to the obviousness combinations at issue because each of those combinations contains at least one system prior art reference that Snap could not have raised during the IPR. (Doc. No. 190 at 1-11.)

## A. Relevant Background

On June 12, 2017, Snap served its invalidity contentions. (Doc. No. 179-14, Ex. 12.) On October 3, 2017, Snap served its first amended invalidity contentions. (Doc. No. 179-15, Ex. 13.)

Between December 26, 2017 and January 9, 2018, Snap filed petitions with the Patent Trial and Appeal Board seeking *inter partes* review of the asserted claims from the '711 patent, the '886 patent, and the '111 patent. (Doc. No. 179-3, Ex. 1; Doc. No. 179-4, Ex. 2; Doc. No. 179-5, Ex. 3; Doc. No. 179-6, Ex. 4.) On January 12, 2018, Snap served its second amended invalidity contentions pursuant to sections 4 and 8 of the Court's December 1, 2017 amended scheduling order. (Doc. No. 179-16, Ex. 14; <u>see</u> Doc. No. 96 at 6-8, 10-11.) On April 18, 2018, Snap served its third amended invalidity contentions pursuant to section 8 of the Court's December 1, 2017 amended scheduling order. (Doc. No. 179-17, Ex. 15; Doc. No. 96 at 10-11.)

On April 25, 2018, Snap served a report regarding the invalidity of the patents-in-suit from its invalidity expert, Dr. Greenberg. (Doc. No. 179-18, Ex. 16 Greenberg Expert Report.) In his report, Dr. Greenberg opines that each of the asserted claims of the '711 patent, the '886 patent, and the '111 patent would be invalid under § 103 based on a total of 26 obviousness combinations. (<u>See</u> <u>id.</u> ¶¶ 442-45, 478-80, 496-99.)

Between July 10, 2018 and August 8, 2018, the Patent Trial and Appeal Board granted Snap's petitions and instituted *inter partes* review of the challenged claims of the '711 patent, the '886 patent, and the '111 patent. (Doc. No. 179-7, Ex. 5; Doc. No. 179-8, Ex. 6; Doc. No. 179-9, Ex. 7; Doc. No. 179-10 Ex. 8.) On June 28, 2019 and August 1, 2019, the PTAB issued final written decisions concluding that the asserted claims of the '711 patent, the '886 patent, and the '111 patent "have not been shown to be unpatenable." (Doc. No. 179-11, Ex. 9 at 38; Doc. No. 179-12, Ex. 10 at 38; Doc. No. 179-13, Ex. 11 at 37.)

On October 15, 2019, in light of the PTAB's final written decisions on the '711 patent, the '886 patent, and the '111 patent, Snap withdrew three of the 26 obviousness

combinations contained in Dr. Greenberg's report.[8]  (Doc. No. 179-19 Ex. 17.)  Thus, 23 obviousness combinations currently remain in Dr. Greenberg's report with respect to the '711 patent, the '886 patent, and the '111 patent.

B.    Legal Standards for IPR Estoppel

Section 315(e)(2) of the Patent Act states:

> The petitioner in an *inter partes* review of a claim in a patent under this chapter that results in a final written decision . . . may not assert . . . in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review.

35 U.S.C. § 315(e)(2).  In an IPR, a petitioner is limited to challenging patent claims as invalid only on grounds "that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications."  35 U.S.C. § 311(b); <u>see</u> <u>California Inst. of Tech. v. Broadcom Ltd.</u>, No. CV 16-3714 GW (AGRX), 2018 WL 7456042, at *9 (C.D. Cal. Dec. 28, 2018) ("[I]n IPR proceedings, the PTAB will only consider patents or printed publications as grounds for invalidity due to anticipation or obviousness.").  Thus, section 315(e)(2) estoppel applies when: (1) a final written decision is issued in an IPR; (2) the contention at issue asserts invalidity under §§ 102 or 103 based only on prior art consisting of patents or printed publications; and (3) the contention at issue either was raised or reasonably could have been raised during the IPR.

