UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAPORSTREAM, INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SNAP INC. d/b/a/ Snapchat, Inc.,<br><br>　　　　　　　　　　Defendant. | Case No.:  2:17-cv-00220-MLH (KSx)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS IN LIMINE; AND**<br><br>[Doc. No. 247.]<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS IN LIMINE**<br><br>[Doc. No. 238, 240, 244, 245, 246.]<br><br>**(3) GRANTING THE PARTIES' JOINT MOTION REGARDING THE PRESENTATION OF EVIDENCE AT TRIAL REGARDING VAPORSTREAM PRODUCTS**<br><br>[Doc. No. 283.] |

On January 29, 2020, the parties filed their respective motions in limine. (Doc. Nos. 238, 240, 244, 245, 246, 247.) On February 6 and 12, 2020, the parties filed their respective oppositions to the motions in limine. (Doc. Nos. 258, 262, 263, 264, 267, 270.) On February 19, 2020, the parties filed their respective replies. (Doc. Nos. 276, 277, 278, 279, 280, 281.) On February 24, 2020, Snap filed a notice withdrawing one of its motions in limine. (Doc. No. 282.) On February 25, 2020, the parties filed a joint motion regarding the presentation of evidence and withdrawing another one of Snap's motions in limine. (Doc. No. 283.)

The Court held a hearing on February 26, 2020. Robert Rivera, Jr., Joseph S. Grinstein, and Meng Xi appeared for Plaintiff Vaporstream. Heidi L. Keefe, Michael A. Attanasio, Reuben H. Chen, and Mark R. Weinstein appeared for Defendant Snap. For the reasons below, the Court grants in part and denies in part Vaporstream's motions in limine, and the Court grants in part and denies in part Snap's motions in limine.

## Background

On January 10, 2017, Plaintiff Vaporstream filed a complaint for patent infringement against Defendant Snap, alleging infringement of U.S. Patent Nos. 8,886,739, 8,935,351, 9,306,885, 9,306,886, 9,313,155, 9,313,156, 9,313,157, 9,338,111, and 9,413,711. (Doc. No. 1.) On June 26, 2017, Snap filed an answer to the complaint. (Doc. No. 61.)

On February 27, 2018, the Court issued a claim construction order. (Doc. No. 118.) On February 27, 2018, the Court also denied Snap's motion for summary judgment that the patents-in-suit are invalid under 35 U.S.C. § 101. (Doc. No. 117.)

Starting on June 6, 2018, the Patent Trial and Appeal Board instituted inter partes review of the challenged claims for each of the patents-in-suit. See Snap Inc. v. Vaporstream, Inc., Case Nos. IPR2018-00200, IPR2018-00312, IPR2018-00369, IPR2018-00397, IPR2018-00404, IPR2018-00408, IPR2018-00416, IPR2018-00439, IPR2018-00455, IPR2018-00458. On June 12, 2018, the parties filed a joint motion to stay the action pending the IPR proceedings as to the patents-in-suit. (Doc. No. 148.) On June 13, 2018, the Court granted the parties' joint motion and stayed the action pending the last

2:17-cv-00220-MLH (KSx)

final written decision by the PTAB in the IPR proceedings for the patents-in-suit. (Doc. No. 150.)

Between June 4, 2019 and August 30, 2019, the PTAB issued final written decisions in each of the IPR proceedings for the patents-in-suit. In those decisions, the PTAB held that the challenged claims from the '739 patent, the '885 patent, the '155 patent, the '351 patent, and the '156 patent are all unpatentable, and the PTAB held that the challenged claims from the '886 patent, the '111 patent, the '711 patent, and the '157 patent had not been shown to be unpatentable. (Doc. Nos. 156-1, 157-1, 158-1, 158-2, 158-3, 158-4, 159-1.)

As a result, on September 13, 2019, the Court partially lifted the stay of the action. (Doc. No. 160.) The Court lifted the stay as to the '886 patent, the '111 patent, the '711 patent, and the '157 patent. (Id. at 3.) The Court continued the stay of the action as to the '739 patent, the '885 patent, the '155 patent, the '351 patent, and the '156 patent. (Id.) On September 23, 2019, the Court issued an amended scheduling order. (Doc. No. 162.)

On January 10, 2020, the Court granted in part and denied in part Snap's <u>Daubert</u> motion, and the Court denied Vaporstream's <u>Daubert</u> motion. (Doc. No. 222.) In the order, the Court specifically excluded Vaporstream's damages expert Mr. Bratic's 50/50 profit split reasonable royalty rate opinion, and the Court precluded Mr. Bratic from referencing in his damages analysis Snap's market capitalization, acquisition offers received, total revenues, and total incremental profits. (Id. at 4-10, 12-13, 20.)

On January 13, 2020, the Court issued an order on the parties' motions for summary judgment. (Doc. No. 224.) In the order, the Court: (1) denied Snap's motion for reconsideration of the Court's February 27, 2018 summary judgment order; (2) denied Snap's motion for summary judgment of non-infringement; (3) granted Snap's motion for summary judgment of no willful infringement; and (4) granted summary judgment in favor of Vaporstream on Snap's affirmative defense of invalidity of the '886, '111, and '711

patents based on obviousness.[1]  (Id. at 45-46.)

Presently before the Court are five motions in limine from Snap and three motions in limine from Vaporstream.  (Doc. Nos. 238, 240, 244, 245, 246, 247.)  The Court addresses each of these motions in limine in turn below.