Courts have interpreted the phrase "reasonably could have raised" in § 315(e)(2) to mean "any patent or printed publication that a petitioner actually knew about or that 'a skilled searcher conducting a diligent search reasonably could have been expected to discover.'"  <u>Cal. Tech.</u>, 2018 WL 7456042, at *8; <u>Palomar Techs., Inc. v. MRSI Sys., LLC</u>, 373 F. Supp. 3d 322, 331 (D. Mass. 2019); <u>Tinnus Enterprises, LLC v. Telebrands Corp.</u>, No. 6:17-CV-00170-RWS, 2018 WL 3993468, at *3 (E.D. Tex. Aug. 21, 2018); <u>Parallel</u>

---

[8]    Specifically, Snap withdrew the Wren/Berger/Hartselle combination for the '886 patent and the '111 patent, and Snap withdrew the Namias/Wren/Yuan/Fardella/Stevenson/Hartselle combination for the '711 patent.  (Doc. No. 179-19 Ex. 17.)

Networks Licensing, LLC v. Int'l Bus. Machines Corp., No. CV 13-2072 (KAJ), 2017 WL 1045912, at *11 (D. Del. Feb. 22, 2017); see also, e.g., Apotex Inc., v. Wyeth LLC, No. IPR2015-00873, 2015 WL 5523393, at *4 (P.T.A.B. Sept. 16, 2015). The party asserting estoppel bears the burden to show that estoppel applies. Oil-Dri Corp. of Am. v. Nestlé Purina Petcare Co., No. 15 C 1067, 2019 WL 861394, at *10 (N.D. Ill. Feb. 22, 2019); see Palomar Techs., 373 F. Supp. 3d at 332; f'real! Foods, LLC v. Hamilton Beach Brands, Inc., No. CV 16-41-CFC, 2019 WL 1558486, at *1 (D. Del. Apr. 10, 2019).

    C.    Analysis

    Vaporstream argues that IPR estoppel under § 315(e)(2) applies to the remaining 23 obviousness combinations in Dr. Greenberg's expert report. (Doc. No. 179 at 6-14.) In response, Snap argues that IPR estoppel does not apply to these obviousness combinations because each of the remaining obviousness combinations includes at least one system prior art reference, and, thus, could not have been raised during the IPR. (Doc. No. 190 at 1-6.) In reply, Vaporstream argues that Dr. Greenberg could not have included any system art in his invalidity analysis because Snap did not disclose any system art references in its invalidity contentions. (Doc. No. 205 at 1-3; Doc. No. 179 at 8-9.)

    "[I]n IPR proceedings, the PTAB will only consider patents or printed publications as grounds for invalidity due to anticipation or obviousness." Cal. Tech., 2018 WL 7456042, at *9 (citing 5 U.S.C. § 311(b)). Thus, § 102 and § 103 invalidity grounds that are based on non-patent/non-printed publication references, such as "known or used by others" references under pre-AIA § 102(a) or "in public use or on sale" references under pre-AIA § 102(a), cannot be raised in IPR proceedings.[9] See id. Nevertheless, several

---

[9]    The Court notes that because the '886, '111, and '711 patents all claim priority to application No. 11/401,148, filed on April 10, 2006, and provisional application No. 60/703,367, filed on July 28, 2005, the pre-AIA version of § 102 applies. See REG Synthetic Fuels, LLC v. Neste Oil Oyj, 841 F.3d 954, 958 n.3 (Fed. Cir. 2016) ("References to § 102 . . . in this opinion refer to the pre-AIA version of the statute, the version that applies here" because the claims at issue have an effective filing date prior to March 16, 2013); Cal. Tech., 2018 WL 7456042, at *9 ("The 'pre-AIA' versions of Sections 102 and 103 of the Patent Act apply in this case because each of the Asserted Patents has a priority date that is before the relevant date of enactment of the America Invents Act.").