**Discussion**

## I.    Snap's Motions in Limine

### A.    Snap's Motion in Limine No. 1 - Moot

In its first motion in limine, Snap moves to preclude any evidence or argument about how Vaporstream's products work or that Vaporstream's products practice the asserted claims.  (Doc. No. 252 at 1.)  On February 25, 2020, the parties filed a joint motion regarding the presentation of evidence at trial regarding Vaporstream products.  (Doc. No. 283.)  In the joint motion, the parties agree:

> (1) Vaporstream may present evidence at trial regarding the Vaporstream products in existence at the time of Mr. Amit Shah's employment at Vaporstream from 2005 through May 1, 2015, including, for example, the operation of such products and whether they represent a reduction to practice and/or an embodiment of the alleged invention. Neither Mr. Shah nor Vaporstream (through its experts or otherwise) may present evidence, however, about the operation of Vaporstream products (or versions thereof) in existence after May 1, 2015 when Mr. Shah's employment at Vaporstream ended. Further, Mr. Shah and Vaporstream (through its experts or otherwise) shall not present any limitation-by-limitation analysis comparing any Vaporstream product to the asserted claims.  Furthermore, Snap (through its experts or otherwise) shall not argue at trial that Vaporstream is a "patent troll," "non-practicing entity," or similar such entity.
>
> (2) Each party agrees that its respective technical expert(s) will not present evidence regarding the operation of the Vaporstream products.
>
> (3) In view of the foregoing stipulations regarding the presentation of evidence at trial regarding Vaporstream's products, Snap withdraws its Motion in Limine to Exclude Evidence That Any Vaporstream Product

---

[1]    In the order, the Court also dismissed Vaporstream's claim for infringement of the '157 patent from the case without prejudice.  (Doc. No. 224 at 33-34.)

Practices the Asserted Claims (ECF No. 252).

(Doc. No. 283 at 1-2.) For good cause shown, the Court grants the parties' joint motion, and the Court denies Snap's first motion in limine as moot.

B.    Snap's Motion in Limine No. 2 – Exclusion of Certain Infringement Opinions Regarding the "Header Information" and "Identifier of a Sending User" Claim Limitations

In its second motion in limine, Snap moves to preclude Vaporstream from presenting any evidence at trial that anything other than the "username" or "display name" identified by Vaporstream's infringement expert Mr. Hicks in his expert report can meet the claim limitations of "header information" or "identifier of a sending user." (Doc. No. 240 at 1.) In response, Vaporstream argues that Snap's motion should be denied because Mr. Hicks did not limit his infringement opinions regarding the "header information"/"identifier of a sending user" claim limitations to the Snapchat "username" and "display name." (Doc. No. 270 at 1-2.)

Federal Rule of Civil Procedure 26(a)(2)(B)(i) provides that an expert report must contain "a complete statement of all opinions the witness will express." Thus, "[a]ll expert witnesses at trial must tether their testimony to the contents of their respective reports, and are precluded from exceeding the scope of their reports." AngioScore, Inc. v. TriReme Med., Inc., No. 12-CV-03393-YGR, 2015 WL 5258786, at *1 n.1 (N.D. Cal. Sept. 8, 2015); see, e.g., Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc., 725 F.3d 1341, 1354–55 (Fed. Cir. 2013) (affirming district court's striking in part of an expert declaration that included untimely disclosures); Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 488 F.3d 982, 995 (Fed. Cir. 2007) (affirming district court's exclusion of expert testimony that fell outside the expert's report). Nevertheless, "[t]he purpose of [an expert] report[] is not to replicate every word that the expert might say on the stand. It is instead to convey the substance of the expert's opinion (along with the other background information required by Rule 26(a)(2)(B)) so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." Walsh v. Chez, 583 F.3d 990, 994 (7th Cir. 2009); accord Ohio Six Ltd. v. Motel 6 Operating L.P., No. CV 11-08102 MMM (EX),

2013 WL 12125747, at *14 (C.D. Cal. Aug. 7, 2013).

The Court has reviewed the relevant opinions set forth in Mr. Hicks' expert report. The Court agrees with Vaporstream that Mr. Hicks does not limit his opinions regarding the "header information"/"identifier of a sending user" claim limitations to the Snapchat "username" and "display name." (See, e.g., Doc. No. 273-1, Ex. A at 1 ("The Snap also contains header information (metadata) relevant to the message content."), at 12 ("The screenshot from the Snapchat App below presents an example of the 'first display' (Friends screen) that shows the header information of the electronic message at the recipient device."); Doc. No. 273-2, Ex. B at 47-48 ("The message listing (header information) corresponding to the message content (an available photo snap is shown as a solid pink square and an available video is shown as a solid purple square) is received at the recipient device.").) As such, the Court denies Snap's second motion in limine without prejudice to a contemporaneous objection at trial.[2]

C.  <u>Snap's Motion in Limine No. 3 – Exclusion of Any Damages Evidence</u>

In its third motion in limine, Snap moves to preclude Vaporstream from offering any damages evidence at trial. (Doc. No. 253 at 1, 9.) Specifically, Snap argues that Vaporstream should not be permitted to call its damages expert, Mr. Bratic, at trial and Vaporstream has waived reliance on any other damages evidence in this case. (Id. at 4-9.) In response, Vaporstream argues that Snap's motion should be denied, and Mr. Bratic should be permitted to testify at trial as any unexcluded matters. (Doc. No. 257-1 at 1.)

///

///

---

[2]      In its reply brief, Snap argues that in Vaporstream's statement of uncontroverted facts filed during the summary judgment stage, Vaporstream did not dispute that it only identified the "username" as meeting the "header information" and "identifier of a sending user" claim limitations. (Doc. No. 277 at 1 n.2.) The record does not support Snap's contention. In Vaporstream's statement of dispute material facts, Vaporstream stated: ""Header information" as used in claim 1 of the '886 and '111 Patents includes both 'display name' and 'username.'" (Doc. No. 194-1 at 1.) Here, Vaporstream stated that "header information" includes both "display name" and "username," but Vaporstream did not limit the term "header information" to only being those two items.