district courts have held that "if a patent challenge is simply swapping labels for what is otherwise a patent or printed publication invalidity ground in order to 'cloak' its prior art ground and 'skirt' estoppel," then § 315(e)(2) estoppel still applies.  <u>California Inst. of Tech. v. Broadcom Ltd.</u>, No. 16-cv-3714 GW (AGRx), Docket No. 1432 at 11 (C.D. Cal. Aug. 9, 2019); <u>see, e.g.</u>, <u>Oil-Dri</u>, 2019 WL 861394, at *10 ("Where there is evidence that a petitioner had reasonable access to printed publications corresponding to or describing a product that it could have proffered during the IPR process, it cannot avoid estoppel simply by pointing to its finished product (rather than the printed materials) during litigation."); <u>Milwaukee Elec. Tool Corp. v. Snap-On Inc.</u>, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017) ("To the extent these written materials fall within the scope of Section 311(b), they are of course affected by IPR estoppel.  Snap-On cannot skirt it by purporting to rely on a device without actually relying on the device itself."); <u>Biscotti Inc. v. Microsoft Corp.</u>, No. 213CV01015JRGRSP, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017) ("If, however, Microsoft's purported system prior art relies on or is based on patents or printed publications that Microsoft would otherwise be estopped from pursuing at trial, <i>e.g.</i>, patents or printed publications that a 'skilled searcher conducting a diligent search reasonably could have been expected to discover,' then Microsoft should be estopped from presenting those patents and printed publications at trial.").

Here, each of the remaining 23 obviousness combinations in Dr. Greenberg's report contains at least one prior art reference that Snap contends is a system reference.  (<u>See</u> Doc. No. 190 at 1; Doc. No. 179-18, Ex. 16 Greenberg Expert Report ¶¶ 442-45, 478-80, 496-99.)  Specifically, Snap asserts that the Microsoft Outlook Software System reference, the Microsoft Server System reference, the Nokia 7xxx Series Mobile Phone System reference, and the Pocket PC Phone System reference are all system art.  (Doc. No. 190 at 7.)  In response, Vaporstream argues that the Court should reject Snap's assertion that these references are system art because none of the references were identified as system art in Snap's invalidity contentions.  (Doc. No. 205 at 1-3; Doc. No. 179 at 8-9.)  The Court agrees with Vaporstream.

On January 12, 2018, Snap served its second amended invalidity contentions pursuant to sections 4 and 8 of the Court's December 1, 2017 amended scheduling order and the Court's Patent Local Rules.[10] (Doc. No. 179-16, Ex. 14.) Under the S.D. Cal. Patent Local Rule 3.3(a), Invalidity Contentions must contain:

> The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. This includes information about any alleged knowledge or use of the invention in this country prior to the date of invention of the patent. Each prior art patent must be identified by its number, country of origin, and date of issue. Each prior art publication must be identified by its title, date of publication, and where feasible, author and publisher. Prior art under 35 U.S.C. § 102(b) must be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity that made the use or that made and received the offer, or the person or entity that made the information known or to whom it was made known.

S.D. Cal. Patent L.R. 3.3(a). "These disclosure requirements exist 'to further the goal of full and timely discovery and provide all parties with adequate notice and information with which to litigate their cases.'" MediaTek Inc. v. Freescale Semiconductor, Inc., No. 11-CV-5341 YGR, 2014 WL 690161, at *1 (N.D. Cal. Feb. 21, 2014) (quoting Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., No. 473, 2006 WL 1329997, at *4 (N.D. Cal. May 15, 2006)); see also O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1364 (Fed. Cir. 2006) (explaining that patent local rules are "designed specifically to 'require parties to crystallize their theories of the case early in the litigation'").