1          i.      The Proposed January 29, 2020 Bratic Supplement Report

2          As a preliminary matter, the Court addresses the proposed January 29, 2020 six-and-

3    a-half-page supplemental expert report from Mr. Bratic that was filed along with

4    Vaporstream's memorandum of contentions of fact and law.  (Doc. No. 231-1, Ex. C.)  In

5    its opposition to Snap's motion in limine, Vaporstream requests that it be granted leave to

6    use the information disclosed in the proposed supplemental expert report at trial.  (Doc.

7    No. 257-1 at 1, 5-9.)  The filing of this supplemental expert report was untimely and

8    improper, and the Court denies Vaporstream's request.

9          Under Federal Rule 26(a)(2), "a party must disclose to the other parties the identity

10   of any [expert] witness it may use at trial to present evidence" and "this disclosure must be

11   accompanied by a written report signed by the witness."  Fed. R. Civ. P 26(a)(2); accord

12   Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  "The

13   report must contain: (i) a complete statement of all opinions the witness will express and

14   the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B).  Rule 26(a)(2)(D) provides:

15   "A party must make these disclosures at the times and in the sequence that the court

16   orders."  Fed. R. Civ. P. 26(a)(2)(D).  Under the Court's scheduling orders in this action,

17   opening expert reports were due by April 25, 2018; Mr. Bratic's supplemental expert report

18   was due by October 18, 2019; and expert discovery closed on October 30, 2019.  (Doc. No.

19   126 at 2-3; Doc. No. 162 at 3-4; Doc. No. 172.)

20         Federal Rule of Civil Procedure 37(c)(1) provides: "If a party fails to provide

21   information or identify a witness as required by Rule 26(a) or (e), the party is not allowed

22   to use that information or witness to supply evidence on a motion, at a hearing, or at a trial,

23   unless the failure was substantially justified or is harmless."  Fed R. Civ. P. 37(c)(1).  "Rule

24   37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any

25   information that is not properly disclosed."  Goodman v. Staples The Office Superstore,

26   LLC, 644 F.3d 817, 827 (9th Cir. 2011).  "Rule 37(c)(1) is a 'self-executing,' 'automatic'

27   sanction designed to provide a strong inducement for disclosure."  Id.

28         Nevertheless, under Rule 37(c)(1), "[t]he information may be introduced if the

parties' failure to disclose the required information is substantially justified or harmless." Yeti by Molly, 259 F.3d at 1106. The party facing sanctions bears the burden of proving substantial justification or harmlessness. See id. Further, a district court has "particularly wide latitude" in determining whether to issue sanctions under Rule 37(c)(1). Id.

Vaporstream argues that it should be permitted to use the January 29, 2020 supplemental expert report because the proposed opinions in the report are limited to curing the specific deficiencies identified in the Court's January 10, 2020 Daubert order, and the report does not introduce a new damages theory. (Doc. No. 257-1 at 9.) The Court disagrees. The opinions disclosed in the January 29, 2020 supplemental expert report represent entirely new opinions and theories for calculating the reasonable royalty rate in this case. In the proposed supplemental expert report, Mr. Bratic opines that the reasonable royalty rate should be calculated by looking at the ratio of Snap's research and development expenses to Snap's total operating expenses. (See Doc. No. 231-1, Ex. C Bratic Supplemental Report ¶¶ 10-21) This "research and development" methodology was not contained anywhere in Mr. Bratic's original expert reports. (See Doc. No.185-1, Bratic Supplemental Report ¶¶ 176-82; Doc. No. 185-2 Bratic Report ¶¶ 175-81.) It is an entirely new theory and methodology for calculating the reasonable royalty rate in this case, and, thus, is an improper, untimely expert disclosure.

Further, these untimely new damages opinions are unjustified and highly prejudicial to Snap. Vaporstream has failed to explain why this alternative royalty rate method could not have been presented earlier in the case when Mr. Bratic filed his initial expert reports. See Cave Consulting Grp., Inc. v. OptumInsight, Inc., No. 15-CV-03424-JCS, 2020 WL 127612, at *13 (N.D. Cal. Jan. 10, 2020) (finding the patentee was not diligent where "nothing prevented [it] from offering its newly proposed approach . . . as an alternative measure of damages at the outset"). Further, because the supplemental expert report was presented (1) after the close of expert discovery and the deadline for filing pre-trial motions; (2) on the same day that motions in limine were due; and (3) less than six weeks before the scheduled trial date, Snap is highly prejudiced by the untimely disclosure. The

trial date is only nine days away, and Snap has no ability to challenge the opinions disclosed in the supplemental expert report through a <u>Daubert</u> motion or through a rebuttal expert report. And Snap cannot depose Mr. Bratic regarding the new opinions disclosed in the report. As a result, the Court strikes the January 29, 2020 Bratic supplemental expert report and excludes any of the new opinions contained in the report.[3] <u>See</u> Fed R. Civ. P. 37(c)(1); <u>see, e.g.</u>, <u>Cave Consulting</u>, 2020 WL 127612, at *13 (denying leave to offer a new supplemental damages expert report where the patentee was not diligent and the defendant would be prejudiced); <u>Network Prot. Scis., LLC v. Fortinet, Inc.</u>, No. C 12-01106 WHA, 2013 WL 5402089, at *8 (N.D. Cal. Sept. 26, 2013) (denying leave to offer a new supplemental damages expert report where the trial date was only four days away and "a new royalty analysis would impose prejudice on the defense as well and disrupt the Court's calendar"); <u>see, e.g.</u>, <u>Cheese Sys.</u>, 725 F.3d at 1354–55 (affirming the district court's striking in part of an expert declaration that included untimely disclosures).

ii.    <u>Mr. Bratic's Testimony</u>

Snap argues that the Court should preclude Mr. Bratic from testifying at trial. (Doc. No. 253 at 4-6.) Snap argues that because the Court excluded Mr. Bratic's 50/50 profit split reasonable royalty rate opinion in its <u>Daubert</u> order, the Court should exclude Mr. Bratic's testimony in its entirety. (<u>Id.</u> at 5.) In response, Vaporstream argues that Mr. Bratic should be permitted to testify at trial as any unexcluded matters. (Doc. No. 257-1 at 1.) The Court agrees with Vaporstream.