In compliance with Patent Local Rule 3.3(a), Snap's January 12, 2018 invalidity contentions contained an "Identification of Prior Art" section. (Doc. No. 179-16, Ex. 14 at 7-9.) In the beginning of this section, Snap states: "The following patents and publication are prior art under at least 35 U.S.C. § 102(a), (b), (e) and/or (g) and 103 over the Asserted Patents." (Id. at 7) Snap then provides a list of patent and printed publication

---

[10] Under the Court's December 1, 2017 amended scheduling order, Snap's January 12, 2018 invalidity contentions were required to comply with the disclosure requirements set forth in the Southern District of California Patent Local Rules. (See Doc. No. 96 at 2 & 3 n.1, 6-8.)

prior art references. (Id. at 7-9.) Snap's "Identification of Prior Art" section does not identify any system art references. (See id.)

Snap argues that its January 12, 2018 invalidity contentions made clear that it was disclosing system art because the contentions using the word "system" when naming the references at issue: "Microsoft Outlook System," "Microsoft Server system," "Nokia 7xxx Series Mobile Phone system," and "Pocket PC Phone system." (Doc. No. 190 at 6-7; see Doc. No. 179-16 at 7-8.) The Court rejects Snap's argument. In the contentions, Snap describes these references as "patents and publications." (Doc. No. 179-16, Ex. 14 at 7 ("The following patents and publication are prior art . . . .").) Further, the manner in which Snap identified these references comports with the Court's requirements for disclosing publications. Under the S.D. Cal. Patent Local Rule 3.3(a), "[e]ach prior art publication must be identified by its title, date of publication, and where feasible, author and publisher." S.D. Cal. Patent L.R. 3.3(a). This is precisely how Snap identified these references. For example, for the "Microsoft Outlook Software System" reference, Snap identified it as "Jim Boyce, Microsoft Outlook 2002." (Id.) Here, Snap provided the author, title, and date of publication of the reference in compliance with Rule 3.3(a)'s requirements for disclosing publication prior art.[11] Finally, although the contentions use the word "system," in naming these references, the contentions explain that this is merely a "Short Name" for the reference and not the actual description of the reference. For example, "Jo" is merely a short name for a reference in the contentions, but the actual reference disclosed in the contentions is "U.S. Patent No. 8,504,080." (Doc. No. 179-16 at 7.) Similarly, "Microsoft Outlook Software system" may be the short name for the reference, but the actual reference disclosed in the contentions is the publication "Jim Boyce, Microsoft Outlook 2002." (Id.) In sum, the Court rejects Snap's assertion that it

---

[11] In addition, the Court notes that Snap's own evidence shows that Snap failed to make physical copies of these references available for inspection at the time it served its second amended invalidity contentions or its third amended invalidity contentions as required by Patent Local Rule 3.4. (See Doc. No. 190-3, Ex. B.) This further shows that Snap was not identifying these references as system art.

disclosed system art in either its January 12, 2018 invalidity contentions or its April 18, 2018 invalidity contentions.[12]

Because Snap's invalidity contentions only disclosed patent and publication prior art and did not disclose any system prior art references, it was improper for Dr. Greenberg to attempt to rely on these references as system art. "Given the purpose behind the patent local rules' disclosure requirements, 'a party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions.'" Verinata Health, Inc. v. Sequenom, Inc., No. C 12-00865 SI, 2014 WL 4100638, at *3 (N.D. Cal. Aug. 20, 2014); accord Looksmart Grp., Inc. v. Microsoft Corp., 386 F. Supp. 3d 1222, 1226 (N.D. Cal. 2019); see also MediaTek, 2014 WL 690161, at *1 ("Any invalidity theories not disclosed pursuant to Local Rule 3–3 are barred . . . from presentation at trial (whether through expert opinion testimony or otherwise)." As such, to extent Dr. Greenberg is attempting to rely on the references at issue as system art, the Court strikes those references from his report. See id.