In the Court's January 10, 2020 <u>Daubert</u> order, the Court granted in part Snap's <u>Daubert</u> motion, and the Court excluded Mr. Bratic's reasonable royalty rate opinion. (Doc. No. 222 at 4-10, 20.) Thus, Mr. Bratic cannot offer a reasonable royalty rate opinion

---

[3]    The Court clarifies that it is not excluding matters that might be referenced in the January 29, 2020, but are contained elsewhere in the record, such as in Mr. Bratic's prior expert reports or in Snap's financial documents.

at trial.[4]  Further, because a reasonable royalty rate determination is a necessary component of a running reasonable royalty calculation, Mr. Bratic is also precluded from offering a final reasonable royalty calculation at trial.  Cf. VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("A reasonable royalty . . . may also be, and often is, a running payment that varies with the number of infringing units.  In that event, it generally has two prongs: a royalty base and a royalty rate.").

Nevertheless, the Court did not grant Snap's Daubert motion in full, and the Court did not exclude all of Mr. Bratic's opinions.  For example, the Court denied Snap's motion to exclude Mr. Bratic's LTV numbers.  (Doc. No. 222 at 11-12.)  Because the Court did not exclude all of Mr. Bratic's opinions, Vaporstream may present a damages case at trial containing these remaining opinions, such as his analysis of the Georgia-Pacific factors and his analysis of the apportioned reasonable royalty base.

Snap argues that it would be improper for Mr. Bratic to testify as to the reasonable royalty base because it would be a violation of the entire market value rule.  (Doc. No. 253 at 5.)  The Court rejects this argument.  First, this argument is untimely.  Snap did not raise an entire market value rule challenge to Mr. Bratic's reasonable royalty base analysis in its Daubert motion.  (See Doc. No. 185.)  Second, Snap's entire market value rule challenge fails, because Mr. Bratic has done an apportionment analysis, and, thus, he is not attempting to assess damages based on the entire market value of the accused products.  (See Doc. No.185-1, Bratic Supplemental Report ¶¶ 132-47) Cf. AstraZeneca AB v. Apotex Corp., 782 F.3d 1324, 1337 (Fed. Cir. 2015) (explaining that the entire market value rule applies "when small elements of multi-component products are accused of infringement" and the patentee "'assess[es] damages based on the entire market value of the accused product'" (quoting Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1318 (Fed. Cir. 2011)).

Additionally, the Court will instruct the jury on how to calculate an ongoing royalty.

---

[4]     In addition, the Court precluded Mr. Bratic from referencing in his damages analysis at trial Snap's market capitalization, acquisition offers received, total revenues, and total incremental profits.  (Doc. No. 222 at 20.)

See N.D. Cal. Model Patent Jury Instructions 5.7 ("One way to calculate a royalty is to determine what is called an 'ongoing royalty.' To calculate an ongoing royalty, you must first determine the 'base,' that is, the product on which the alleged infringer is to pay. You then need to multiply the revenue the defendant obtained from that base by the 'rate' or percentage that you find would have resulted from the hypothetical negotiation."). It will be up to Vaporstream to come up with sufficient evidence in the record to support a reasonable royalty rate finding, if it can do so.[5]

Snap argues that Vaporstream should be precluded from presenting any damages evidence at trial because, in light of the Court's Daubert order, there is no expert testimony in the record as to the issue of the reasonable royalty rate. (Doc. No. 276 at 2-3.) The Court disagrees. In Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1327–30 (Fed. Cir. 2014), overruled on other grounds by Williamson v. Citrix Online, LLC, 792 F.3d 1339 (Fed. Cir. 2015), the Federal Circuit reversed a district court's entry of summary judgment of no damages and rejected the accused infringer's contention that the patentee was not entitled to any damages because there was no evidence upon which the patentee could rely on to establish damages. In that case, the Federal Circuit explained:

> With infringement assumed, the statute requires the court to award damages 'in no event less than a reasonable royalty.' Because no less than a reasonable royalty is required, the fact finder must determine what royalty is supported by the record.
>
> If a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record. Indeed, if the record evidence does not fully support either party's royalty estimate, the fact finder must still determine what constitutes a reasonable royalty from the record evidence. Certainly, if the patentee's proof is weak, the [fact finder] is free to award a low, perhaps nominal, royalty, as long as that royalty is supported by the record.
>
> Thus, a fact finder may award no damages only when the record supports a zero royalty award.

---

[5] For example, Vaporstream might be able to utilize other evidence in the record, such as the lump sum opinions in the record.

Id. at 1327–28 (citations and footnote omitted).

In light of this, the Federal Circuit held that "the district court's conclusion that [the patentee's] HTC-based estimate was flawed does not establish, as a matter of law, a zero royalty. Even if [the patentee] had not submitted expert evidence, this alone would not support a finding that zero is a reasonable royalty." Id. at 1330. "'The use of expert testimony is permissive. Thus, if a patentee's damage expert is excluded, that fact does not automatically deny a patentee a right to recover damages.'" Id. (quoting Annotated Patent Digest, § 44:79).

Here, as in Apple v. Motorola, the Court has excluded some, but not all of the patentee's damages expert's opinions. Thus, Vaporstream is still is entitled to a determination from the fact finder as to the reasonable royalty if there is a finding of infringement of a valid patent. See id. at 1327–30. Indeed, the Court notes that in one of the primary cases relied on by Snap, the Federal Circuit vacated a damages award and held that the patentee's damages expert's proposed royalty rate should have been excluded by the district court because it lacked sufficient ties to the facts of the case. See Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC, 879 F.3d 1332, 1351 (Fed. Cir. 2018). Nevertheless, the Federal Circuit in that case remanded "for a new trial on damages." Id. The Federal Circuit did not remand the case for the entry of a judgment of no damages.