Further, because Dr. Greenberg could only rely on the specific prior art references that were actually disclosed in Snap's invalidity contentions, and all of those references were either patents or publications, all the prior art references and obviousness theories of invalidity contained in Snap's invalidity contentions and properly contained in Dr. Greenberg's report are invalidity grounds that could have been raised in the IPR proceedings. Several district courts have held that the identification of prior art in an accused infringer's invalidity contentions generated prior to the filing of the IPR petition is sufficient to establish as matter of law that the accused infringer knew of those prior art references, and, thus, that the references "reasonably could have [been] raised" in the IPR.

---

[12] The Court notes that Snap's April 18, 2018 third amended invalidity contentions contain an identical "Identification of Prior Art" section as the January 12, 2018 contentions, except that the April 18, 2018 contentions correct a typographical error by removing the duplicative listing at numbers 36-40. (See Doc. No. 179-17, Ex. 15 at 10 n.5.)

See, e.g., Trustees of Columbia Univ. in the City of New York v. Symantec Corp., 390 F. Supp. 3d 665, 678 (E.D. Va. 2019); Polaris Indus., Inc. v. Arctic Cat Inc., No. CV 15-4475 (JRT/TNL), 2019 WL 3824255, at *3 (D. Minn. Aug. 15, 2019) (same); Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp., No. CV 13-2072 (KAJ), 2017 WL 1045912, at *11–12 (D. Del. Feb. 22, 2017) (same); Douglas Dynamics, LLC v. Meyer Prod. LLC, No. 14-CV-886-JDP, 2017 WL 1382556, at *5 (W.D. Wis. Apr. 18, 2017).

The Court acknowledges that the IPR petitions at issue were filed between December 26, 2017 and January 8, 2019, which was shortly before January 12, 2018, the date Snap served its second amended invalidity contentions. (See Doc. No. 179-2, Exs. 1-4, 14.) Nevertheless, the Court agrees with Vaporstream that given the short window of time (just 17 calendar days between the filing of Snap's first IPR petition and the service of its invalidity contentions); the inherent time that is required to locate references and prepare invalidity contentions; and no argument to the contrary from Snap, Snap should be deemed to have possessed the references identified in the January 12, 2018 invalidity contentions at the time it filed its IPR petitions. In addition, the Court notes that the Microsoft Outlook reference and the Nokia 7xxx Series Mobile Phone references were initially disclosed in Snap's October 3, 2017 invalidity contentions, well before Snap filed its IPR petitions. (Doc. No. 179-15, Ex. 13 at 7-8.) As such, Snap is estopped under § 315(e)(2) from asserting that the '886, '111, and '711 patents are invalid based on obviousness.

In sum, the Court grants Vaporstream's motion for partial summary judgment of Snap's obviousness defense based on IPR estoppel under 35 U.S.C. § 315(e)(2). Specifically, the Court grants summary judgment in favor of Vaporstream on Snap's affirmative defense of invalidity of the '886, '111, and '711 patents based on obviousness.[13]

---

[13]    As an alternative ground for granting its motion for partial summary judgment of Snap's obviousness defense, Vaporstream argues that the Court should strike Dr. Greenberg's obviousness combinations because they are all new invalidity theories that were not properly disclosed under the Court's Patent Local Rules. (Doc. No. 179 at 14-20.) Because the Court grants Vaporstream's motion

## <u>Conclusion</u>

For the reasons above, the Court:

1.　　denies Snap's motion for reconsideration of the Court's February 27, 2018 summary judgment order;

2.　　denies Snap's motion for summary judgment of non-infringement;

3.　　grants Snap's motion for summary judgment of no willful infringement; and

4.　　grants Vaporstream's motion for partial summary judgment of no obviousness based on IPR estoppel.

**IT IS SO ORDERED.**

DATED: January 13, 2020

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

for summary judgment of Snap's obviousness defense based on IPR estoppel, the Court declines to address this additional and alternative ground for summary judgment.

2:17-cv-00220-MLH (KSx)