Snap argues that in light of the excluded opinions, the jury in this case might award a reasonable royalty that is not supported by the evidence in the record. But this argument is entirely speculative at this time. The trial has yet to begin and no jury verdict has been rendered.

In sum, the Court grants in part and denies in part Snap's third motion in limine. Specifically, the Court strikes the January 29, 2020 Bratic supplemental expert report and excludes any of the new opinions contained in the report. In addition, the Court precludes Mr. Bratic from offering any reasonable royalty rate calculation or overall reasonable royalty calculation at trial. The Court denies the remainder of Snap's motion in limine without prejudice to a contemporaneous objection at trial.

2:17-cv-00220-MLH (KSx)

D.  Snap's Motion in Limine No. 4 – Exclusion of the IPR Proceedings

In its fourth motion in limine, Snap moves to exclude any evidence or arguments relating to the inter partes review proceedings for the patents-in-suit.  (Doc. No. 245 at 1.)  Snap argues that the IPR proceedings are irrelevant because the proceedings concerned obviousness under 35 U.S.C. § 103, which will not be an issue at trial.[6]  (Id.)  Snap further argues that admitting evidence of the IPR proceedings would prejudice Snap and cause significant juror confusion by potentially confusing the jury to believe that the PTAB has ruled on the merits of Snap's § 101 invalidity defense.  (Id.)

In response, Vaporstream argues that the PTAB's decisions concerning obviousness under 35 U.S.C. § 103 in the IPR proceedings are highly relevant to the § 101 determination of patent eligibility in this case.  (Doc. No. 263 at 1.)  Vaporstream is wrong.

The standard for determining patent eligibility under § 101 is different from the standards for determining novelty under § 102 and obviousness under § 103.  See Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 91 (2012) ("declin[ing] the Government's invitation to substitute §§ 102, 103, and 112 inquiries for the better established inquiry under § 101").  The Court acknowledges that in Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. at 90, the Supreme Court explained that a § 102 novelty inquiry and a § 101 patent-eligibility "might sometimes overlap."  But the Supreme Court further explained in that case: "But that need not always be so."  See id.

Further, the Supreme Court and the Federal Circuit have explained that "'[t]he "novelty" of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.'"  Intellectual Ventures I LLC v. Symantec Corp., 838 F.3d 1307, 1315 (Fed. Cir. 2016) (quoting Diamond v. Diehr, 450 U.S. 175, 188–89 (1981)).  Thus, a finding that an accused infringer has failed to prove a

---

[6]  The Court previously granted summary judgment of Snap's defense of invalidity of the '886, '111, '711 patents based on obviousness.  (Doc. No. 224 at 45-46.)

patent is invalid as obvious "does not resolve the question of whether the claims embody an inventive concept at the second step of Mayo/Alice." Id. Thus, the PTAB's determinations regarding obviousness are not relevant to the § 101 determination in this case.[7] See id.

Further, even assuming the IPR proceedings have some marginal relevance due to the potential overlap between the § 103 obviousness inquiry and the §101 patent-eligibility inquiry, the Court still excludes the evidence due the danger of jury confusion and wasting of time and resources. See Fed. R. Evid. 403. Introduction of the IPR proceedings to the jury would likely require an explanation of the nature of IPR proceedings and the PTAB's role, the difference between the standards for determining obviousness under § 103 and for determining patent-eligibility under § 101, and the PTAB's various findings in the multiple IPR proceedings. This would likely consume a significant amount of time and potentially lead to jury confusion over the invalidity issues in the case. See Milwaukee Elec. Tool Corp. v. Snap-On Inc., No. 14-CV-1296-JPS, 2017 WL 4570787, at *6 (E.D. Wis. Oct. 12, 2017).

In sum, the Court grants Snap's fourth motion in limine. The Court precludes Vaporstream from introducing any evidence or argument relating to the inter partes review petitions for the patents-in-suit, and any activity at the PTAB related to these petitions absent further order of the Court.[8]

///

---

[7]    In addition, the Court does not find persuasive Vaporstream's reliance on Trustees of Columbia Univ. in City of New York v. Symantec Corp., No. 3:13CV808, 2019 WL 6138419 (E.D. Va. Nov. 19, 2019). (Doc. No. 263 at 1-2.) Trustees of Columbia University is a non-binding district court opinion. Further, in Trustees of Columbia University, the district court recognized that "the Supreme Court has stated and the Federal Circuit has recognized that [t]he novelty of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter." 2019 WL 6138419, at *14 (quoting Intellectual Ventures I, 838 F.3d at 1315).

[8]    Should the presentation of evidence at trial merit reconsideration of this ruling, Vaporstream must raise the issue during a break outside the presence of the jury.

E.     Snap's Motion in Limine No. 5 - Moot

In its fifth motion in limine, Snap moves to bar Vaporstream from arguing a position at trial that is purportedly inconsistent with a position Vaporstream took during the course of the related inter partes review proceedings. (Doc. No. 246 at 1.) On February 24, 2020, Snap filed a notice of withdrawal of this motion in limine. (Doc. No. 282.) As a result, the Court denies Snap's fifth motion in limine as moot.

## II.     Vaporstream's Motions in Limine

A.     Vaporstream's Motion in Limine No. 1 – Exclusion of Certain Patents

Vaporstream's first motion in limine is two-part. First, Vaporstream moves to exclude all patent applications, related proceedings, and related references or attorney arguments regarding Vaporstream patents other than the patents-in-suit. (Doc. No. 247 at 1.) Snap explains in its response that it does not intend to present any evidence of Vaporstream's non-asserted patents provided the Court grants its motion in limine to exclude all evidence of the IPRs from trial. (Doc. No. 267 at 4 & n.2) The Court has granted Snap's motion in limine regarding the IPR proceedings. See supra. As such, the first portion of Vaporstream's motion in limine is moot.

Second, Vaporstream moves to exclude all patent applications, related proceedings, and related references or attorney arguments regarding Snap's patents and third-party patents used for any purpose other than to challenge the subject-matter eligibility of the patents-in-suit under 35 U.S.C. § 101. (Doc. No. 247 at 1-2.) With respect to the Snap patents, Vaporstream argues that Snap may not introduce evidence of its own patents for the purposes of arguing non-infringement. (Doc. No. 247 at 4.) In response, Snap explains that it "has no intention of referring to or discussing any specific Snap patents, nor will it proffer any analysis comparing Snap['s] own patents with Vaporstream's patents. Snap does not intend to argue that its patents are superior to Vaporstream's, or that their existence implies that Snap does not infringe." (Doc. No. 267 at 5.) In reply, Vaporstream concedes that these concessions from Snap largely moot this portion of its motion in limine. (Doc. No. 280 at 280 at 3.) Any remaining issues regarding Snap's patents can appropriately be

1  addressed through a contemporaneous objection at trial.

2      With respect to the third-party patents, Snap argues that the third-party patents are

3  relevant to several issues beyond invalidity under § 101. (Doc. No. 267 at 5-7.)

4  Specifically, Snap argues these third-party patents are relevant to the issue of damages

5  under an analysis of the Georgia-Pacific factors. (See id.) The Court agrees with Snap.

6  See Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1317 (Fed. Cir. 2011) ("This

7  court has sanctioned the use of the Georgia–Pacific factors to frame the reasonable royalty

8  inquiry."); Georgia-Pac. Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y.

9  1970) ("9. The utility and advantages of the patent property over the old modes or devices,

10  if any, that had been used for working out similar results."). Indeed, the Court notes that

11  in its motion, Vaporstream concedes that at least one third-party patent may be relevant to

12  the issue of damages. (Doc. No. 247 at 5 n.2.)

13      Vaporstream argues that Snap should not be permitted to rely on these third-party

14  patents as background for Mr. Bakewell's damages analysis because in granting summary

15  judgment of Snap's obviousness defense, the Court excluded all § 103 prior art references

16  from the case. (Doc. No. 280 at 4-5.) Vaporstream is wrong and misunderstands the effect

17  of the Court's summary judgment order. In the Court's January 13, 2020 summary

18  judgment order, the Court granted summary judgment of Snap's obviousness defenses.

19  (Doc. No. 224 at 45-46.) But the Court did not exclude any specific evidence. (See id.) If

20  there is evidence in the record that is solely relevant to the issue of obviousness, that

21  evidence is no longer admissible because obviousness is no longer at issue in this case. See

22  Fed. R. Evid. 402. Nevertheless, the Court's summary judgment ruling does not render

23  evidence inadmissible simply because it was relevant to the issue of obviousness provided

24  the evidence remains relevant to a different issue in the case, such as damages through

25  Georgia-Pacific factor 9. See Fed. R. Evid. 402. Thus, Mr. Bakewell's damages opinions

26  that rely on Dr. Greenberg's analysis of the prior art remain relevant notwithstanding the

27  Court's entry of summary judgment on the issue of obviousness. (See, e.g., Doc. No. 266-

28  1 Bakewell Expert Report ¶¶ 316-19 (citing Greenberg Expert Report).)

In addition, the Court notes that there is nothing improper with Snap's damages expert, Mr. Bakewell, relying on opinions from Snap's technical expert, Dr. Greenberg. "Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field. Rule 703 explicitly allows an expert to rely on information he has been made aware of 'if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" Apple, 757 F.3d at 1321 (quoting Fed. R. Evid. 703) (citations omitted). "Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field." Id. In sum, the Court denies Vaporstream's first motion in limine without prejudice to a contemporaneous objection at trial.

B.    Vaporstream's Motion in Limine No. 2 – Exclusion of Negative Remarks about the USPTO

In its second motion in limine, Vaporstream moves to preclude Snap from making any negative, disparaging, or derogatory comments about the USPTO or its employees. (Doc. No. 247 at 6.) In response, Snap argues that it should be permitted to provide to the jury the information regarding the examination process at the PTO that is conveyed in the Federal Judicial Center's video "The Patent Process: An Overview for Jurors." (Doc. No. 267 at 8-9.)

At the start of the trial, the Court will play to the jurors the Federal Judicial Center's video "The Patent Process: An Overview for Jurors" available at https://www.youtube.com/watch?v=ax7QHQTbKQE. (Doc. No. 162 at 7.) In this video, the presenter explains:

> Sometimes in a court case, you are also asked to decide about "validity." That is whether the patent should have been allowed at all by the PTO. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or non-obvious in light of the prior art, or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question is invalid.
>
> You may wonder why it is that you would be asked to consider such

things when the patent has already been reviewed by a Government examiner. There are several reasons for this. First, there may be facts or arguments that the examiner did not consider, such as prior art that was not located by the PTO or provided by the applicant. In addition, there is, of course, the possibility that mistakes were made or important information overlooked. Examiners have a lot of work to do, and no process is perfect. Also, unlike a court proceeding, prosecution of a patent application takes place without input from people who might later be accused of infringement, so it is important that we provide a chance for someone who is accused of infringement to challenge the patent in court.

The Patent Process: An Overview for Jurors at 13:48-14:57. Snap represents that it will do no more than provide the information that is conveyed in this video. (Doc. No. 267 at 8.) In light of this representation, the Court denies Vaporstream's second motion in limine without prejudice to a contemporaneous objection at trial.

### C. Vaporstream's Motion in Limine No. 3 – Exclusion of Prior Orders

In its third motion in limine, Vaporstream moves to exclude any evidence of or references to motions, rulings on motions, and orders (other than the Court's claim constructions). (Doc. No. 247 at 7-8.) In response, Snap argues that it should permitted to discuss at trial prior orders by the Court that are relevant to the § 101 analysis and Vaporstream's damages expert's credibility. (Doc. No. 267 at 10-12.)

The Court agrees with Vaporstream that, in general, the parties should be precluded from referencing the Court's prior rulings and orders other than the Court's claim constructions due to the substantial risk of confusing and misleading the jury. See Fed. R. Evid. 403; see, e.g., Hewlett-Packard Co. v. Mustek Sys., Inc., No. 99-CV-351-RHW, 2001 WL 36166855, at *4 (S.D. Cal. June 11, 2001); Wilson v. Hartford Ins. Co. of the Midwest, No. C10-993RAJ, 2011 WL 2670199, at *4 (W.D. Wash. July 7, 2011); US Foam, Inc. v. On Site Gas Sys., Inc., 735 F. Supp. 2d 535, 560 (E.D. Tex. 2010). Snap argues that it should be permitted to reference certain prior orders for two reasons. (Doc. No. 267 at 10-12.) The Court addresses each of these arguments in turn below.

First, Snap argues that it should be entitled to impeach Vaporstream's damages expert Mr. Bratic with the Court's prior January 10, 2020 Daubert order excluding portions

of Mr. Bratic's opinions. (Doc. No. 267 at 11-12.)  In this case, any potential relevance of the Daubert order is substantially outweighed by the risk of unfair prejudice to Vaporstream and the potential for jury confusion.  See Fed. Evid. 403.  There is too much of a risk that the jury will give the Court's prior Daubert order undue weight given that it is an order by the same Court that will preside over the trial.  In addition, the Court's prior Daubert order has the capacity to be confusing to the jury since the Court granted in part and denied in part the Daubert motion.  Moreover, the Court notes that Snap has not identified any case where a court allowed a damages expert to be impeached by a prior Daubert order that was entered earlier in the same case.  (See generally Doc. No. 267 at 11-12.)  As such, the Court excludes the January 10, 2020 Daubert order from being referenced during the trial under Federal Rule of Evidence 403, absent further order of the Court.  Additionally, given the potential for jury confusion, the Court further excludes any prior Daubert orders from other cases from being used or referenced at trial absent further order of the Court.  See Fed. R. Evid. 403.

Second, Snap argues that it should be permitted to reference the Court's prior § 101 orders because the jury must be told that the asserted claims are directed to an abstract idea under step one of the Alice inquiry in order for the jury to conduct a proper Alice step two analysis.  (Doc. 267 at 10-11.)  In response, Vaporstream argues that it is not clear from the record that the Court has found under Alice step one that the asserted claims are directed to an abstract idea.  (Doc. No. 280 at 7.)  The Court agrees with Vaporstream.

Section 101 of the Patent Act defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  The Supreme Court has "'long held that this provision contains an important implicit exception[:] Laws of nature, natural phenomena, and abstract ideas are not patentable.'"  Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2116 (2013).

"The Supreme Court has devised a two-stage framework to determine whether a claim falls outside the scope of section 101."  Affinity Labs of Texas, LLC v. DIRECTV,

LLC, 838 F.3d 1253, 1257 (Fed. Cir. 2016); see Alice, 573 U.S. at 217–18.  "The prescribed approach requires a court to determine (1) whether the claim is directed to a patent-ineligible concept, *i.e.*, a law of nature, a natural phenomenon, or an abstract idea, and if so, (2) whether the elements of the claim, considered both individually and as an ordered combination, add enough to transform the nature of the claim' into a patent-eligible application."  Affinity Labs, 838 F.3d at 1257 (internal quotation marks omitted) (citing Alice, 134 S. Ct. at 2355).  "In the context of claims that are challenged as containing only abstract ideas, those two stages are typically referred to as the 'abstract idea' step and the 'inventive concept' step."  Id.

"The 'abstract idea' step of the inquiry" requires courts "to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter."  Id. at 1257.  The Federal Circuit has explained: "If a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step one.  Software, however, 'can make non-abstract improvements to computer technology just as hardware improvements can.'"  BSG Tech LLC v. Buyseasons, Inc., 899 F.3d 1281, 1285–86 (Fed. Cir. 2018) (citing Alice, 134 S. Ct. at 2355–57 and quoting Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016).  Therefore, a reviewing court should consider "whether the 'focus of the claims' is on a 'specific asserted improvement in computer capabilities . . . , or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'"  Id. at 1286 (quoting Enfish, 822 F.3d at 1336).

"The 'inventive concept' step requires [courts] to look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed."  Affinity Labs, 838 F.3d at 1258.  "Simply appending conventional steps, specified at a high level of generality, [i]s not enough to supply an inventive concept."  Alice, 573 U.S. at 222 (internal quotation marks omitted) (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., 566 U.S. 66, 82 (2012)); see FairWarning IP, LLC v. Iatric Sys., Inc., 839 F.3d

1089, 1093 (Fed. Cir. 2016) ("This inventive concept must do more than simply recite 'well-understood, routine, conventional activity.'").  The Federal Circuit has explained that at the "inventive concept" step:

> The appropriate question is not whether the entire claim as a whole was "well-understood, routine [and] conventional" to a skilled artisan (i.e., whether it lacks novelty), but rather, there are two distinct questions: (1) whether each of "the [elements] in the claimed [product] (apart from the natural laws themselves) involve well-understood, routine, conventional activity previously engaged in by researchers in the field," and (2) whether all of the steps "as an ordered combination add[ ] nothing to the laws of nature that is not already present when the steps are considered separately[.]"  In other words, beyond the [abstract idea], what elements in the claim may be regarded as the "inventive concept"? This analysis applies to both system and method claims.

Chamberlain Grp., Inc. v. Techtronic Indus. Co., 935 F.3d 1341, 1348–49 (Fed. Cir. 2019) (citations omitted); see BSG Tech, 899 F.3d at 1290–91 (In Alice, "the [Supreme] Court only assessed whether the claim limitations other than the invention's use of the ineligible concept to which it was directed were well-understood, routine and conventional.  [¶]  Our precedent has consistently employed this same approach.  If a claim's only "inventive concept" is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.); see also Alice, 573 U.S. at 217 ("If so, we then ask, '[w]hat else is there in the claims before us?'  To answer that question, we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." (quoting Mayo, 566 U.S. at 78, 79)).

The Court acknowledges that in its January 13, 2020 order denying Snap's motion for reconsideration, the Court stated: "In the Court's February 27, 2018 summary judgment order, the Court held under step one of the Alice inquiry that the asserted claims are directed to an abstract idea." (Doc. No. 224 at 12.)  But upon a further review of the record,

this statement is inaccurate.[9]

In the prior court's June 12, 2017 order on Snap's motion to dismiss, the court concluded its <u>Alice</u> step one analysis by stating:

> Ultimately, whether the asserted claims are directed to: (1) an abstract idea of protecting the identity of a message's recipient or sender, or (2) specific solutions (separation of display and transmission and restriction of access) to the various challenges of electronic messaging (privacy, manipulation, interception), presents a close call. Similar to the dilemma faced by the Federal Circuit in <u>Bascom</u>, the asserted claims and their specific limitations "do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea." <u>Bascom Global Internet Services, Inc. v. AT&T Mobility LLC</u>, 827 F.3d 1341, 1349 (Fed. Cir. 2016); <u>see</u> <u>Elec. Power Grp., LLC v. Alstom S.A.</u>, 830 F.3d 1350 (Fed. Cir. 2016) ("we have noted there can be close questions about when the inquiry should proceed from the first stage to the second."). For these reasons, the Court defers its consideration of the claim limitations' narrowing effect for step two.

(Doc. No. 59 at 10-11 (footnote omitted).)

In the Court's February 27, 2018 summary judgment order, the Court stated:

> In the Court's order denying Snap's motion to dismiss without prejudice, the Court held that "the asserted claims and their specific limitations 'do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea.'" (Doc. No. 59 at 10-11 (quoting <u>Bascom Global</u>, 827 F.3d at 1349).) Nothing in the parties' summary judgment briefing has altered the Court's prior conclusion as to the <u>Alice</u> step one analysis. Accordingly, the Court turns to step two of the <u>Alice</u> inquiry.

(Doc. No. 117 at 9.)

In further reviewing these two orders, the Court concludes that it has not definitively ruled that the asserted claims are directed to an abstract idea. Snap argues that although the prior court used a double negative in its analysis of <u>Alice</u> step one in the motion to dismiss order, a close examination of the language in that order shows that the prior court did make a final determination that the claims are directed to an abstract idea. The Court

---

[9] The Court inherited this case from a prior judge who is now deceased. The prior judge issued the June 12, 2017 order ruling on Snap's motion to dismiss. (<u>See</u> Doc. No. 59.)

disagrees. The Court notes that the prior court expressly stated in the motion to dismiss order that it was "defer[ring]" its determination to <u>Alice</u> step two. Further, the Court notes that nowhere in the motion to dismiss order does the prior court identify precisely the abstract idea. This supports the conclusion that the prior court was not making a definitive determination at <u>Alice</u> step one, but deferred consideration pending further development of the record. <u>See</u> <u>BSG Tech</u>, 899 F.3d at 1285–86 ("Software . . . 'can make non-abstract improvements to computer technology just as hardware improvements can.'"). Moreover, because Snap's argument for presenting the jury with the Court's prior § 101 orders is premised on the notion that the Court has ruled that the asserted claims are directed to an abstract idea, and that premise is incorrect, the Court rejects Snap's argument.

In sum, the Court grants Vaporstream's third motion in limine. The Court precludes any reference to the Court's prior rulings and orders, other than the Court's claim constructions set forth in the Court's claim construction order absent further order of the Court.

## Conclusion

For the reasons above:

1.    The Court grants the parties' joint motion regarding the presentation of evidence at trial regarding Vaporstream products, and the Court denies Snap's first motion in limine as moot.

2.    The Court denies Snap's second motion in limine without prejudice to a contemporaneous objection at trial.

3.    The Court grants in part and denies in part Snap's third motion in limine. Specifically, the Court strikes the January 29, 2020 Bratic supplemental expert report and excludes any of the new opinions contained in the report. In addition, the Court precludes Mr. Bratic from offering any reasonable royalty rate calculation or overall reasonable royalty calculation at trial.

4.    The Court grants Snap's fourth motion in limine. The Court precludes Vaporstream from introducing any evidence or argument relating to the inter partes review

petitions for the patents-in-suit, and any activity at the PTAB related to these petitions absent further order of the Court.

5. The Court denies Snap's fifth motion in limine as moot.

6. The Court denies Vaporstream's first motion in limine without prejudice to a contemporaneous objection at trial.

7. The Court denies Vaporstream's second motion in limine without prejudice to a contemporaneous objection at trial.

8. The Court grants Vaporstream's third motion in limine. The Court precludes any reference to the Court's prior rulings and orders, other than the Court's claim constructions set forth in the Court's claim construction order absent further order of the Court.

The Court reminds the parties that if a party contends that the Court should reconsider one of its rulings in this order in light of the circumstances presented at trial, the party must raise the issue at an appropriate time outside the presence of the jury.

**IT IS SO ORDERED.**

DATED: February 28, 2020

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT